UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN RE ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | )<br>)<br>)<br>)    MDL No. 2669<br>)<br>)    Case No. 4:15MD2669 JAR<br>)<br>) |

**MEMORANDUM IN OPPOSITION TO MOTION FOR APPOINTMENT OF CUNEO GILBERT & LADUCA, LLP AS LIAISON COUNSEL FOR THE "FRAUD GROUP"**

Michael J. Flannery of Cuneo Gilbert & LaDuca, LLP, representing Plaintiff Christopher Russell, seeks appointment as separate liaison counsel for a "Fraud Group" sub-set of the consumer class in this case. Doc. 58.  Counsel further indicates that Gary E. Mason of Whitfield Bryson & Mason LLP intends to file an application for appointment as Interim Lead Counsel of this same group.[1]  *Id*. at 1.  Rather than joining with eight other Plaintiffs' firms (collectively representing the plaintiffs in ten actions transferred to this MDL) who have cooperatively agreed to a proposed structure to represent this class, see Docs.  65-66, Flannery/Mason Counsel contend that the Court should create two independent, parallel sets of Plaintiffs' counsel, each with its own liaison counsel, lead counsel, and executive/steering committees, all to represent the same consumer class of Ashley Madison users.

On December 9, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") transferred five related actions stemming from the breach to this Court for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.[2] *See* JPML Transfer Order (Dec. 9, 2015) [Doc. No. 1] at3-4. The

---

[1] Movants are referred to as "Flannery/Mason Counsel" herein.
[2] Since that time, the JPML has transferred fifteen additional related actions via two Conditional Transfer Orders. *See* Conditional Transfer Order 1 (Dec. 22, 2015) [Doc. No. 4] and Conditional

following week, The Driscoll Firm, P.C., organized and hosted a meeting of plaintiffs' attorneys in St. Louis to discuss, among other things, organizational structure within the MDL. All plaintiffs' counsel in pending actions known to be related to the AshleyMadison.com breach were invited to attend; approximately 25 attorneys did so, either in person or by teleconference. As a result of that meeting, a "working group" of Plaintiffs' counsel emerged, ultimately resulting in the proposed structure of Plaintiffs' counsel. See Docs. 13, 65-66.  Mr. Mason and Mr. Flannery both attended that meeting, and Mr. Mason briefly agreed to work with Plaintiffs' "working group."  However, Flannery/Mason Counsel have ultimately declined to be part of the proposed structure.

Flannery/Mason Counsel's proposal should be denied because (a) the argument that fraud claims are "unique" was already rejected by the JPML; (b) the proposal is unworkable and inefficient and violates the principles of the Manual for Complex Litigation; and (c) the claim that there are "distinct" groups of fraud class members and data breach class members and that this creates "possible conflicts of interest" has no basis in the facts of this case or the law.  It certainly does not necessitate the creation of "dueling steering committees" to represent the same class members.

## A.    THE JPML REJECTED COUNSEL'S CLAIM THAT THE "FEMBOT" FRAUD CLAIMS ARE UNIQUE.

As the JPML found, plaintiffs in all related actions assert similar claims arising from the same events against the same defendants. *See* Transfer Order at 1-2 (Dec. 9, 2015) [Doc. No. 1]; Conditional Transfer Order 1 (Dec. 22, 2015) [Doc. No. 4]; Conditional Transfer Order 2 (Dec. 29, 2015) [Doc. No. 10].  Nevertheless, Flannery/Mason Counsel rely on a purported finding by the JPML that the *Russell* action they filed in the United States District Court for Maryland

---

Transfer Order 2 (Dec. 29, 2015) [Doc. No. 10].

presents "unique" issues because it focuses on the Ashley Madison website's use of "fembots", computer-generated profiles intended to fraudulently induce payments from class members.

This is not the case. In fact, the JPML *rejected* counsel's argument and refused to "carve out" the fembot claims in creating this MDL:

> The opposing plaintiff argues that *Russell* involves allegations different from those in the other actions subject to this Transfer Order because he asserts only fraud claims based upon Avid's alleged use of artificial intelligence "bots" and falsified user profiles to induce users to make purchases on the Ashley Madison website. **Contrary to plaintiff's argument, this allegation is not unique**—at least five other related actions assert similar, if not identical, consumer fraud claims on behalf of putative nationwide classes. …. Additionally, plaintiffs learned of this alleged fraudulent scheme through analysis of the data disclosed in the Ashley Madison data breach. Thus, *Russell* **likely will involve common factual questions regarding the data breach and the operation of the Ashley Madison website**.

