# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION | ) ) ) | |
| | ) | MDL No. 2669 |
| This Document Relates to: | ) | |
| | ) | Case No. 4:15MD2669 JAR |
| ALL CASES | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CHRISTOPHER RUSSELL'S AND PLAINTIFF DAVID POYET'S FED. R. CIV. P 23(G) MOTION FOR APPOINTMENT OF GARY E. MASON AS INTERIM CO-LEAD COUNSEL AND MICHAEL L. BRAUNSTEIN, MICHAEL J. FLANNERYAND ROBERT K. SHELQUIST AS MEMBERS OF THE PLAINTIFFS' EXECUTIVE COMMITTEE**

**TABLE OF CONTENTS**

I.      Introduction ...........................................................................................................1

II.     Relevant  Background..........................................................................................3

        A.      Summary of Facts ..................................................................................3

        B.      Procedural History of the MDL Cases.....................................................6

III.    Argument ...............................................................................................................7

        A.      Legal Standard for Appointing Interim Class Counsel...............................7

        B.       Gary E. Mason and Whitfield Bryson & Mason LLP Merit
                Appointment as Interim Co-Lead Class Counsel.......................................9
                1.    Mason Led the Investigation and Filing of the Fraud Claims ............9
                2.    Mason Has the Requisite Experience and Knowledge to Pursue
                      the Best Interests of the Class ..........................................................11
                3.    Whitfield Bryson & Mason LLP Possesses and Will Apply the
                      Resources Necessary to Effectively Prosecute These Claims  .........12

        C.      Michael L. Braunstein Merits Appointment to the Plaintiffs' Steering
                Committee..............................................................................................13
                1.    Braunstein, with Mason, Led the Investigation and Filing of the First
                      Fraud Claim and Has Diligently Pursued the Best Interests of the
                      Class ...............................................................................................14
                2.    Braunstein Has the Requisite Experience and Knowledge to
                      Pursue the Best Interests of the Class...............................................14
                3.    Braunstein Possesses and Will Apply the Resources Necessary to
                      Effectively Prosecute These Claims  .................................................15

        D.      Michael J. Flannery and Cuneo Gilbert & LaDuca Merit Appointment
                to the Plaintiffs' Steering Committee.......................................................15
                1.    Michael J. Flannery and Cuneo Gilbert & LaDuca Have the
                      Requisite Experience and Knowledge to Pursue the Best Interests
                      of the Class ......................................................................................15
                2.    Cuneo Gilbert & LaDuca Has Sufficient Resources to Advance
                      The Litigation in a Timely Manner ...................................................18

        E.       Robert K. Shelquist and Lockridge Grindal Nauen P.L.L.P. Merit
                Appointment to Plaintiffs' Steering Committee ........................................18
                1.    Robert K. Shelquist and Lockridge Grindal Nauen P.L.L.P. Have the
                      Requisite Experience and Knowledge to Pursue the Best Interests
                      Of the Class......................................................................................18
                 2.    Lockridge Grindal Nauen P.L.L.P. Has Sufficient Resources to
                      Advance the Litigation in a Timely Manner.....................................19

i

IV.    Conclusion ...................................................................................................20

# TABLE OF AUTHORITIES
## Cases

*Air Cargo Shipping Servs.,*
        240 F.R.D. 56 (E.D.N.Y. 2006) ................................................................................8

*Alfaro v. Avid Life Media, Inc. and Avid Life Dating, Inc.,*
        No. 4:15-cv-01930 (E. D. Mo.)................................................................................6

*Berki v. Avid Life Media. Inc. and Avid Life Dating, Inc.,*
        No. 4:15-cv-01928 (E.D. Mo.)................................................................................6

*Campbell v. Avid Life Media, Inc. and Avid Life Dating, Inc.,*
        No. 4:15-cv-01944 (E.D. Mo.)................................................................................6

*Christopher Russell v. Avid Life Media, Inc. and Avid Life Dating, Inc.,*
        No. 8:15-cv-02693 (D. Md. 2015) ......................................................................1, 6

*David Poyet v. Avid Life Media, Inc. and Avid Life Dating, Inc.,*
        No. 2:15-cv-08456 (C.D. Cal. 2015) ...................................................................1, 6

*DeLoach v. Avid Life Media, Inc., and Avid Life Dating, Inc.,*
        No. 4:15-cv-01925 (E.D. Mo.)................................................................................6

*Galanti v. Goodyear Tire & Rubber Co.,*
         No. 03-209 (D.N.J.2003) ......................................................................................11

*Gonzalez, et al, v. Owens Corning Inc.,*
        No. 13-cv-1378 (W.D. Pa.) ...................................................................................17

*Hobbie v. RCR Holdings, II, LLC,*
         No. 10-cv-00113, MDL No. 2047 (E.D. La. 2012) ..............................................11

*In re: Adobe Sys. Inc. Privacy Litig.,*
        No. 5:13-cv-05226 (N.D. Cal. 2015) ................................................................11, 17

*In re: Building Materials Corp. of  Am. Asphalt Roofing Shingle Prods. Litig.,*
        MDL 2283 (D.S.C.) ...............................................................................................17

*In re: Certainteed Corp. Roofing Shingle Prods. Liability Litig.,*
         MDL 1817 (E. D. Pa.)............................................................................................17

