# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|                                              |     |                        |
| -------------------------------------------- | --- | ---------------------- |
| IN RE ASHLEY MADISON CUSTOMER                | )   |                        |
| DATA SECURITY BREACH LITIGATION              | )   |                        |
|                                              | )   | MDL No. 2669           |
| This Document Relates to:                    | )   |                        |
|                                              | )   | Case No. 4:15MD2669 JAR |
| ALL CASES                                    | )   |                        |
|                                              | )   |                        |

**DEFENDANT AVID DATING LIFE INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER PRECLUDING
<u>USE OF STOLEN DOCUMENTS BY PLAINTIFFS OR THEIR COUNSEL</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 4

    A.    The Court Has The Inherent Equitable Authority To Enter A Protective Order Prohibiting the Use of the Stolen Documents and Requiring Plaintiffs and Their Counsel to Destroy Any Copies They May Have of the Documents ................................................................................................. 4

    B.    An Attorney's Use of Stolen Documents is Improper and Can Subject the Attorney to Severe Sanctions. ...................................................................... 6

    C.    Neither Plaintiffs Nor Their Counsel Should be Permitted to Retain, Review, or Use Privileged Documents That Have Been Disclosed Without Authorization .......................................................................................... 9

        1.    Plaintiffs Acknowledge Some of the Stolen Documents are Privileged .............. 9

        2.    The Law Prohibits Use of Privileged Documents by Opposing Parties ............ 10

        3.    Stolen Documents Do Not Lose Privileged Status ............................................ 11

        4.    Plaintiffs' Belief That the Crime-Fraud Exception May Apply Does Not Entitle Them to Review or Use the Privileged Documents ............................... 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arnold v. Cargill Inc.*,
  No. 01-2086 (DWF/AJB)), 2004 WL 2203410 (D. Minn. Sept. 24, 2004)........... 10, 12

*Castellano v. Winthrop*,
  27 So.3d 134, 135 (Fla. Ct. App. 2010) ........................................................................ 6

*Fayemi v. Hambrecht & Quist, Inc.*,
  174 F.R.D. 319 (S.D.N.Y. 1997) ................................................................................. 5

*Furnish v. Merlo*,
  No. CIVIL 93-1052-AS, 1994 WL 574137 (D. Or. Aug. 29, 1994) ........................... 12

*Gifford v. Target Corp.*,
  723 F. Supp. 2d 1110 (D. Minn. 2010) ....................................................................... 10

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001) .................................................................................... 12

*Grand Jury Proceedings Involving Berkeley & Co.*,
  466 F. Supp. 863 (D. Minn. 1979) .............................................................................. 11

*In re BankAmerica Corp. Securities Litig.*,
  270 F.3d 639 (8th Cir. 2001) ...................................................................................... 13

*In re Ryder*,
  381 F.2d 713 (4th Cir. 1967) ........................................................................................ 6

*In Re Shell Oil Refinery*,
  143 F.R.D. 105 (E.D.La. 1992) .................................................................................... 5

*Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*,
  225 F.R.D. 120 (D.N.J. 2004) ..................................................................................... 12

*Pure Power Boot Camp* v. *Warrior Fitness Boot Camp*,
  587 F. Supp. 2d 548 (S.D.N.Y. 2008) .......................................................................... 5

*Resolution Trust Corp. V. Dean*
  813 F. Supp. 1426 (D. Ariz. 1993) ............................................................................. 10

*Shukh* v. *Seagate Tech.*,
  848 F. Supp. 2d 987 (D. Minn. 2011) ......................................................................... 11

*Smith v. Armour Pharmaceutical Co.*,
  838 F.Supp. 1573 (S.D.Fla. 1993) ......................................................................... 4, 11

*State Comp. Ins. Fund. V. WPS, Inc.*,
  70 Cal. App. 4th 644 (Cal. 1999) ............................................................................... 10

*United States v. Rigas*,
  281 F. Supp. 2d 733 (S.D.N.Y. 2003) ........................................................................ 12