Doc. 1 at 2 (emphasis supplied).

Counsel are in effect seeking to create a separate "MDL within an MDL" by creating a second Plaintiffs' counsel structure, with its own liaison counsel, lead counsel, and steering committee. Yet the JPML rejected the argument that the "fembot" claims are unique and require separate treatment. Indeed, as set forth below, the class members with "fembot" claims are largely the same class members with "data breach" and "paid delete" claims. There is no distinct group of fembot class members requiring a "mini-MDL" of their own.

**B.    COUNSEL'S PROPOSAL OF "DUELLING STEERING COMMITTEES" FOR THE SAME CLASS VIOLATES THE GUIDELINES IN THE MANUAL FOR COMPLEX LITIGATION.**

Furthermore, the Flannery/Mason Counsel's position, despite their claim to the contrary, **conflicts with the guidelines set forth in the Manual for Complex Litigation**. The entire purpose of appointing liaison counsel, lead counsel and executive/steering committees in complex litigation is to both accommodate dissimilar interests while limiting confusion and expense through a unitary structure:

*Lead counsel*. Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

….

*Committees of counsel*. Often called steering committees, coordinating committees, management committees, executive committees, discovery committees, or trial teams. **Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making.** The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately. **Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses**.

*Manual for Complex Litigation, Fourth*, Sec. 10.221 (2015)

Instead of addressing the issue through the use of separate sub-classes and, as necessary, committees of counsel within a single organizational structure, as contemplated by the Manual for Complex Litigation and applicable law, the Flannery/Mason Counsel propose dueling liaison counsel, lead counsel and steering committees.  Again, these two sets of plaintiffs' attorneys will largely be representing the *same* plaintiffs and class members.  This is nowhere contemplated by the *Manual* and simply ignores the *Manual*'*s* concerns regarding increased costs and the desire to "avoid unnecessary duplication of efforts[.]"

Further, the inefficiencies, confusion, and duplication of effort inherent in counsel's proposal are unnecessary – there are simply no distinct classes of individuals with opposed interests in this case.

## C.    THERE IS NO CONFLICT OF INTEREST REQUIRING SEPARATE REPRESENTATION.

The basis for Flannery/Mason Counsel's unwieldy, unworkable proposal is the following assertion:

> The consolidated actions involve **two substantively distinct groups** - one group of consumers seeking redress for the disclosure of consumers' personal information (the "Data Breach Group") and one group seeking recovery for Defendants' deceptive use of "fembots" to lure paying consumers (the "Fraud Group")

See Doc. 59 at 1.  Counsel then contend that these "distinct groups" have "**potential** conflicts of interest" because "each group will pursue legal theories that are likely to directly conflict with each other, in particular with respect to the Term[s] of Service and its included Arbitration Provision." *Id*. 2-3.

The assertion that these groups are "distinct" - and the argument that flows from this assertion - is false.  First, there are not "two substantively distinct groups" of plaintiffs involved in this consumer class action case, as may be the case in an MDL involving, for example, both bank plaintiffs and consumer plaintiffs damaged as a result of a data breach.  There is **one class of consumers** at issue whose information was contained in the Ashley Madison database.  Each class member's claims relate to and/or were disclosed breach of that database.  All plaintiffs'/putative class members' claims implicate fraudulent conduct, deceptive trade practices, violation of consumer protection statutes, and negligence by Defendants in their operation of the Ashley Madison website.  There are various claims at issue, and some claims may certainly be appropriate for treatment as sub-classes.[3]  However, they are not "distinct

---

[3] For example, the Amended Complaint submitted in the original Ashley Madison data breach case filed in this Court identifies four sub-classes: (1) Class members who paid Defendants for "paid-delete" services; (2) Class members who have incurred or anticipate incurring expenses as

groups" at all – the sub-classes are substantially overlapping in membership and share common goals. The class members of the so-called "Fraud Group" are largely also members of the "Data Breach Group" and vice-versa. The existence of sub-classes of course does *not* require separate liaison counsel, lead counsel and steering committees. Indeed, Flannery/Mason Counsel fail to cite any authority whatsoever approving this "dueling steering committee" approach to represent a class of consumers.