*In re: CertainTeed Fiber Cement Siding Litig.,*
         MDL 2270 (E. D. Pa.)............................................................................................16

*In re Charter Commun's, Inc. Secs. Litig.,*
        No. 02-cv-1186, MDL 1506 (E.D. Mo.)................................................................16

*In re Dept. of Veterans Affairs (VA) Data Theft Litig.,*
        No. 1:2006-cv-00506, MDL 1796 (D.D.C. 2006) .................................................11

*In re: GNC Picamilon/BMPEA Litig.,*
        No. 2:15-cv-1391 (W.D. Pa.).................................................................................12

*In re: Google Buzz Privacy Litig.,*
        No. 5:10-cv-00672 (N.D. Cal. 2010) .....................................................................11

*In re: Groupon, Inc., Mktg. and Sales Practices Litig.,*
        MDL 2238 (D.D.C.)................................................................................................18

*In re: HardiPlank Fiber Cement Siding Litig.*
        MDL 2359 (D. Minn.) ............................................................................................17

*In re: IKO Roofing Shingle Prods. Liability Litig.,*
        MDL 2104 (M.D. Ill)..............................................................................................17

*In re: Kitec Plumbing Sys. Prods. Liability Litig.,*
        MDL 1958 (N.D. Tex)............................................................................................17

*In re: MI Windows & Doors Inc. Prod. Liab. Litig.,*
    No. 2:12-mn-00001, MDL No. 2333 (D.S.C. )......................................................11
*In re NASDAQ Market-Makers Antitrust Litig.,*
    MDL 1023 (S.D.N.Y.) ..........................................................................................16
*In re: U.S. Office of Personnel Mgmt. Data Security Breach Litig.,*
    MDL. No. 2664 (D.D.C. 2015)......................................................................2, 9, 11
*In re: Uponor, Inc., F1807 Plumbing Prods. Liability Litig.,*
    MDL 2247 (D. Minn) ............................................................................................17
*In re: Zurn Pex Plumbing Litig.,*
    MDL 2247 (D. Minn.) ...........................................................................................17
*Law, et al., v. Nat'l Collegiate Athletic Assoc.,*
    No. 2:94-cv-2053 (D. Kan.) ..................................................................................16
*Lisuzzo v. Avid Life Media, Inc. and Avid Life Dating, Inc.,*
    No. 4:15-cv-01945 (E. D. Mo.)................................................................................6
*Melillo et al, v. Building Prods. of Canada,*
    Case No. 618-11 (Vt. S. Ct.) ..................................................................................18
*Nnadili v. Chevron U.S.A. Inc.,*
    No. 02-cv-1620 (D.D.C.) .......................................................................................12
*Pauly v. Avid Life Media, Inc. and Avid Life Dating, Inc.,*
    No. 4:15-cv-01924 (E.D. Mo.)..................................................................................6
*Steele v. United States,*
    No. 15- 1523, 2015 WL 4121607 (D.D.C. June 30, 2015)......................................8
*Young v. Nationwide Mutual Ins.,*
    693 F.3d 532 (6th Cir. 2012) .................................................................................12

## I.   INTRODUCTION

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, Christopher Russell, the first named plaintiff in the first-filed case alleging "fembot" fraud (and only fraud) claims against the Defendants,[1] and Plaintiff David Poyet, also a named plaintiff with a "fembot" fraud only complaint,[2] respectfully ask this Court to enter an Order (1) appointing Gary E. Mason of Whitfield Bryson & Mason LLP as Interim Co-Lead Class Counsel, and (2) appointing Michael L. Braunstein, Michael J. Flannery, and Robert K. Shelquist to the Plaintiffs' Executive Committee.

The attorneys and firms seeking appointments to leadership positions have ample experience prosecuting complex civil litigation, with a special focus on both consumer fraud and privacy class actions, and their participation in steering the progress of this MDL will ensure its efficient litigation, resolution and the protection of all groups.  Their leadership will be greatly aided and guided by their client, Christopher Russell.  Russell was the first plaintiff to file a complaint strictly limited to the "fembot" scam, and the first of a small minority of plaintiffs willing to proceed with this action under his own name.  Poyet also filed under his own name and limited his complaint to 'fembot' fraud claims.  As detailed herein, Russell, Poyet and their counsel have demonstrated their commitment to prosecuting and protecting the fraud claims disclosed by the breach of the Defendants' computer systems.

Centralized, but not consolidated, before this Court as part of MDL No. 2669, are 20 cases arising or disclosed by this incident.  Appointment of an experienced and knowledgeable group of consumer fraud, privacy and class action attorneys to lead this MDL is entirely

---

[1] *Christopher Russell v. Avid Life Media, Inc. and Avid Dating Life, Inc.*, No. 8:15-cv-02693 (D. Md. filed Sept. 11, 2015),

[2] *David Poyet  v. Avid Life Media, Inc. and Avid Dating Life, Inc.*, No. 2:15-cv-08456 (C.D. Cal. (filed Oct. 29, 2015).

warranted given the many millions of people affected by the breach and Defendants' fraudulent conduct.  Structuring leadership to efficiently prosecute and protect each Groups' claims in a coordinated, cooperative and efficient manner serves the purposes of Rule 23(g).