*United States v. Zolin*,
   491 U.S. 554 (1989) ................................................................................................... 13

**Statutes**

69 Am. Jur. Trials 411 § 30 (1998) ............................................................................. 5, 8

**Other Authorities**

ABA Comm.on Ethics and Prof. Responsibility, Formal Op. 94-382 (1994) .................. 12

American Law Institute - American Bar Association Continuing Legal Education,
   Corporate Internal Investigations – Legal Privileges and Ethical  Issues in the
   Employment Law Context, SF42 ALI-ABA 927, 950 (Feb. 2001) .............................. 8

California State Bar Standing Committee on Professional Responsibility and Conduct,
   CA Eth. Op. 2013- 188, 20913 WL 2894718 ............................................................ 13

Iowa Practice Series, Lawyer and Judicial Ethics, § 8:4(d)(3) ......................................... 9

*Joel B. EISENSTEIN*, *Respondent*, 2015 WL 9690980 (Mo.) .......................................... 6

**Rules**

E.D.Mo. L.R. 83-12.01 ................................................................................................... 5

Missouri Rules of Professional Conduct 4-8.4 (c) & (d) .................................................. 6

Missouri Rules of Professional Conduct Rule 4-8.4 ...................................................... 5, 6

Missouri Rules of Professional Conduct Rule 4-8.4(c) .................................................... 6

Rule 26 of the Federal Rules of Civil Procedure ............................................................. 4

**<u>INTRODUCTION</u>**

In their filings with this Court, Plaintiffs and their counsel have acknowledged: 1) that on or about July 19, 2015, a third-party calling itself the "Impact Team" announced that it had hacked the Ashley Madison website owned and operated by Defendant Avid Dating Life Inc.; 2) that in addition to stealing the personal information of users, the hackers also stole internal company documents and communications, including e-mails of company executives; 3) that Canadian and U.S. law enforcement agencies have been investigating this crime; and 4) that the stolen company documents include attorney-client privileged information.[1]

Avid Dating Life has objected to Plaintiffs or their counsel using the stolen documents, including any privileged documents, and asked Plaintiffs to enter a stipulation agreeing to refrain from using the stolen documents and to destroy any copies they may have of the stolen documents, but Plaintiffs have refused to do so. *See*, 2/19/15 Letter from R. Cassetta to Plaintiffs' Co-Lead Counsel and Liaison Counsel, attached hereto as Exhibit 1; proposed stipulation regarding privileged documents, Exhibit 2; 2/22/15 E-mail from J. Driscoll, Plaintiffs' Co-Lead Counsel, to R. Cassetta (refusing to enter into proposed stipulation), attached as Exhibit 3.

---

[1] *See, e.g.*, Plaintiff Christopher Russell's Memorandum in Support of Motion for Appointment of Michael J. Flannery As Liaison Counsel for the Fraud Group [Document No. 59] at 5-6 (describing the computer hack and theft of internal company documents, including e-mails from company executives); Katie Rogers, *After Ashley Madison Hack, Police in Toronto Detail a Global Fallout,* N.Y. Times August 24, 2015 (Technology), attached as Exhibit 1 to Plaintiffs' Motion for Leave to Proceed Under Pseudonyms (describing investigations by Canadian and U.S. Law Enforcement Agencies, including the FBI); Plaintiff Matthew Lisuzzo's Motion for Leave to File Under Seal, Ultimately Seeking A Ruling That the Crime-Fraud Exception to the Attorney-Client Privilege Applies to Email Communication Between Defendant and Its General Counsel and Defendant and Barnes & Thornburg LLP For The Time Period of January 11, 2015 to September 1, 2015 [Document 49] (acknowledging privileged nature of communications but seeking to have crime-fraud exception apply).