Flannery/Mason Counsel refer to two general categories of class members' claims – (a) those relating to the Ashley Madison data breach; and (b) claims for payments made to interact with Defendants' "fembots," i.e. computer generated profiles which messaged users in an attempt to fraudulently induce users to pay to communicate with these "bots." Notably, **counsel are completely silent regarding a third major category of injury to class members** – namely, those consumers who paid Defendants for a "full delete or paid delete" of their personal information. Defendants had promised that, in return for a $19 payment, Defendants would "remove all traces of your usage" of the Ashley Madison site. Defendants accepted the payments, but did not delete all of this information, which was then exposed in the data breach. *See* Amended Complaint in Jane Doe et al. v. Avid Life Media Inc. et al. 4:15-cv-01132 JAR (E.D.Mo.), Doc. 19-1 at 4.

Plaintiffs' counsel believe that Defendants made millions of dollars from this scheme, yet Flannery/Mason Counsel ignore these claims because they do not fit the false dichotomy on

a result of the data breach; (3) Class members who suffered damages from fraudulent charges on their credit and/or debit cards as a result of the data breach; and (4) class members who paid to interact with Defendants' fraudulent "fembots." *See* Jane Doe et al. v. Avid Life Media Inc. et al., No. 4:15-cv-01132 JAR (E.D.Mo.), Doc. 19-1.

6

which counsel's "potential conflict of interest" theory relies.  Class members who paid for the "paid delete" option of course have both potential contract claims (whether implied or express) and fraud claims arising from these facts.  Not only did Defendants violate an agreement by not deleting class members' information, Defendants made false representations in order to induce payment for a service they never intended to carry out.  This further demonstrates why the claims of class members cannot be cleanly divided into "contract" and "fraud" claims.

Similarly, the data breach claims of the Class certainly include elements of fraud, as evidenced by Defendants' internal emails relating to security vulnerabilities while the site was being advertised as secure and confidential.  On the other hand, the "fembot" class which the Flannery/Mason Counsel are apparently seeking to "carve out" clearly involves contractual issues relating to the Ashley Madison site's terms and conditions.  Among other things, Defendants are likely to rely on vague, misleading and deceptive references in the Terms and Conditions which Defendants allege disclosed the existence of the artificial bots to users.

Nor is there any potential conflict of interest with regard to the Defendants' Terms and Conditions concerning arbitration.  Defendants clearly intend to try to use purported arbitration language in the website's Terms and Conditions to defeat class treatment and avoid liability.  Therefore **all plaintiffs and class members share an interest in defeating any claim of binding arbitration**.  Counsel's assertion that a "data breach" class has an interest in *affirming* Defendants' terms and conditions is nonsensical.[4]  There is no conflict of interest.

This litigation is just beginning, no formal discovery has been performed, and Plaintiffs

---

[4] Indeed, a significant number of data breach class actions arise from the breach of data obtained by retailers at the point of sale.  Such claims have proceeded, and settled, despite the lack of any terms or conditions under which the defendant companies acquired the data from the consumer plaintiffs.  Accordingly, Flannery/Mason Counsel's contention that data breach plaintiffs need to rely upon express terms and conditions is nowhere found in the law. To the contrary, consumer plaintiffs have repeatedly obtained recovery where no such terms and conditions existed.

are of course permitted to plead in the alternative. *See* F.R.C.P. 8(d).  It is entirely appropriate for the Plaintiffs to assert every potential claim they have against defendants on behalf of the Class. None of this results in a "conflict of interest."

The case law relied on by Flannery/Mason Counsel does not alter this analysis.  Counsel inexplicably rely on *In re Microsoft Corp. Antitrust Litigation*, 218 F.R.D. 449, 452 (D. Md. 2003), yet this case demonstrates the fundamental flaw in their argument.  In that case the same counsel represented two completely discrete classes, an "end-user class" and a class of "original equipment manufacturers" ("OEMs"), which sold to the end users. *Id*.  Under the law applicable to the Sherman Act claims in that case, only one of these classes could recover monetary damages for overcharges. *Id*.   Therefore there was an "irreconcilable conflict" between representing both classes. *Id.* No such conflict exists here.