For the reasons set forth below, Gary E. Mason respectfully submits that he merits appointment as Interim Co-Lead Class Counsel[3] and Michael Braustein, Michael Flannery and Robert Shelquist merit appointment to the Executive Committee.  Mason and his firm, Whitfield Bryson & Mason LLP, have a proven record of leadership and effectively resolving large consumer and data breach class actions.[4]  The firm's extensive class action experience has provided its attorneys with thorough knowledge of the law and class action issues likely to drive this litigation.  Mason, Braunstein, Flannery and Shelquist not only have the skills and resources needed to bring this MDL to a successful conclusion, they have taken the lead on the fraud claims from the start.  These four attorneys have performed substantial work in investigating the facts and the potential claims and the Defendants.  They have reviewed more than 200,000 emails and documents disclosed as a result of the breach, many of which have been referred to in Russell and Poyet's complaint, and retained technology experts to review the "fembot" coding They have spoken to and represent several users of the Ashley Madison's site who have been subject to extortion attempts subsequent to the breach and filed the first complaint alleging that the Defendants created false female profiles and "fembots" to lure in and profit from consumers with a plaintiff that ensures this matter will proceed because he is willing to use his own name.

---

[3] The undersigned counsel do not oppose John Driscoll's or  Joseph Siprut's applications for Co-Lead Counsel, but respectfully submit that the complexity of this case and potential for conflict warrants appointment of counsel to independently represent the interest of plaintiffs with "fembot" fraud claims, as Co-Lead and as members of the Executive Committee.  The undersigned counsel further note that amongst the candidates for Co-Lead Counsel, all of whom are well-qualified to serve this role, Mr. Siprut stands out for his significant and recent experience prosecuting class actions arising from data breaches.

[4] For example, Mason was recently appointed Liaison Counsel in *In Re: U.S. Office of Personnel Mgmt.Data Security Breach Litig.*, MDL No. 2664 (D.D.C) (Order dated Jan. 28, 2016).

Accordingly, Plaintiffs Russell and Poyet respectfully request that the Court grant its motion and make these interim leadership appointments.

## II.    RELEVANT BACKGROUND

### A.    Summary of Facts.

AshleyMadison.com is owned by Avid Life Media, a privately-held Canadian corporation founded by its CEO Noel Biderman. Defendants operate AshleyMadison.com to facilitate sexual encounters for people who are married or are in committed relationships. Defendants market AshleyMadison.com with the slogan, "Life is short. Have an Affair" and target married/involved people for their matchmaking services. Defendants represent that "[t]housands of cheating wives and cheating husbands sign up everyday looking for an affair."

Ashley Madison's revenue model relies upon users purchasing "credits" to interact with one another, as opposed to a subscription-based model. To initiate a conversation with another user, one must "pay" five credits.  Users buy credits from the website and enter their credit or debit card information to buy credits.  Various means of interacting with other users, such as having instant messaging, online chats, or sending messages to prospective matches, cost different amounts of credits. Ashley Madison substantially contributed to the $115 million in gross revenue for Defendant Avid Life Media in 2014, resulting in pretax profits of $55 million.

On July 12, 2015, Defendants learned that their computer systems had been hacked by notification on each of their employees' internal computers greeting screen.  The statement provided that "[w]e have taken over all systems in your entire office and production domains, all customer information databases, source code repositories, financial records, emails."  On or about July 19, 2015, a third party calling themselves the "Impact Team" announced that it had hacked Ashley Madison, downloaded Ashley Madison users personal information, along with

large amounts of Defendants' internal documents and employee emails.  "The Impact Team" threatened to release the personal information, other internal documents and communications if the website was not shut down.  Defendants did not shut down the site and the hackers released the customers' personal information and Defendants' internal documents and communications.

The released information revealed that "a significant of female profiles on the site are fake. Included in the released information was Defendants' computer code, including code from fake female robot profiles intended to interact with male customers. The site's source code reveals that it was designed to create the illusion that there were women on the site eager to start a conversation and interact with male visitors to the site. Comments in the code contain "a set of descriptions for how the engager bots should act" providing:

> host bot mother creates engagers
>
> birth has been given! let the engager find itself a man!
>
> randomizing start time so engagers don't all pop up at the same time
>
> for every single state that has guest males, we want to have a chat engager

The code includes messages to be sent automatically from the bot to the guest member. These messages, of which there are many, were intended to deceive guest members that the messages were from real women.  Examples of these messages include:

> I'm a new member just saying hello.  I think I'm  alot of fun. I like to try new things and I'm really up for anything you can think of. You can send me a message but I prefer to chat if you are ok with that.
>
> I don't want to send any opening lines because I am not that generic but I would definitely like to chat sometime.
>
> Hello Hello! After years of :( I've decided to take :) into my own hands and try something completely different.  I've never done

4

anything like this before. Have you? Are you a romantic? Have a good sense of humor? A great imagination? Can you make me smile?

My profile may not reveal that much about me but that's because I'm saving the best stuff for when we chat. Do you ever chat online?

I recently joined to see if I could find someone who may be in a similar situation as me. Not completely fulfilled and looking for some good, clean fun. Tell me a little bit more about yourself and if I think we're compatible I'll write you back.

I'm dropping by to say hello. I'm fairly new to an online experience but at this point in my life I'm willing to try something new and different to see if someone can spark my interest. If you'd like to chat please either send me a message or if you see me online then let's chat.