Federal and state caselaw, federal and state rules of professional conduct, and ethics opinions interpreting those rules make clear that: 1) an attorney receiving property that he knows or suspects to be stolen, including documents, should not keep or use the stolen property; and 2) an attorney receiving documents that appear to be communications between an attorney and his client should not review or use those documents. Sanctions for violations of these rules can be extremely severe, including discipline by the state or federal bar or disqualification of attorneys in pending litigation. In an egregious case, the court has the authority to enter judgment against the offending party.

With respect to privileged documents, the law is clear that however the lawyer obtains apparently privileged documents, he must refrain from reviewing or using the documents. In other words, whether or not the lawyer acted improperly in obtaining the documents, he is to refrain from using privileged information—especially where he knows the information was stolen. Any other policy would be an invitation—and incentive—for cyber-criminals to create a marketplace for hacked documents and purloined privileged communications.

Many of the cases addressing non-privileged stolen documents involve situations where the client or lawyer themselves were involved in the theft of the documents. The policy rationale for not allowing a lawyer to use non-privileged documents he knows or suspects to have been taken unlawfully from another party is the same, however, whether or not the lawyer wrongfully obtained the documents—namely, that as officers of the court, lawyers should not possess and use property that the lawyer knows was stolen from the opposing party to that party's detriment.

Notwithstanding the clear requirements of the law and ethical rules, Plaintiffs have refused to agree to refrain from using the stolen documents in this case—even information from undeniably privileged attorney-client communications that they know were stolen. *See* Exhibit 3. This is especially concerning given that one of the members of Plaintiffs' Executive Committee already agreed to such protections before his case was transferred to this Court. Acknowledging that some of the stolen documents were privileged and he needed the Court's approval before using them, Thomas Zimmerman, counsel for Plaintiff Lisuzzo, agreed to a protective order prohibiting use of the privileged documents while his case was pending in state court in Illinois. Lisuzzo and his counsel agreed, and the state court judge ordered: "Plaintiff agrees to the entry of the Protective Order pending the outcome for ruling on the crime-fraud exception." 10/8/15 Order of the Circuit Court of Cook County, Illinois, attached hereto as Exhibit 4. The Cook County Court never decided whether the crime-fraud exception applied to these documents, but his actions show that counsel for Lisuzzo clearly understood these documents to be privileged and entitled to protection unless and until the court ruled otherwise—and he already understood that some protection should be afforded here because he renewed his crime-fraud exception motion in this court.[2]

Because Plaintiffs in this case have refused to refrain from using the stolen documents, Defendant Avid Dating Life Inc. respectfully requests that this Court enter an order prohibiting Plaintiffs and their counsel from: 1) making any use of the stolen documents either directly or indirectly, for any purpose, including, but not limited to, in

---

[2] Plaintiff Matthew Lisuzzo's Motion for Leave to File Under Seal, Ultimately Seeking A Ruling That the Crime-Fraud Exception to the Attorney-Client Privilege Applies to Email Communication Between Defendant and Its General Counsel and Defendant and Barnes & Thornburg LLP For The Time Period of January 11, 2015 to September 1, 2015 [Document 49].

the drafting of the consolidated class action complaint or any other future pleading; and 2) requiring Plaintiffs and their counsel to destroy all copies of the stolen documents they possess, as well as any attorney-work product that quotes or describes the contents of the stolen documents.

Although Defendant Avid Dating Life is not seeking sanctions against any Plaintiff or their counsel in this motion, it reserves the right to seek sanctions against any Plaintiff or counsel who have inappropriately made use of the stolen documents, including any use of the stolen privileged documents.

## ARGUMENT

### A. The Court Has The Inherent Equitable Authority To Enter A Protective Order Prohibiting the Use of the Stolen Documents and Requiring Plaintiffs and Their Counsel to Destroy Any Copies They May Have of the Documents

The Court has the inherent equitable power to preclude a party from making use of stolen documents. Since use of stolen documents is forbidden according to both the law and the rules of professional conduct, and because use of the stolen documents would be highly prejudicial to Defendant Avid Dating Life, the Court has the authority to enter an order precluding use of such documents.