Similarly*, Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 627, 117 S. Ct. 2231, 2251, 138 L. Ed. 2d 689 (1997), relied on by counsel, involved an enormous, "sprawling" asbestos settlement class against numerous defendants, which failed to provide for appropriate sub-classes, including sub-classes for both injured and non-injured asbestos plaintiffs. *See Amchem*, 521 U.S. at 627.  Again, these were completely *discrete* classes with clearly divergent interests, lumped into one class, and without sub-classes. *See Id*. That has nothing to do with the situation presented in this case, involving substantially overlapping sub-classes who share common interests in pursuing claims against the Ashley Madison defendants.

Not only have the Flannery/Mason Counsel failed to demonstrate a conflict of interest, they have not shown any likelihood of a conflict developing in the future.  Counsel's arguments appear to be largely a pretext to file an application for appointment outside of the structure agreed to by other Plaintiffs' counsel.  Their motion should be denied.

Date: January 25, 2016

Respectfully Submitted,

DOWD & DOWD, P.C.

By:   */s/  Douglas P. Dowd*
Douglas P. Dowd (29240MO)
William T. Dowd (39648MO)
Alex R. Lumaghi (56569MO)
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Tel.: (314) 621-2500  Fax: (314) 621-2503
doug@dowdlaw.net
bill@dowdlaw.net
alex@dowdlaw.net

John J. Driscoll (54729MO)
Christopher J. Quinn (41883MO)
Gregory G. Pals (48820MO)
THE DRISCOLL FIRM, P.C.
211 N. Broadway, 40th Floor
St. Louis, Missouri 63102
Tel.: (314) 932-3232
Fax: (314) 932-3233
john@thedriscollfirm.com
chris@thedriscollfirm.com
greg@thedriscollfirm.com

W. Lewis Garrison, Jr.
Christopher B. Hood
Taylor C. Bartlett
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Tel.: (205) 326-3336
Fax: (205) 326-3332
wlgarrison@hgdlawfirm.com
chood@hgdlawfirm.com
taylor@hgdlawfirm.com

James F. McDonough, III
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Tel.: (404) 996-0869
Fax: (205) 326-3332
jmcdonough@hgdlawfirm.com

9

John Arthur Eaves, Jr.
JOHN ARTHUR EAVES
ATTORNEYS AT LAW
101 North State Street
Jackson, Mississippi 39201
Tel.: (601) 355-7961
Fax: (601) 355-0530
johnjr@eaveslaw.com

Christopher S. Hinton
THE ROSEN LAW FIRM P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel.: (212) 686-1060
Fax: (212) 202-3827
chinton@rosenlegal.com

Gary F. Lynch
CARLSON LYNCH SWEET &
KILPELA, LLP
1133 Penn Ave., 5th floor
Pittsburgh, Pennsylvania 15222
Tel.: (412) 322-9243
Fax: (724) 656-1556
glynch@carlsonlynch.com

J. Parker Yates
BADDLEY & MAURO LLC
850 Shades Creek Parkway
Suite 310
Birmingham, AL 35209
Tel.: (205) 939-0090
Fax: (205) 939-0064
jpy@baddleymauro.com

William B. Federman
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Tel.: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

10

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties.  In addition, copies were served via email upon the following attorneys of record:

Ari Cherniak
HammondLaw PC
1829 Reisterstown Road
Suite 410
Baltimore, MD 21208
310-601-6766
Fax: 310-295-2385
Email: acherniak@hammondlawpc.com

Julian Ari Hammond
HammondLaw PC
1829 Reisterstown Road
Suite 410
Baltimore, MD 21208
310-601-6766
Fax: 310-295-2385
Email: hammond.julian@gmail.com

Polina Pecherskaya
HammondLawPC
1829 Reisterstown Road Suite 410
Baltimore, MD 21208
310-601-6766
Fax: 310-295-2385
Email: ppecherskaya@hammondlawpc.com

John T. Kirtley, III
FERRER AND POIROT
2603 Oak Lawn
Suite 300
Dallas, TX 75219-9109
214-521-4412
Fax: 866-513-0115
Email: jkirtley@lawyerworks.com

Byron T. Ball
The Ball Law Firm LLP
644 S Figueroa Street
Los Angeles, CA 90017
310-446-6148

11

Fax: 310-441-5386
Email:  btb@balllawllp.com

David William Nelson
Barnes and Thornburg LLP
2029 Century Park East
Suite 300
Los Angeles, CA 90067-2904
310-284-3880
Fax: 310-284-3894
Email:  dnelson@btlaw.com