Emails in CEO Noel Biderman's Inbox contain evidence that the company knew very well that most of their money came from bots flirting with men. *See, e.g.,* Powerpoint, "Engagers vs Females," attachment to Email from Rizwas Jiwan to Noel Biderman, dated Nov. 30, 2012 (showing that 24 hours before purchase, 81% of messages were sent by "hosts").

Avid Life Media executive Keith Lalonde, who spearheaded international efforts for the company, sent a long email to Biderman and other senior management on June 27, 2013, with the subject line 'how angels are made.' In it, he details how workers use something called the "**fraud-to-engager tool**" to build profiles. ('**Should tweak it and rename it**,' Lalonde noted. "Um, yeah."). Email from Keith Lalonde to Noel Biderman Thursday, June 27, 2013, Re: How Angels Are Made. (Emphasis added.)

The fraud was successful. The disclosed documents reveal that 80% of the men who 'convert,' or make a purchase on Ashley Madison, do so as a result of engagers.

5

## B.       Procedural History of the MDL Cases.

On July 22, 2015, three days after the release of customers' personal information, the first data breach action was filed by the The Driscoll Firm, P.C. and Dowd & Dowd, P.C. This lawsuit was followed by the filing of multiple data breach actions in varying Districts throughout the country.  While several of these actions made consumer fraud claims relating to Defendants data protection representations, none of these first filed actions made consumer fraud claims relating to Defendants creating false female profiles and "fembots" to lure in and profit from consumers.

On September 11, 2015, Russell filed his consumer fraud case based on Ashley Madison's practice of creating false female profiles and "fembots" to lure in and profit from consumers. When *Russell* was filed, none of the data breach cases contained any claims regarding Defendants creating false profiles and "fembots" to profit from consumers. After *Russell* was filed, Poyet filed his complaint similarly limited to the Defendant's fraudulent conduct, and some other plaintiffs amended their complaints to add fraud allegations.

The majority of the complaints filed have used pseudonyms – a practice Defendants are challenging and, if successful, may result in the dismissal or withdrawal of many of the complaints, and withdrawal of associated counsel.  The *Russell* and *Poyet* complaints are two of only eight complaints (out of 20) filed by plaintiffs proceeding under their own (non-fictitious) names.[5]

---

[5] The other six are: *Pauly v. Avid Life Media, Inc. and Avid Life Dating, Inc.*, No. 4:15-cv-01924 (E.D. Mo.); *Lisuzzo v. Avid Life Media, Inc. and Avid Life Dating, Inc.,* No. 4:15-cv-01945 (E.D. Mo.); *DeLoach v. Avid Life Media, Inc. and Avid Life Dating, Inc.,* No. 4:15-cv-01925 (E.D. Mo.); *Berki, et al., v. Avid Life Media, Inc. and Avid Life Dating,Inc.,* No. 4:15-cv-01928 (E.D. Mo.); *Alfaro v. Avid Life Media, Inc. and Avid Dating Life, Inc.,* No. 4:15-cv-01930 (E. D. Mo.); *Campbell v. Avid Life Media, Inc. and Avid Life Dating, Inc.,* No. 4:15-cv-01944 (E.D. Mo.).

The JPML in its  Transfer Order recognized that the *Russell* action, and by extension the other "fembot" related consumer fraud claims, involve unique issues that might warrant separate pre-trial procedures (JPML Transfer Order at 2 ("To the extent that *Russell* involves unique issues, the transferee judge has the discretion to handle those issues through the use of appropriate pretrial devices . . ." ) and  transferred, but did not consolidate, all Ashley Madison related cases to the U.S. District Court for the Eastern District of Missouri..

Therefore, Plaintiffs Russell and Poyet respectfully request that the Court grant their motion and make these interim leadership appointments.

### III.    ARGUMENT

#### A.    Legal Standard for Appointing Interim Class Counsel.

The *Manual for Complex Litigation* (4th ed. 2004) ("Manual 4th") recommends that early in complex litigation, the Court should appoint one or more attorneys to act on behalf of other counsel and their clients.  Counsel so designated "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel." *Id.,* § 10.22.  The "most important" goals of appointing counsel to leadership positions are "achieving efficiency and economy" and ensuring that the interests of the class are well served.  *Id.* §§ 10.221, 21.212.  Particularly where, as here, several related cases are pending, "the selection and activity of class counsel are often critically important to the successful handling of a class action." Fed. R. Civ. P. 23(g) advisory committee's note (2003).

The Federal Rules accordingly authorize the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).  Various types of interim counsel may be appointed, such as lead and liaison.  *See* Manual 4th § 10.221 (discussing typical responsibilities of lead and liaison counsel).  All

7

firms designated as class counsel assume the duty to represent the interests of the class "fairly and adequately." Fed. R. Civ. P. 23(g)(4).

The framework for appointing class counsel under Rule 23(g)(1) and (2) also applies to the appointment of interim class counsel under Rule 23(g)(3), the subject of this motion. *See, e.g.*, *Steele v. United States*, No. 14-1523, 2015 WL 4121607, at * 3 (D.D.C. June 30, 2015) (stating that "Rule 23(g), which outlines the factors a court must consider when appointing class counsel, applies equally to the appointment of interim class counsel before certification." (collecting cases)); *see also Air Cargo Shipping Servs.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (finding that "it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of Class counsel once a Class is certified, apply equally to the designation of interim Class counsel before certification.").