In *Smith v. Armour Pharmaceutical Co.*, for example, the United States District Court for the Southern District of Florida exercised its inherent equitable authority to enter a protective order prohibiting the use of a privileged memo that had been inadvertently produced in another lawsuit and then widely disseminated in the press. *Smith*, 838 F.Supp. 1573, 1578 (S.D.Fla. 1993). The Plaintiffs in *Smith* sought to use the privileged memo in their case. The Court held that independent of any authority granted to it by Rule 26 of the Federal Rules of Civil Procedure, it had the authority to enter a

protective order prohibiting the use of the privileged document. *Id.* The court noted that "[a]s one court recognized in issuing a protective order with respect to documents obtained through means other than the court's discovery process, a court has 'inherent authority to control, and preserve the integrity of its Judicial Proceedings' by limiting the use to which documents could be put in the lawsuit." *Id. citing In Re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D.La. 1992); *see also Pure Power Boot Camp* v. *Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 568 (S.D.N.Y. 2008) ("[P]ursuant to 'its inherent equitable powers to sanction a party that seeks to use in litigation evidence that was wrongfully obtained,' the court may preclude the use of stolen evidence in litigation, notwithstanding the fact that it would have been otherwise discoverable."); *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 321 (S.D.N.Y. 1997) (exercising inherent equitable authority to prohibit the use of documents improperly obtained outside the discovery process).[3]

---

[3] To the extent this case proceeds to discovery, some of the stolen documents may be discoverable, but other documents will not be discoverable, either because they are not relevant to the claims and defenses in this case or because they are subject to a claim of privilege or work product protection. Moreover, documents produced in the course of discovery will likely be produced pursuant to a customary protective order.

**B. An Attorney's Use of Stolen Documents is Improper and Can Subject the Attorney to Severe Sanctions**

As noted by one treatise, "[m]ost jurisdictions agree that 'tainted' materials, in other words, those that were taken illegally or improperly obtained (as distinguished from inadvertent receipt), may not be used by a lawyer." Ethics in Adversarial Practice, 69 Am. Jur. Trials 411 § 30 (1998). The use of documents that an attorney knows or has reason to believe were stolen from another party has been deemed misconduct worthy of severe disciplinary action.

This Court has adopted the Missouri Rules of Professional Conduct. E.D.Mo. L.R. 83-12.01. Rule 4-8.4 of the Missouri Rules of Professional Conduct prohibits conduct "involving dishonesty, fraud, deceit, or misrepresentation" as well as conduct that is "prejudicial to the administration of justice." Missouri Rules of Professional Conduct 4-8.4 (c) & (d). In a recent case before the Disciplinary Hearing Panel ("DHP"), the Chief Disciplinary Counsel for the State of Missouri delineated the unanimous findings of the DHP and the Counsel's resulting recommendations to the Supreme Court that disciplinary action be taken against an attorney who used stolen documents. *In Re: Joel B. EISENSTEIN*, *Respondent*, 2015 WL 9690980 (Mo.). The DHP found the attorney guilty of violating Rule 4-8.4(c) by using illegally obtained evidence (a non-privileged pay stub document taken from another party's email account) during settlement negotiations. *Id.* at 21. It also found that the attorney had violated the same rule, Rule 4-8.4(c), by reviewing, and allowing his staff to review, illegally obtained information (opposing counsel's trial outline taken from another party's email account) in preparing his case. *Id.* As to each instance— the review of illegally obtained evidence as well as the use of illegally obtained evidence— the Chief Disciplinary Counsel found a

violation of Rule 4-8.4 for "conduct involving dishonesty, fraud, deceit, or misrepresentation" and recommended an indefinite suspension of the attorney's license. *Id*. at 29-30, 31. *See also In re Ryder*, 381 F.2d 713, 714 (4th Cir. 1967) ("It is an abuse of a lawyer's professional responsibility knowingly to take possession of and secrete the fruits and instrumentalities of a crime").