Kevin D. Rising
Barnes and Thornburg LLP
2029 Century Park East
 Suite 300
Los Angeles, CA 90067-3010
310-284-3880
Fax: 310-284-3894
Email:  kevin.rising@btlaw.com

Christine Elizabeth Skoczylas
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606
312-214-5613
Email: christine.skoczylas@btlaw.com

Thomas Gerald Haskins , Jr.
BARNES AND THORNBURG, LLP
2100 McKinney Ave.
Suite 1250
Dallas, TX 75201
214-258-4111
Fax: 214-258-4199
Email: thaskins@btlaw.com

E. B. Chiles, IV
Quattlebaum, Grooms & Tull PLLC
111 Center Street
Suite 1900
Little Rock, AR 72201-3325
501-379-1700
Email: cchiles@qgtb.com

12

Helen Claire Looney
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway
Suite 3600
St. Louis, MO 63102
314-259-2906
Fax: 314-552-8906
Email:  helen.looney@bryancave.com

Richard P. Cassetta
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102
314-259-2823
Fax: 314-552-8823
Email: richard.cassetta@bryancave.com

James C. Barton, Jr.
BUTLER SNOW LLP
ONE FEDERAL PLACE
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
205-297-2200
Fax: 205-297-2201
Email:  jim.barton@butlersnow.com

Katrina Carroll
Lite DePalma Greenberg
211 W. Wacker Drive, Ste. 500
Chicago, IL 60606
312-750-1591
Fax: 312-212-5919
Email:  kcarroll@litedepalma.com

Joseph J. Siprut
Siprut, P.C.
17 North State Street, Ste. 1600
Chicago, IL 60602
312-236-0000
Fax: 312-878-1342
Email:  jsiprut@siprut.com

13

John S. Marrese
Siprut, P.C.
17 North State Street, Ste. 1600
Chicago, IL 60602
312-236-0000
Fax: 312-878-1342
Email:  jmarrese@siprut.com

Kyle Alan Shamberg
Lite DePalma Greenberg, LLC
211 W. Wacker Drive
Suite 500
Chicago, IL 60606
312-750-1265
Email: kshamberg@litedepalma.com

Michael Loren Silverman
Siprut PC
17 North State Street
Suite 1600
Chicago, IL 60602
312-236-0000
Email: msilverman@siprut.com

Richard R. Gordon
Gordon Law Offices, Ltd.
211 W. Wacker Drive, Ste. 500
Chicago, IL 60606
312-332-5200
Fax: 312-236-7727
Email:  rrg@gordonlawchicago.com

Gary E. Mason
Whitfield Bryson & Mason, LLP
1625 Massachusetts Ave. NW
Ste. 605
Washington, DC 20036
202-429-2290
Fax:  202-429-2294
Email: gmason@wbmllp.com

Charles D. Davidson
Davidson Law Firm, Ltd.
Post Office Box 1300
Little Rock, AR 72203-1300
501-374-9977

14

Fax: 501-374-5917
Email: skipd@dlf-ar.com

Christopher D. Jennings
Johnson & Vines, PLLC
2226 Cottondale
Suite 210
Little Rock, AR 72202
501-372-13000
Fax: 888-505-0909
Email: cjennings@johnsonvines.com

David Louis Gershner
Davidson Law Firm, Ltd.
Post Office Box 1300
Little Rock, AR 72203-1300
501-374-9977
Email: davidg@dlf-ar.com

Stephanie A. Linam
Davidson Law Firm, Ltd.
Post Office Box 1300
Little Rock, AR 72203-1300
501-374-9977
Fax: 501-374-5912
Email: stephaniealinam@gmail.com

Jennifer L. Duffy
Law Offices of Jennifer Duffy, APC
28649 S. Western Ave. #6571
San Pedro, CA 90734
310-714-9779
Fax: 213-217-5010
Email: jld@kbklawyers.com

Jonathan Shub
Kohn, Swift & Graf, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
215-238-1700
Fax: 215-238-1968
Email: jshub@kohnswift.com

15

Ashley R. Rifkin
ROBBINS ARROYO LLP
600 B Street
Suite 1900
San Diego, CA 92101
619-525-3990
Fax: 619-525-3991
Email: arifkin@robbinsarroyo.com

Brian J. Robbins
Robbins Arroyo LLP
600 B Street Suite 1900
San Diego, CA 92101
619-525-3990
Fax: 619-525-3991
Email: brobbins@robbinsarroyo.com