Thus, in deciding whom to appoint as interim Class counsel here, the Court should consider the following factors:

1. the work counsel has done in identifying or investigating potential claims in the action;

2. counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action;

3. counsel's knowledge of the applicable law; and

4. the resources that counsel will commit to representing the Class.

Fed. R. Civ. P. 23(g)(1)(A). In addition, the Court "may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

8

**B.**    **Gary E. Mason and Whitfield Bryson & Mason LLP Merit Appointment as Interim Co-Lead Class Counsel.**

Upon retention by Russell to investigate his potential fraud claims against the defendants, Gary Mason has diligently investigated and analyzed the relevant facts, claims for relief, and possible defenses. *Russell* was the first fraud and only fraud case in this MDL. Not only was *Russell* the first case filed with a named plaintiff, there are only seven others, one of which supports this motion. As raised by defense counsel during the initial Court conference, this is a potentially significant because if the challenge to using pseudonyms is successful, some plaintiffs may not be willing to proceed. This could result in the discontinuing of certain actions and the withdrawal of certain attorneys.

Further, Mason has more than 25 years of experience prosecuting consumer class actions and has litigated privacy class actions for more than 10 years. Mason has worked successfully with many of the law firms involved in this proceeding. Mason has served in leadership roles in numerous class actions and currently serves as Court-appointed Interim Liaison Counsel in *In Re: U.S. Office Of Personnel Mgmt. Data Security Breach Litig.*, MDL No. 2664 (D.D.C) and has demonstrated that he will productively and efficiently collaborate with all counsel in this MDL to advance the interests of the proposed Class or Classes.

### 1.    Mason Led the Investigation and Filing of the Fraud Claims.

Several months after the disclosure of the data breach, several publications, including *Slate* and *Gizmodo*, published reports on the emails and code made public by the disclosure which revealed that Defendants used fraudulent profiles and computer programming designed to mimic real conversations to persuade potential users of the Ashley Madison website to pay for access to the site. At the request of Plaintiff Russell, who had read these articles and recognized himself as a victim of this fraud, Mason and Braunstein, together with attorneys and paralegals

9

from their firms, obtained and independently reviewed the emails and code referenced in these articles, thereby confirming the published media reports. Mason and Braunstein interviewed Russell and several other persons who paid for access to the Ashley Madison website to develop the allegations and ensure their accuracy. The complaint filed on behalf of Russell reflects a culling of this research and the pertinent facts.

After filing the complaint, Whitfield Bryson & Mason continued to investigate Defendants' fraudulent conduct and reviewed more than 200,000 emails disclosed by the breach, while developing and refining strategies for pursing the claims. This investigation revealed that the body of evidence that supported the fraud claims was separate and distinct from the data breach claims, would involve the engagement of experts related to issues unique to these claims and, given the potential for a limited fund settlement, presents potential conflicts among competing claims for damages. Consequently, counsel for *Russell* argued before the JPML and this Court that the fraud claims warranted separate representation. While this Court has now held that a separate track would be inefficient and not necessary at this time, leadership should be structured to protect these groups interest, and Mason's continuing attention to these claims on behalf of Russell and Poyet would ensure against any compromise of these claims in favor of the data breach claims if he is appointed to serve as Co-Lead Counsel. The alleged "paid delete" claim also merits close attention, but as this claim is closely related to the data breach claim insofar as both relate to the data assumed to be secure, plaintiffs with this claim will be well represented by the attorneys leading the prosecution of the data breach claims. Mason respectfully submits that the Court, as well as the proposed Class, would benefit from his continuing leadership with respect to the "fembot" fraud claims.

### 2.    Mason Has the Requisite Experience and Knowledge to Pursue the Best Interests of the Class.

Mason is the Managing and Founding Partner of Whitfield Bryson & Mason LLP, an eleven attorney national plaintiffs' litigation law firm with offices in Washington, D.C., Raleigh, North Carolina, Madisonville, Kentucky, and Nashville, Tennessee.  His practice has focused on consumer class actions for more than 25 years.  While his practice has focused primarily on consumer fraud, Mason is also a leader among data breach attorneys, having fought in this arena for nearly ten years.  He has served as lead or co-lead counsel in numerous MDLs, including several prominent cases arising from data breaches.  Mason currently serves as court-appointed Liaison Counsel in *In Re: U.S. Office of Personnel Mgmt. Data Security Breach Litig.*, MDL No. 2664 (D.D.C), and previously served as Court-appointed Lead Counsel in *In re Google Buzz Privacy Litig.*, No. 5:10-cv-00672 (N.D. Cal. 2010) ($8.5 million settlement),  Co-Lead Counsel in *In re Dept. of Veterans Affairs (VA) Data Theft Litig.*, No. 1:2006-cv-00506, MDL 1796 (D.D.C. 2006) (theft of external hard drive containing sensitive personal information of 26.6 million veterans and their spouses; $20 million settlement fund for affected veterans and *cy pres* relief for two non-profits serving veterans); and Executive Committee Member in *In re: Adobe Sys. Inc. Privacy Litig.*, No. 5:13-cv-05226 (N.D. Cal. 2015) (settlement requiring enhanced cyber security measures and audits).