In *Castellano v. Winthrop*, a mother who had filed a paternity suit against Defendant Winthrop obtained a USB drive containing thousands of pages of documents that belonged to Winthrop without his consent. *Castellano*, 27 So.3d 134, 135 (Fla. Ct. App. 2010). The mother provided the USB to her attorneys, who spent more than 100 hours reviewing the files contained on the flash drive and used the information in the filing of a petition. *Id*. In granting Winthrop's motion to disqualify the mother's counsel, the Court held:

> While recognizing that disqualification of a party's chosen counsel is an extraordinary remedy that should be resorted to sparingly, disqualification is appropriate where a party obtains an unfair informational or tactical advantage through the disclosure of privileged information to that party's counsel….Given the nature of the information obtained by the Firm from the USB drive, it cannot be reasonably disputed that an informational and tactical advantage was obtained by the Mother.

*Id.* at 137.

In prohibiting the use of stolen documents, courts have been less concerned with the source of the stolen documents and the details of how they were obtained than the effect on the integrity of the legal process of permitting litigants to use stolen documents. For example, *In Re Shell Oil Refinery* was a class action lawsuit brought against Shell following an explosion at the refinery. 143 F.R.D. 105 (E.D.La. 1992). Plaintiffs' Legal Committee ("PLC") obtained documents from a Shell employee, and Shell filed a motion

for protective order seeking, among other relief, an order prohibiting the PLC from making any use of the documents. In granting the motion for protective order, the Court reasoned:

> In the case at bar, learning the identity of the source of these documents is not necessary to remedy any unfair advantage gained by the PLC. The Court is not concerned with Shell's internal problems—whether a Shell employee has breached his confidentiality agreement, how he obtained the documents, or why he is giving them to the PLC. The Court is concerned with preserving the integrity of this judicial proceeding. What matters is balancing the scales. That can be done by prohibiting the PLC from making any use of the documents, requiring the PLC to identify and produce the documents to Shell, and prohibiting the PLC from any further *ex parte* contact with any Shell employees other than those who are plaintiffs in this suit.

*Id.* at 108-109.

In this case, at least one of the Plaintiffs has admitted that his lawyers possess, and have reviewed, thousands of pages of documents and information that were stolen from Avid Dating Life through the hack of its computer systems. In Plaintiff Christopher Russell's Memorandum in Support of Motion to Appointment of Michael J. Flannery As Liaison Counsel for the Fraud Group, Plaintiff describes documents obtained in the computer hack, including e-mails from then-CEO Noel Biderman and another company executive. Russell Memo in Support [Document 59] at 6-7. Russell's counsel boasts in the Memo in Support that "with assistance from its technology experts, moving counsel has downloaded and reviewed over 200,000 emails and reviewed and downloaded 'fembot' coding solely relating to the Fraud Class." *Id.* at 2. Although Defendant Avid Dating Life is not moving for sanctions against Russell or his counsel in this motion, if this case proceeds to discovery, Avid Dating Life reserves the right to seek discovery from Plaintiffs and their counsel regarding their use of the stolen documents and further

reserves the right to seek sanctions against Plaintiffs and their counsel if warranted by the facts.

That Plaintiffs or their counsel presumably did not conduct the hack themselves is of no moment—they are forbidden from reviewing illegally or wrongfully obtained materials, and certainly may not use any such information in their case. *See, e.g.,* 69 Am. Jur. Trials 411 § 30 (1998); American Law Institute - American Bar Association Continuing Legal Education, Corporate Internal Investigations – Legal Privileges and Ethical Issues in the Employment Law Context, SF42 ALI-ABA 927, 950 (Feb. 2001) ("Of all the ethical issues discussed in this article, this is perhaps the most clear cut. Use by counsel of stolen documents and materials, obtained either during the course of a pre-litigation investigation or during the course of a pending action, either by counsel directly or by the client and the attorney knows they are stolen, is a violation of the ethical rules."); Iowa Practice Series, Lawyer and Judicial Ethics, § 8:4(d)(3) ("When a lawyer receives confidential materials that he or she has reason to believe were taken from another party by a person who did not have authority to remove the documents or waive confidentiality, the lawyer may not deliberately conceal, retain, or use those stolen documents to the disadvantage of that other party").