Conrad B. Stephens
Stephens and Stephens LLP
505 South McClelland Street
Santa Maria, CA 93454
805-922-1951
Fax: 805-922-8013
Email: conrad@stephensfirm.com

Kevin A. Seely
ROBBINS ARROYO LLP
600 B Street
Suite 1900
San Diego, CA 92101
619-525-3990
Fax: 619-525-3991
Email: kseely@robbinsarroyo.com

Leonid Kandinov
ROBBINS ARROYO LLP
600 B Street
Suite 1900
San Diego, CA 92101
619-525-3990
Fax: 619-525-3991
Email: lkandinov@robbinsarroyo.com

Rebecca Anne Peterson
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South Suite 2200
Minneapolis, MN 55401
612-339-6900
Fax: 612-339-0981
Email: rapeterson@locklaw.com

Robert K. Shelquist
Lockridge Grindal Nauen PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2179
612-339-6900
Fax: 612-339-0981
Email: rkshelquist@locklaw.com

Carlton F. Bennett
Bennett & Zydron PC
120 S Lynnhaven Rd
Suite 100
Virginia Beach, VA 23452
757-486-5454
Fax: 757-486-8910
Email: cbennett@bandzlaw.com

Joseph Henry Bates, III
Carney Bates and Pulliam PLLC
2800 Cantrell Road Suite 510
Little Rock, AR 72202
501-312-8500
Fax: 501-312-8505
Email: hbates@cbplaw.com

Thomas A. Zimmerman, Jr.
Zimmerman Law Offices, P.C.
77 West Washington Street
Suite 1220
Chicago, IL 60602
312-440-0020
Fax: 312-440-4180
Email: tom@attorneyzim.com

17

Scott Theodore Ferrill
Attorney at Law
115 55th Street
Suite 400
Clarendon Hills, IL 60514
630-908-7680
Fax: 630-908-7165
Email: chicagolaw@gmail.com

Jordan Mitchell Rudnick
Zimmerman Law Offices
77 W. Washington St.
Suite 1220
Chicago, IL 60602
312-440-0020
Fax: 312-440-4180
Email: jordan@attorneyzim.com

Michael J. Flannery
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Boulevard
Suite 1675
St. Louis, MO 63105
Phone: 314-226-1015
Fax: 202-789-1813
Email: mflannery@cuneolaw.com

Anthony C. Lake
Gillen Withers & Lake, LLC
3490 Piedmont Rd.
Suite 1050
Atlanta, GA 30305
404-842-9700
Fax: 404-842-9750
Email: aclake@gwllawfirm.com

Thomas A. Withers
Gillen Withers & Lake, LLC
P.O. Box 10164
Savannah, GA 31412
912-447-8400
Fax: 912-629-6347
Email: twithers@gwllawfirm.com

William G. Bell, III
William G. Bell, III, PC

420 W. Broughton St.
Savannah, GA 31401
912-233-8000
Fax: 912-234-0103
Email: wgbatty@hotmail.com

Dale C. Doerhoff
COOK AND VETTER, P.C.
231 Madison Street
Jefferson City, MO 65101
573-635-7977
Fax: 573-635-7414
Email: ddoerhoff@cvdl.net

Heidi D. Vollet
COOK AND VETTER, P.C.
231 Madison Street
Jefferson City, MO 65101
573-635-7977
Fax: 573-635-7414
Email: hvollet@cvdl.net

Timothy W. Van Ronzelen
Cook Vetter Doerhoff & Landwehr PC
231 Madison Street
Jefferson City, MO 65101
573-635-7977
Fax: 573-635-7414
Email: tvanronzelen@cvdl.net

Robert A. Atkins
PAUL AND WEISS
1285 Avenue of the Americas
New York, NY 10019-6064
212-373-3183
Fax: 212-492-0183
Email: ratkins@paulweiss.com

Daniel J. Kramer
PAUL AND WEISS
1285 Avenue of the Americas
New York, NY 10019-6064
212-373-3000
Fax: 212-757-3990
Email: DKramer@paulweiss.com

Lorin L. Reisner
PAUL AND WEISS
1285 Avenue of the Americas
New York, NY 10019-6064
212-373-3000
Fax: 212-757-3990
Email: LReisner@paulweiss.com

/s/  Douglas P. Dowd

20