Mason has served as lead or co-lead counsel in significant consumer fraud class actions across the country, including *Hobbie v. RCR Holdings II, LLC*, No. 10-cv-00113, MDL No. 2047 (E.D. La. 2012) (354 unit condominium built with Chinese drywall; $30 million settlement providing complete remediation), *In re: MI Windows & Doors Inc. Prods. Liab. Litig.*, No. 2:12-mn-00001, MDL No. 2333 (D.S.C.) (defective windows; claims-made settlement for over 1 million homes), *Galanti v. Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J. 2003) (nationwide

11

settlement established $330 million fund for owners of homes with defective radiant heating systems); *Nnadili v. Chevron U.S.A., Inc.*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station); and *Young v. Nationwide Mutual Ins.*, 693 F.3d 532 (6th Cir. 2012) (Lead Counsel; affirming lower court's opinion certifying class action; multiple settlements). He currently serves as court-appointed Co-Lead Counsel in *In re: GNC Picamilon/BMPEA Litig.,* No. 2:15-cv-1391 (W.D. Pa.) (court-appointed Co-Lead Counsel).

Mason is a graduate of Brown University (A.B., 1984, Honors, Phi Beta Kappa) and Duke Law School (1987), where he was an Articles Editor for Law and Contemporary Problems. He is a member of the American Bar Association and the American Association for Justice (former Co-Chair, Class Action Litigation Group; Chair, Rule 23 Working Group). He has been listed annually as a *District of Columbia Super Lawyer* since 2012. Well-known for his legal skills and commitment to professional ethics, Mason consistently receives Martindale Hubbell's highest rating ("AV-Preeminent").

### 3.    Whitfield Bryson & Mason LLP Possesses and Will Apply the Resources Necessary to Effectively Prosecute These Claims.

As Whitfield Bryson & Mason's firm resume demonstrates, the firm has many years of complex litigation experience and the resources to support its appointment as Interim Co-Lead Class Counsel in this MDL.[6] The firm is committed to dedicating all necessary resources in pursuit of the best interests of Plaintiffs and the proposed Class, and will prosecute this litigation vigorously.

In response to the Court's query regarding a common fund, Whitfield Bryson & Mason has extensive experience in managing and maintaining litigation funds in MDL's and other

---

[6] The firm resume for Whitfield Bryson & Mason LLP is attached hereto as Exhibit A.

multi-plaintiff/multi-counsel litigations.  The firm has the accounting resources and experience to ensure that sufficient funds are collected to pursue this litigation, that common costs are promptly and accurately paid and that "held" costs incurred by co-counsel are carefully and periodically monitored.

**C.    Michael L. Braunstein Merits Appointment to the Plaintiffs' Steering Committee.**

Michael L. Braunstein's investigation and client led to the first filed "fembot" fraud case. When *Russell* was filed, none of the ten filed Ashley Madison lawsuits made these claims, but Braunstein, as directed by  concerns of  Russell, focused on the "fembot" fraud aspect of this case.

Braunstein has vigilantly pursued this action since being retained by Christopher Russell in August, 2015.   Upon retention, Braunstein co-counseled with Mason, with whom he has previously successfully worked on complex litigation, including numerous consumer class actions, knowing that Mason was nationally recognized for his expertise in consumer and data breach class actions.   Braunstein has worked closely with Mason from the inception of this matter.

Because of  Braunstein's reputation and advanced knowledge of the case (having reviewed more than 200,000 emails and scores of other documents released by the hackers), he was invited to speak about Ashley Madison at HarrisMartin's MDL Conference in New Orleans and presented after keynote speaker James Carville.

The proposed Class would benefit from  Braunstein's litigation experience, as well as his different opinions and views concerning the focus of this litigation.

1.   **Braunstein, with Mason, Led the Investigation and Filing of the First Fraud Claim and Has Diligently Pursued the Best Interests of the Class.**

Braunstein's client and investigation led to the first filed "fembot" fraud case.  While the "fembot" information was available to all counsel, Braunstein's differing opinion and views led to the filing of a new and unique claim that benefits the proposed Class.

Along with Mason and Flannery, Braunstein retained technology experts to download the released Ashley Madison documents and review the released "fembot" computer code.  After filing the complaint, Braunstein continued investigating Defendants' fraudulent conduct, reviewing more than 200,000 emails and documents disclosed by the breach.  Further, Braunstein communicated with the retained technology experts regarding the "fembot computer code.

Braunstein presented on Ashley Madison at Harris Martin's MDL Conference in New Orleans, argued before the JPMDL, attended in person both the Plaintiffs' organization meeting in St. Louis and Initial Court Status Conference.

2.   **Braunstein Has the Requisite Experience and Knowledge to Pursue the Best Interests of the Class.**

Braunstein, has appeared in courts throughout the country and worked on several significant cases, including the collapse of 7 World Trade Center following 9/11, the constitutionality of a New York City zoning ordinance's infringement on free speech, and consumer class actions including the nationally certified Best Buy price match suit, among others. He served as the Penobscot Indian Nation's lead attorney, successfully challenging a United States Department of Housing and Urban Development rule regarding using tribe gift funds for a home down payment.