## C. Neither Plaintiffs Nor Their Counsel Should be Permitted to Retain, Review, or Use Privileged Documents That Have Been Disclosed Without Authorization

### 1. Plaintiffs Acknowledge Some of the Stolen Documents are Privileged

In his Motion for Leave to File Under Seal [Document No. 49], Plaintiff Lisuzzo acknowledges that the stolen documents include communications between Avid and its attorneys: "Plaintiff has become aware of the existence of communications between

Defendant and its General Counsel and Defendant Barnes & Thornburg LLP…." Lisuzzo Memo in Support at 1-2. Lisuzzo does not argue that the obvious attorney-client communications are not privileged. Rather, he argues that the crime-fraud exception to the privilege should apply. Further evidence that Lisuzzo's counsel acknowledged the privileged nature of the documents is that while the case was pending in state court, Lizzuzo's counsel agreed to enter into a protective order regarding the documents pending a ruling by the court on the crime-fraud motion. 10/8/15 Order of the Circuit Court of Cook County, Illinois, attached hereto as Exhibit 4.

## 2. The Law Prohibits Use of Privileged Documents by Opposing Parties

When an attorney receives documents that appear to be privileged, he must cease review of such documents, and certainly must not use them. This situation may occur when documents are stolen, as in the current case, or even when the material is inadvertently disclosed to the opposing party. When a privileged document is unintentionally disclosed by a party to an opposing party, the party receiving the privileged material must discontinue review of the document as soon as he has reason to believe privilege exists, and must immediately notify opposing counsel, usually resulting in the immediate destruction or return of the materials. *See Resolution Trust Corp. V. Dean* 813 F. Supp. 1426, 142801429 (D. Ariz. 1993) (no voluntary waiver of privilege when memorandum was inexplicably leaked); *State Comp. Ins. Fund. V. WPS, Inc.*, 70 Cal. App. 4th 644, 656-657 (Cal. 1999) (attorney must refrain from examining material and immediately notify opposing counsel that he possesses material that appears to be privileged). Failure to follow this mandate may result in severe sanctions, such as dismissal or disqualification from the suit. *See Arnold v. Cargill Inc.*, No. 01-2086 (DWF/AJB)), 2004 WL 2203410, at *10 (D. Minn. Sept. 24, 2004) (granting defendant's

motion to disqualify plaintiffs' putative class counsel who received privileged and confidential documents but reviewed them instead of returning them); *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1118-19 (D. Minn. 2010) (when counsel improperly met with executives who had access to opposing party's confidential and privileged information, gained access to such privileged materials, and reviewed them instead of immediately turning them over, the court disqualified the attorney "because conduct has occurred that taints these proceedings and, if left unremedied, potentially undermines public confidence in the legal profession").

### 3. Stolen Documents Do Not Lose Privileged Status

The law is clear that attorney-client communications do not lose their privileged status when they are disclosed without authorization, even if they are widely disseminated. In *Smith v. Armour Pharm. Co.*, for example, a privileged memo was inadvertently produced in another lawsuit and then later widely disseminated to the press without the consent of the privilege holder. 838 F. Supp. 1573. Plaintiffs in the *Smith* case sought to use the document in their case, arguing that because there had been wide dissemination of the document it had lost its privileged status. *Id.* at 1575. The court rejected this argument by the plaintiffs, holding that the memorandum—disclosed without authority—did not lose its privileged status, even if it had been widely disseminated. *Id.* at 1576. The court noted:

> After all, what if a confidential memorandum is stolen from an attorney's office and subsequently published in newspapers across the country? Clearly, the client should not be held to have waived the attorney-client privilege. The fact that the contents of a privileged document have become widely known is insufficient by itself to eliminate the privilege that covers the document.