Braunstein's experience, competence and dedication to pursuing his client's best interests has been judicially recognized. Judge Stephen Crane, then Chief Administrative Judge of the New York Supreme Court, stated that:

> I can't conceive of anything your client could have done more than you've done in these cases . . .
>
> You're there for your client every step of the way. And coming in with this application today went beyond even my own conception of what a lawyer might do to protect his client's interest found in the kind of situation - with which I am not unsympathetic, that your client finds itself in.

As lead attorney in a consumer class action alleging that a Fortune 100 company failed to honor its public price match guarantee, the Federal Court Judge stated about Braunstein, that "[b]ased on the submissions before the Court, plaintiff's counsel clearly has the experience, qualifications and competence necessary to prosecute this action vigorously." Braunstein's class action experience is set forth more fully in the attached firm resume.

> **3.    Braunstein Possesses and Will Apply the Resources Necessary to Effectively Prosecute These Claims.**

As The Braunstein Law Firm's firm resume demonstrates, Braunstein has many years of complex litigation experience and the resources to support appointment to the executive committee.[7] The Braunstein Law Firm is committed to dedicating all necessary resources in pursuit of the best interests of Plaintiffs and the proposed Class, and will prosecute this litigation vigorously.

> **D.    Michael J. Flannery and Cuneo Gilbert & LaDuca Merit Appointment to the Plaintiffs' Steering Committee.**
>
> **1.    Michael J. Flannery and Cuneo Gilbert & LaDuca have the Requisite Experience and Knowledge to Pursue the Best Interests of the Class.**

---

[7] A copy of the resume of The Braunstein Law Firm is attached as Exhibit B.

Michael J. Flannery and his firm, Cuneo Gilbert & LaDuca ("CGL"), merit appointment to the Plaintiffs' Steering Committee.  Flannery has been in practice for over 25 years, and has practiced for the last 15 years in St. Louis.  His practice, although nationwide in scope, has included numerous complex class action matters at both the state and federal court level in Missouri, including numerous cases litigated in this District.  As such, he is fully conversant with this Court's local rules and procedures.

Flannery has significant complex class action experience, including several matters litigated in this District.  During his career, he has worked on numerous high profile cases, including: *In re Charter Commc'ns, Inc. Secs. Litig.*, MDL No. 1506, Case No. 02-CV-1186 CAS (E.D. Mo.) (securities fraud class action settled for $144 million on behalf of investors); *In re NASDAQ Market-Makers Antitrust Litig.*, S.D.N.Y. MDL No. 1023 (investors alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy; case was settled for a total of $1.027 billion dollars, at the time the largest antitrust settlement ever) and *Law, et al. v. Nat'l Collegiate Athletic Ass'n*, No. 2:94-cv-2053-KHV (D. Kan.) (in the Restricted Earnings Coach Antitrust litigation, hundreds of college coaches alleged wrongful denial of fair pay by their schools as part of a misguided NCAA effort to cut costs; at trial, a federal court jury in Kansas City, Kansas awarded the coaches over $70 million dollars).

CGL provides a wealth of litigation, leadership, claims resolution, and strategy experience.  CGL has successfully lead large, multidistrict litigation and has a demonstrated ability to organize and manage large litigation and to do so cooperatively with counsel for all of the involved parties.  Other federal courts have recognized as much by appointing these attorneys to leadership positions in other MDLs and class actions.

16

CGL devotes the majority of its practice to the representation of clients involved in antitrust, securities, corporate governance, consumer protection, and products liability complex and class action litigation.  The firm has achieved success for a range of clients by: helping to recover billions of dollars in shareholder litigation, obtaining compensation for Holocaust survivors, working to recover hundreds of millions of dollars for homeowners with defective construction materials, and, in several jurisdictions, ending the practice of jails subjecting minor law violators to unnecessary strip searches.  The firm has years of experience litigating and prosecuting complex class action such as this case, including such cases as the *Enron Securities Litigation* where more than $7 billion was recovered for defrauded investors and CertainTeed's defective organic shingles litigation where the firm served as Co-lead Counsel in an MDL that secured a settlement valued at more than $700 million.

CGL has also been involved in a host of cases involving product defect and misrepresentation.  *See In re: CertainTeed Corp. Roofing Shingle Prods. Liab. Litig*., MDL No. 1817 (E.D. Pa.) (defective organic shingles litigation, firm served as Co-lead Counsel in an MDL that secured a settlement valued at more than $700 million); *In re Building Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig*., MDL No. 2283 (D.S.C.) (Co-Lead Counsel for a class of approximately six million individuals); *In re: Kitec Plumbing Sys. Prods. Liab. Litig*., MDL No. 2098 (N.D. Tex.) (Co-Lead Counsel to a $125 million settlement concerning defective Kitec Plumbing Systems sold throughout the United States); *In re Zurn Pex Plumbing Litig*., MDL No. 1958 (D. Minn.); *In re Uponor, Inc. F1807 Plumbing Prods. Liab. Litig*., MDL No. 2247 (D. Minn.) (Lead Counsel); *In re: CertainTeed Fiber Cement Siding Litig*., MDL No. 2270 (E.D. Pa.); *In re IKO Roofing Shingle Products Liab. Litig*., MDL No. 2104 (M.D. Il.); *In re: HardiPlank Fiber Cement Siding Litig*., MDL No. 2359 (D. Minn.); *Gonzalez, et al. v. Owens*

17

*Corning*, No. 13-cv-1378 (W.D. Pa.) (design defect and misrepresentation action); *Melillo et. al. v. Building Prods.of Canada*, Case No. 618-11 (Vermont St. Ct.) (settlement valued at approximately $39-$100 million); *In re: Groupon, Inc. Mktg and Sales Practices Litig.,* MDL No. 2238 (D.D.C.).