*Id.* at 1577. The court precluded all use of or reference to the memorandum. *Id.* at 1578. *See also Shukh* v. *Seagate Tech.*, 848 F. Supp. 2d 987, 993 (D. Minn. 2011) (holding stolen documents do not lose privileged status); *In re Grand Jury Proceedings Involving Berkeley & Co.,* 466 F. Supp. 863, 869 (D. Minn. 1979) ("To the extent the documents can be viewed as stolen, following the modern trend…, they should not lose the protection of the privilege"), aff'd as modified, 629 F.2d 548 (8th Cir. 1980).

When a lawyer receives materials that on their face appear to be subject to the attorney-client privileged—regardless of whether the documents were stolen or inadvertently disclosed— he should refrain from examining the materials. *See, e.g., United States v. Rigas*, 281 F. Supp. 2d 733, 742 (S.D.N.Y. 2003); *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 138 (D.N.J. 2004) citing ABA Comm.on Ethics and Prof. Responsibility, Formal Op. 94-382 (1994) and the New Jersey Supreme Court Advisory Committee on Professional Ethics; *Gomez v. Vernon*, 255 F.3d 1118, 1132 (9th Cir. 2001) (affirming sanctions when counsel "knowingly disregarded advice from the bar counsel and bypassed questions of ethics in an effort to gain advantage in this litigation" through their collection, reading, and retention of inmates' communications with their outside counsel, where communications were obviously privileged); *Arnold v. Cargill Inc.*, No. 01-2086 (DWF/AJB), 2004 WL 2203410, at *10 (D. Minn. Sept. 24, 2004) ("An attorney who receives privileged documents has an ethical duty to cease review of the documents, notify the privilege holder, and return the documents").

In this case, therefore, Avid Dating Life's attorney-client communications do not lose their privileged status because they were stolen from Avid Dating Life and

disseminated without the company's consent, and attorneys for Plaintiffs should not make any use of the stolen privileged documents.

### 4. Plaintiffs' Belief That the Crime-Fraud Exception May Apply Does Not Entitle Them to Review or Use the Privileged Documents

Plaintiffs' belief that the privileged documents may be subject to the crime-fraud exception does not entitle them review or use privileged materials. In *Furnish v. Merlo,* for example, attorneys retained, reviewed, and used privileged documents that the attorneys knew were illegally obtained, while "justifying their actions by questioning the applicability of the privilege." No. CIVIL 93-1052-AS, 1994 WL 574137, *9, *10 (D. Or. Aug. 29, 1994). The *Furnish* court held that such actions constituted attorney misconduct. *Id.* at 11. *See also* California State Bar Standing Committee on Professional Responsibility and Conduct, CA Eth. Op. 2013- 188, 20913 WL 2894718, at *6 ("the attorney may not ethically read the communication even if she suspects the crime-fraud exception might vitiate the privilege").

Indeed, in the seminal case regarding the procedures that must be followed in making a privilege challenge based upon the crime-fraud exception, the United States Supreme Court has held that before the court can require a party to produce its privileged documents to the Court for an *in camera* review of the documents, the opposing party must come forward with "lawfully obtained" non-privileged evidence demonstrating that the documents would reveal the advice of counsel being sought to further a crime or fraud. *United States v. Zolin*, 491 U.S. 554, 575 (1989). If a U.S. District Court may not conduct an *in camera* review of a party's privileged documents absent a sufficient showing that the crime-fraud exception may apply, then opposing counsel certainly cannot take it upon himself to review such privileged documents.