      **2.     Cuneo Gilbert & LaDuca Has Sufficient Resources to Advance the Litigation in a Timely Manner.**

CGL is capable of committing the resources needed for this litigation during the entirety of its duration. [8] CGL has 21 lawyers and additional, highly capable legal support staff. To be sure, this litigation will be properly staffed with capably experienced attorneys, paralegals, and other legal professionals.

CGL is a well-established firm with the financial wherewithal to support the litigation. Moreover, as stated previously, CGL has served in leadership roles in various complex class action and resource-intensive litigations, and is knowledgeable about the resources necessary to adequately litigate this type of case. CGL and its attorneys are also well versed in the various legal issues pertaining to Rule 23 class certification in this type of case. As demonstrated by CGL's work in the other class actions they have successfully prosecuted, it has the necessary resources to prosecute this action and will devote those resources to the prosecution of this action in a manner that best serves the interests of the class members.

      **E.     Robert K. Shelquist and Lockridge Grindal Nauen P.L.L.P Merit Appointment to the Plaintiffs' Steering Committee.**

      **1.     Robert K. Shelquist and Lockridge Grindal Nauen P.L.L.P have the Requisite Experience and Knowledge to Pursue the Best Interests of the Class.**

Robert K. Shelquist and Lockridge Grindal Nauen P.L.L.P ("LGN") merit appointment to the Plaintiffs' Steering Committee. Robert Shelquist would serve as a valuable member to the

---

[8] The firm resume for Cuneo Gilbert & LaDuca LLP is attached hereto as Exhibit C.

PSC here.  Shelquist has extensive experience in complex litigation, and has been appointed to lead, co-lead, executive and steering committee positions in numerous cases, both small and large MDL consolidations.[9] Through these experiences,  Shelquist has seen and worked through firsthand the difficulties inherent in coordinating discovery, legal positions, staffing, and communication with a large, diverse group and is committed to that endeavor here.   Shelquist has also demonstrated his willingness to work with others in a variety of contexts from leadership positions to committee leadership positions to providing substantive work under the direction of others.   Most of these cases involved complex issues that were overlaid with insurance issues that likely will be part of this litigation as well.   Shelquist is personally willing and available to commit substantial effort and energy to prosecute this litigation and to work cooperatively with all plaintiffs' counsel towards a successful resolution through settlement negotiations, trial, or appeal.

**2.    Lockridge Grindal Nauen Has Sufficient Resources to Advance the Litigation in a Timely Manner**

LGN is willing and able to support the litigation of this action. LGN, founded in 1978, has extensive experience in complex and multidistrict litigation.  Comprised of over 30 attorneys assisted by more than 20 paralegals and government relations specialists, LGN is well-acquainted with the financial requirements and the time commitments necessary to prosecute this action.  LGN is also willing to allocate the resources necessary to meaningfully participate in this MDL. LGN and  Shelquist have the resources, willingness, and availability to commit to this time-consuming and challenging MDL litigation.  Shelquist will work cooperatively with others while at the same time bring his significant and beneficial professional experiences to bring to this litigation.

---

[9] The firm resume for Lockridge Grindal Nauen P.L.L.P is attached hereto as Exhibit D.

19

## III.   CONCLUSION

For the foregoing reasons, Plaintiff Christopher Russell respectfully requests the  Court to enter an Order (1) appointing Gary E. Mason of Whitfield Bryson & Mason LLP as Interim Co-Lead Class Counsel, and (2) appointing Michael J. Flannery,  Michael L. Braunstein and Robert K. Shelquist to the Plaintiffs' Steering Committee.

Dated: Feb. 1, 2016                                    Respectfully submitted,


/s/ Michael J. Flannery
Michael J. Flannery (52714MO)
**CUNEO GILBERT & LADUCA, LLP**
7733 Forsyth Boulevard
Suite 1675
St. Louis, MO  63105
Phone: (314) 226-1015
mflannery@cuneolaw.com

**WHITFIELD BRYSON & MASON LLP**
Gary E. Mason
1625 Massachusetts Ave. NW
Ste. 605
Washington, DC 20036
Tel: (202) 429-2290
gmason@wbmllp.com

**THE BRAUNSTEIN LAW FIRM, PLLC**
Michael L. Braunstein
3 Eberling Drive
New City, NY 10956
Tel: (845) 642-5062
MBraunstein@BraunsteinFirm.com

*Attorneys for Plaintiff Christopher Russell*

20

**LOCKRIDGE GRINDAL NAUEN P.L.L.P**
Robert K. Shelquist
Rebecca A. Peterson
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

**ROBBINS ARROYO**
Brian J. Robbins
Kevin A. Seely
Ashley R. Rifkin
Leonid Kandinov
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
kseely@robbinsarroyo.com
arifkin@robbinsarroyo.com
lkandinov@robbinsarroyo.com

*Attorneys for Plaintiff David Poyet*

21