In a decision relying on *Zolin*, the Eighth Circuit held that in putting forward the lawfully obtained, non-privileged evidence to make a *prima facie* showing of crime-fraud, the moving party must show that the particular document or communication being challenged was made in furtherance of the client's alleged crime or fraud. *In re BankAmerica Corp. Securities Litig.*, 270 F.3d 639, 642 (8th Cir. 2001). Further, the Eighth Circuit held it was an abuse of discretion for the district court to have ordered the production of documents to plaintiffs based upon a *prima facie* showing of crime-fraud, without first having conducted its *in camera* review. *Id.* at 644. In other words, under controlling Supreme Court and Eighth Circuit precedent, unless and until a court reviews documents to which the privilege has been asserted and determines the crime-fraud exception vitiates the privilege, Plaintiffs are not entitled to possess or review the documents based upon their subjective belief that the crime-fraud exception may apply.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant Avid Dating Life  Inc. respectfully requests that this Court grant its motion and: 1) issue a protective order, ordering that neither Plaintiffs nor their counsel may use documents that were stolen from Defendant Avid Dating Life through a hack of its computer systems, either directly or indirectly, for any purpose, including, but not limited to, in the drafting of the consolidated class action complaint or any other future pleading;  2) issue an order compelling Plaintiffs and their counsel to destroy all copies of the stolen documents they possess as well as any attorney-work product that quotes or describes the contents of the stolen documents within five days of the date of the Court's order; and 3) award such other and further relief as this Court deems just and proper.

Dated:  February 29, 2016                    Respectfully submitted,

                                             BRYAN CAVE LLP

                                             By:

                                             /s/ Richard P. Cassetta
                                             Richard P. Cassetta  MO #43821
                                             Helen C. Looney MO #67029
                                             Bryan Cave LLP
                                             One Metropolitan Square
                                             211 North Broadway, Suite 3600
                                             St. Louis, MO  63102-2750
                                             Telephone:  (314) 259-2000
                                             Facsimile:  314-259-2020
                                             richard.cassetta@bryancave.com
                                             helen.looney@bryancave.com

                                             and

                                             PAUL, WEISS, RIFKIND, WHARTON &
                                             GARRISON LLP
                                             Robert A. Atkins (NY #2210771)
                                             Daniel J. Kramer (NY #1979392)
                                             Lorin L. Reisner (NY #2094217)
                                             Yahonnes S. Cleary (NY 4802492)
                                             1285 Avenue of the Americas
                                             New York, NY 10019
                                             Telephone: 212-373-3183
                                             Facsimile:  212-492-0183
                                             ratkins@paulweiss.com
                                             dkramer@paulweiss.com
                                             lreisner@paulweiss.com
                                             ycleary@paulweiss.com

                                             *Attorneys for Defendant*
                                             *Avid Dating Life Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were served upon the attorneys of record via operation of the Court's electronic filing system on the 29th day of February, 2016, and courtesy copies will be served via electronic mail to the following:

DOWD & DOWD, P.C.
Douglas P. Dowd (29240MO)
William T. Dowd (39648MO)
Alex R. Lumaghi (56569MO)
211 North Broadway, Suite 4050
St. Louis, Missouri   63102
Tel.: (314) 621-2500
Fax: (314) 621-2503
doug@dowdlaw.net
bill@dowdlaw.net
alex@dowdlaw.net

*Plaintiffs' Interim Liaison Counsel*


THE DRISCOLL FIRM, P.C.
John J. Driscoll (54729MO)
Christopher J. Quinn (41883MO)
Gregory G. Pals (48820MO)
211 N. Broadway, 40th Floor
St. Louis, Missouri  63102
Tel.: (314) 932-3232
Fax: (314) 932-3233
john@thedriscollfirm.com
chris@thedriscollfirm.com
greg@thedriscolllfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

HENINGER GARRISON DAVIS, LLC
W. Lewis Garrison, Jr.
Christopher B. Hood
Taylor C. Bartlett
2224 1st Avenue North
Birmingham, Alabama 35203
Tel.: (205) 326-3336
Fax: (205) 326-3332
wlgarrison@hgdlawfirm.com
chood@hgdlawfirm.com
taylor@hgdlawfirm.com

James F. McDonough, III
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Tel.: (404) 996-0869
Fax: (205) 326-3332
jmcdonough@hglawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

/s/ Richard P. Cassetta