<pre>
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
 2

   IN RE:  ASHLEY MADISON CONSUMER      )
 3 DATA SECURITY BREACH LITIGATION,     )
                                        )
 4                                      )   MDL No. 2669
                                        )
 5                                      )   Cause No.4:15MD-2669JAR
                                        )
 6                                      )
   ========================================================
 7                 TRANSCRIPT OF PROCEEDINGS
                       August 5, 2016
 8
                BEFORE THE HONORABLE JOHN A. ROSS
 9                UNITED STATES DISTRICT JUDGE
                      EASTERN DIVISION
10 ========================================================
                       APPEARANCES
11
   For Plaintiffs:
12 Mr. John Driscoll
   Mr. Andrew Kinghorn
13 Mr. Christopher Quinn
   Mr. Gregory Pals
14 Mr. Philip Sholtz
   The Driscoll Firm
15 211 N. Broadway
   St. Louis, MO 63102
16
   Mr. Douglas Dowd
17 Mr. Alex Lumaghi
   Dowd & Dowd, PC
18 211 North Broadway, Suite 4050
   St. Louis, MO 63102
19
   Mr. William Garrison Jr.(via phone)
20 Mr. James McDonough(via phone)
   Heninger and Harrison
21 2224 1st Ave. North
   Birmington, AL 35203
22 (Appearances continued)

23                     Reported by:
               Lisa M. Paczkowski, CCR, RPR
24               Official Court Reporter
               United States District Court
25                 111 South 10th Street
                   St. Louis, MO 63102
</pre>

```
 1   Mr. Christopher Hinton(via phone)
     The Rosen Law Firm
 2   275 Madison Ave.
     New York, NY 10016
 3
     Mr. Gary Mason(via phone)
 4   Whitfield and Bryson
     5101 Wisconsin Avenue NW, Suite 305
 5   Washington, DC 20016
 6   Mr. William Garrison, Jr.(via phone)
     Mr. Thomas McDonough(via phone)
 7   Henginger Garrison Davis
     3621 Vinings Slope, Suite 4320
 8   Atlanta, GA 30339
 9   Mr. Thomas Zimmerman, Jr.(via phone)
     Zimmerman Law Offices, PC
10   77 West Washington Street, Suite 1220
     Chicago, IL 60602
11
     For Defendants:
12   Mr. Robert Atkins
     Mr. Yahonnes Cleary
13   Paul and Weiss
     1285 Avenue of the Americas
14   New York, NY 10019
15   Mr. Richard Cassetta
     Ms. Helen Looney
16   Bryan Cave
     211 North Broadway
17   St. Louis, MO 63101
18   Mr. Ian Dumain(via phone)
     Boies and Schiller LLP
19   333 Main Street
     Armonk, NY 10504
20
21
22
23
24
25
```

1        <u>AUGUST 5, 2016</u>

2    (The proceedings commenced at 10:15 a.m.)

3            THE COURT:  We are here and on the record in the

4    multidistrict litigation case titled:  In re Ashley Madison

5    Customer Data Security Breach litigation.  It is MDL number

6    2669.  It is our case number 4:15MD-2669.

7            Let the record reflect we have counsel here in the

8    courtroom.  We have counsel on the phone.  Just as an initial

9    matter, the plaintiffs appear by colead counsel John

10   Driscoll, and I think William Garrison, are you on the phone;

11   is that correct?

12           MR. GARRISON:  Yes, your Honor.

13           THE COURT:  Okay, great.  Liaison counsel Doug Dowd

14   appears as well.  On behalf of the defendants, we have lead

15   counsel Robert Atkins.

16           MR. ATKINS:  Good morning, your Honor.

17           THE COURT:  Liaison counsel Rick Cassetta.

18           MR. CASSETTA:  Good morning, your Honor.

19           THE COURT:  I'm going to go through who I show who

20   is on the phone.  I understand Carin Marcussen, have you

21   joined the call?  Okay, Carin had indicated that she was

22   going to join the call but has not yet joined.

23           William Garrison is on the phone.  Debbie Quinn,

24   you are on the phone; is that correct?

25           Okay.  I don't -- I had received an indication that

1   she was going to be participating by phone, but apparently

2   has not joined the call.  Christopher Hinton, you are on the

3   phone; is that correct?

4           MR. HINTON:  Correct, your Honor, good morning.

5           THE COURT:  Good morning.  Gary Mason, you are on

6   the phone.  And again, I had received an indication that

7   Mr. Mason would be on the phone, but he has not joined the

8   call.  James McDonough?

9           MR. MCDONOUGH:  Yes, your Honor.

10          THE COURT:  Great, thank you.  Then finally, Thomas

11  Zimmerman.  Mr. Zimmerman, you are on the line?

12          MR. ZIMMERMAN:  Yes, I'm here, thank you, Judge.

13          THE COURT:  Anybody else on the phone that I have

14  not identified -- and that may be somebody joining the call.

15          MR. MASON:  Yes, this is Gary Mason.  I apologize

16  for the delay.

17          THE COURT:  Gary, you are on the line now; is that

18  correct?

19          MR. MASON:  Yes.

20          THE COURT:  Anybody else on the phone line, okay.

21  And here present in the courtroom, in addition to those that

22  I have previously indicated, Helen Looney is here on behalf

23  of the defendants, and Yahonnes Cleary.

24          MR. CLEARY:  Yes, your Honor.

25          THE COURT:  Great.  Have I missed anybody?  Yes.

1          MR. DUMAIN:  Ian Dumain for Noel Biderman.

2          THE COURT:  Okay.  I'm glad you are here,

3    Mr. Dumain.  And then in terms of other counsel here, present

4    from the Driscoll Firm, I know there are a number of people,

5    Andrew Kinghorn.

6          MR. KINGHORN:  Yes, your Honor.

7          THE COURT:  And Alex Lumaghi with Dowd & Dowd.

8          MR. LUMAGHI:  Yes, your Honor.

9          THE COURT:  And Gary Pals with the Driscoll Firm.

10         MR. PALS:  Gregory, good morning, Judge.

11         THE COURT:  I'm sorry, Chris Quinn with the

12   Driscoll Firm, and Phil Sholtz with the Driscoll Firm.  Have

13   I missed anybody?  Okay, that's half of the battle getting

14   everybody identified.  I'm glad to have everyone here in

15   person and on the phone.

16         We also, I guess as a preliminary matter, had a new

17   case that was transferred in from the panel.  It is *Thadeaus

18   Scharf verses Avid Life et al,* from the Eastern District of

19   Arkansas.  And Mr. Driscoll, have you spoken to counsel?

20         MR. DRISCOLL:  No, we have not, but we will reach

21   out to them.  A lot of the deadlines have already gone

22   forward.  I don't know how we will necessarily be able to

23   wrap them in, if you will, to the consolidated matter at this

24   point.  So any guidance -- maybe it is premature to ask --

25   but any guidance from the Court?

1      THE COURT:  I guess my guidance would be again,

2   reach out to them.  If they are going to join the

3   consolidated complaint, then I'll give you leave to add them

4   to the consolidated complaint.

5      MR. DRISCOLL:  Yes.

6      THE COURT:  I think, just as a preliminary matter,

7   that's the way to proceed.  And if there is any other issue,

8   you can notify the Court, and I can address that.  I think

9   that's the way to proceed.  I'm assuming there is no

10  objection from the defendants?

11     MR. ATKINS:  No.  And I'm presuming they will

12  stipulate to joining the consolidated complaint, but we

13  should try to do everything we can to get them wrapped in by

14  the time we get to the motion to compel arbitration at the

15  end of the month.

16     THE COURT:  And I think that is sort of the goal

17  would be to have everybody who is going to be involved with

18  the consolidated complaint joined, and I'll get to that issue

19  a little bit later here this morning.  But that would be my

20  hope.  So if you can just advise the Court if there is any

21  issue with regard to that.

22     MR. DRISCOLL:  I will do just that.

23     THE COURT:  Okay.  I do want to get to the joint

24  proposed agenda items here this morning.  The first agenda

25  item is the parties' objections to the other side's discovery

1  request, and I know you have served discovery requests, and

2  the responses, I believe, are due today.  And I'm sure that

3  once you have seen the responses, you will know a little bit

4  better of where you are at.

5          It may be that these things can -- really items

6  one, two, and three, the objections to the other side's

7  discovery request, the sufficiency of the responses, and the

8  timing and briefing of the motions to compel, overlap I

9  suppose.

10          I guess as a preliminary matter, I just want to get

11  the parties' positions with regard to those.  So maybe we can

12  start with the plaintiffs' position.  And Mr. Driscoll, if

13  you will, to the extent that you can address all of those, I

14  think that they are intertwined.

15          MR. DRISCOLL:  Yes, your Honor, they absolutely

16  are.  As you mentioned, we expect to receive the defendants'

17  responses today.  So some of this is dependent upon what we

18  receive today.

19          THE COURT:  Make sure you are speaking into the

20  microphone so that those on the phone can hear you.

21          MR. DRISCOLL:  Yes, your Honor.  So you know,

22  although we have had some meet and confers with the defendant

23  that lead us to believe that we are apart on a few issues,

24  and that's what prompted us to include these items on the

25  agenda today.

1          So -- but, and I think we should reserve in a final

2    way receiving their responses, reviewing them, and then

3    reporting back in that regard.

4          THE COURT:  I assume that part of the issue is the

5    scope of discovery.

6          MR. DRISCOLL:  With regard to some of those

7    differences, yes, it is a matter of scope.

8          THE COURT:  Can you, without getting into too much

9    detail, because it may very well be likely that the motions

10    to compel have to be filed.  I guess I'd like to know whether

11    or not I can give you some initial guidance as you continue

12    to meet and confer.  I'm assuming after you receive the

13    responses, that you will meet and confer.

14          MR. DRISCOLL:  Yes.

15          THE COURT:  And then determine whether or not you

16    need to file the motions to compel.  But perhaps if you can

17    give me in just a very brief manner without getting into the

18    details.

19          MR. DRISCOLL:  I don't know that I can give a full

20    recital of the differences, but I can give you a for

21    instance.  One of the defendant's responses concern is

22    damages, individual damages of the various plaintiffs, and we

23    objected to that as out of the scope of the motion to stay

24    and compel arbitration.

25          It has damages of the individual plaintiffs

1   objectionable for other reasons are certainly outside the

2   scope of a motion to stay and compel arbitration.  So that's

3   just a for instance.  There has been a number of people

4   working on this discovery, Chris Quinn, Gene Clay, Alex

5   Lumaghi, and Jim McDonough on the phone.  So if you needed

6   more itemized ones, I would have to rely upon them to help

7   out in that regard.

8           THE COURT:  Sometimes there are categories of

9   issues that I can hear about and maybe understand a little

10   bit of the issue.  So I don't know whether or not you can

11   categorize them.  I understand that specific issue.

12           MR. DRISCOLL:  You are right in terms of scope.

13   That's the largest category or umbrella, if you will, but to

14   go through the various ones that are outside the scope, I

15   would have to rely upon the help of others.

16           THE COURT:  Well, let me ask this.  In listing

17   these items on the agenda, what are you hoping for me to do

18   today with those items being listed.

19           MR. DRISCOLL:  I'm afraid it is more anticipatory,

20   really, that we don't want to say we need a hearing, or

21   otherwise briefing schedule on a motion to compel, but to

22   date in our meet and confers, we are still apart on some of

23   these issues.

24           So we didn't want to say just that, because we

25   haven't received the responses yet, and maybe other meet and

1    confers will resolve these things.  But if it were today, I'm

2    afraid that we would need a motion to compel briefing

3    schedule.

4              THE COURT:  Have you planned a meet and confer

5    after receiving the responses?

6              MR. DRISCOLL:  I don't believe the date has been

7    set, no.  I think we are going to receive the responses and

8    go after that.

9              THE COURT:  Okay.  All right, maybe I can hear from

10   Mr. Atkins, and then I can get back.  Mr. Quinn, if there is

11   more detail you want to give me, then we can get to that.

12   Mr. Atkins, how are you, sir?

13             MR. ATKINS:  Good morning, your Honor, Robert

14   Atkins.  The issue arose, and we teed it up immediately.  We

15   sent them a letter within a week we gave them their

16   discovery.  We had a meet and confer last Monday.  We asked

17   them to limit their request, and here is why.

18             We were a little surprised to see what they served

19   categorized as limited discovery.  They served 130 discovery

20   requests, 62 interrogatories, 43 document requests, 20 some

21   odd requests to admit, and we are -- let me be clear -- we

22   are responding to almost all of it.

23             We will be producing today well over a majority of

24   the interrogatories, certainly more than the 25 permitted by

25   the Federal Rules.  We are answering every request to admit,

1    and I think we are producing everything we talked about with

2    your Honor.  Let me just -- if I could -- take a moment.

3            When we were before your Honor last March, you

4    said:  I'm concerned about this matter of getting an

5    agreement on the scope of discovery.  That primarily it is

6    the dates when people were logging on, agreeing to

7    participate to, and three what the terms of the agreements

8    were.  And you asked what kind of issue do you anticipate

9    with regard to scope.  Mr. Driscoll said that's it.  That we

10   were entitled to all of the variations of the terms of

11   conditions from the genesis to the filing of the suit.

12           You stressed to me that we should produce all of

13   the modifications during the life of these terms and

14   conditions.  And then Mr. Hammond chimed in over the phone

15   saying that we need the screen shots as well of when folks

16   logged on, and clicked the button saying "I agree".

17           So we are producing today everything within that

18   scope.  All of the versions that we have of the terms and

19   conditions, it is several dozen, as far back as we could

20   find, number one.  Two, all of the signup pages and screen

21   shots of when the plaintiffs signed up.  That's 65 screen

22   shots.

23           For every plaintiff we are producing every account.

24   When this was logged in.  When it was last logged in, and

25   when they agreed to the terms and conditions.  On top of

that, we are producing for each of the 18 plaintiffs, their

messages, their chats, the purchasing activity, purchase

receipt, and all of the profile information about that.

　　　　Then on top of that, we are producing pages from

the website identifying where to find the terms and

conditions.  I thought that's what we were doing.

　　　　When we got the discovery requests, we got, among

the 62 interrogatories, the number itself is kind of numbing,

but things like this, this is interrogatory 57, "Separately

list each user of Ashley Madison, each user, every user of

Ashley Madison since 2001."  That's millions of users, "and

include each user's first name, last name, phone number,

e-mail address, and user identification."

　　　　Then they asked for every user, millions of users,

when they logged on.  When they last logged on.  I think

that's well well beyond any definition of limited discovery.

And there are a bunch of other examples of that relating to

discovery about every user all the way back to 2001.

　　　　We raised it with them.  We pointed it out to them

we said "Take a shot at limiting or cutting those."  They

haven't done that.  I'm hopeful that when they get our

responses, and they see everything that we have produced,

which is what we have discussed with the Court, and which Mr.

Driscoll said "That's it."  They will be satisfied.

　　　　But if we have to litigate it, you know, I suppose

we will.  My primary concern here, your Honor, is that we not

let the due date for the motion to compel slip, which is

August 29th.  I think that would be unfortunate.  I mean,

among other things, you can imagine, our view is we really

shouldn't even be here.  We should be in arbitration

anywhere, and we would like to keep that date so we can get a

resolution of that issue.

So I would propose that we set a program for

dealing with these, if we have to.  I would suggest that we

have a meet and confer no later than Wednesday.  That if

there is anything left over, we each respectfully submit

letters to your Honor next Friday, three pages, five pages,

something that cuts to the chase.  Replies if necessary,

earlier that week, and if it is within your schedule and

ability, maybe we can get those ruled upon, so that we can

still get the motions filed on the 29th.

So that's the overview of my prospective about

their discovery.  Let me just address, since it has been put

on the table, the one issue pertaining to our discovery

requests.

We served much more focused, much more tailored and

narrow discovery relating to who the plaintiffs are, so we

can find them.  And for the most part, we have gotten

answers.  We really have one issue where we just disagree,

which is we simply asked for them to identify what type of

1    injury they are seeking relief for, not the numbers, not the

2    timing, not the details, not damages discovery, but are you

3    claiming physical harm.  Are you claiming medical injury.

4    Are you claiming emotional injury.  Are you claiming economic

5    loss.  Just what's your claim, because it is not clear from

6    the complaint, and the reason for that is I just find it sort

7    of strange that we would be making a motion to compel

8    arbitration without being able to write the first paragraph

9    that says:  These are the claims.  This is the relief sought.

10   It falls within the scope of the arbitration clause.

11          So all we want to know is what are their claims,

12   and what categories of relief are they seeking.  So that we

13   can, you know, fully address the issue so.

14          THE COURT:  You are certainly entitled to that

15   information at some point in this litigation.  There is no

16   doubt about that.  But what you are calling the first

17   paragraph of your motion, it is going to say:  Whatever

18   relief is being sought should be obtained through

19   arbitration.  That's really -- well, that's how it is going

20   to be written.

21          MR. ATKINS:  It certainly will if I don't get an

22   answer.

23          THE COURT:  It seems to me that without getting

24   into too much into one particular question or not, that I

25   would say to you that that on the face of it, it doesn't seem

1  like it is necessary for you at this stage of the discovery.

2  It sounds like, and I have to say, based on what
3  you say about them asking for the name of every user since
4  2001, I'm not quite sure I see how that is necessary for
5  responding to any motion to stay and compel arbitration
6  either.

7  So it seems to me that perhaps everybody needs to
8  sit down and give a second thought to what they are asking
9  for; and again, I just want to remind you, and we have talked
10  about this, that this is a limited issue that we are dealing
11  with at this stage.  And I want to make sure that the
12  discovery is focused on that limited issue.  Let's get on
13  with this part of the litigation.

14  MR. QUINN:  Could I briefly respond to some of
15  that, your Honor, because I don't want you left with the
16  wrong impression.

17  THE COURT:  Okay.  I'm not drawing any inference of
18  somebody being out in left field on this.  I'm not drawing
19  any adverse inference about anybody's conduct, actions.  I'm
20  sure you had a reason for it.

21  MR. QUINN:  Well, for example.  Here are the
22  overriding issues--

23  THE COURT:  You have to speak into the microphone.

24  MR. QUINN:  --from our prospective.  We can
25  anticipate what this motion might look like, but we are not

1    psychic.  We haven't seen their motion.

2         So for example, if the motion is these 18

3    particular plaintiffs have to arbitrate verses everyone is

4    bond by arbitration, that might be a different motion.  So we

5    are sort of at a disadvantage when we are trying to

6    anticipatorily propound discovery against a hypothetical

7    motion that we haven't seen yet.  It puts you in a difficult

8    position.  So that's sort of the answer to that sort of the

9    question.

10        But the numbers that you have heard don't tell the

11   full story.  For example, you can basically cut our discovery

12   request by a third instantly by combining all of the requests

13   that say, for example, show us every page that has terms of

14   service.  Show us every page that contains an arbitration

15   agreement.  Show us every page that contains a class waiver.

16   We could have combined questions like that, give us the stuff

17   that talks about terms of service, arbitration, or class

18   waiver, and we broke that up separately.

19        And part of the reason for that is again, we don't

20   know what this motion is going to contain.  Is it going to be

21   some of that, or is it going to be all of that.  So that it

22   sort of necessitates the approaching of the discovery in the

23   way that we did.

24        Certainly, we will meet and confer.  I think that

25   we have -- we both want to not extend the briefing on the

1    arbitration issue.  Both sides are in agreement that we want

2    to stick to that schedule.  I'm hopeful that we can resolve

3    some of these issues.  I just don't want the Court to get

4    left with the impression that we were requesting completely

5    irrelevant stuff.  That's just simply not the case.

6          And if I can be convinced, based upon what sort of

7    a motion that they are going file, that this is just

8    something that's completely outside the scope of the motion,

9    but that's something we will certainly talk about.  But I

10   don't think we can be accused of doing that.

11         THE COURT:  Well, let me just say this, I

12   understand that you don't know what the motion is going to

13   look like.  And understanding that, I'm saying to you, maybe

14   this will give you a little bit of a comfort level, if the

15   motion gets filed, and you think there needs to be some

16   supplemental discovery that needs to occur, and you can show

17   me good cause why that needs to occur, I'm certainly willing

18   to consider that.  I'm not trying to foreclose anybody from

19   getting what they need to make the motion and to respond to

20   it.

21         So I want to make sure it is fully-briefed, and

22   that you have all of the facts necessary to respond to it.

23   So I don't know whether that gives you a comfort level, but

24   that's certainly how I --

25         MR. DRISCOLL:  I'll say it gives me a comfort

1  level, your Honor.

2        THE COURT:  That's certainly how I feel about it.

3  So I'm telling you that that's where we are at.

4        What I was going to suggest, and let me say I would

5  like to see us keep that August 29th date for the filing of

6  the motion.  Because even with that date, it is not going to

7  be fully-briefed until mid October under the schedule that I

8  had set, because I was giving you 30 days to respond, and

9  14 days to reply, and so that gets us into October.

10        Again, I think everybody would like to keep this

11  moving along.  I think that that's in everybody's interest.

12  So I'd like to keep that August 29th date.  In order to do

13  that, I'd have to have a motion filed.  And you are talking

14  about a letter, and I think in a lot of circumstances, a

15  letter might work.  But it really needs to be a motion to

16  compel.  But that's got to be done pretty quickly.

17        So actually, what I was going to propose to you,

18  and you can tell me what you think about it, is that you meet

19  and confer on Monday after you have had today, the weekend,

20  to look over the responses.  And I hate to be giving you work

21  over the weekend; but again, if we are going to try to keep

22  that schedule, it's going to be tight.

23        I was going to say you file a motion to compel by

24  Tuesday, and I'd give you -- each side seven days to respond

25  to the motion to compel, and then three days to file a reply,

1   which would then get it fully-briefed to me on August 19th.

2         If I have a few days to go through it and get an

3   order out, you can then get the motion filed by August 29th.

4   Again, that's a tight timeframe.  If you don't think that

5   will work.

6         MR. ATKINS:  We will get it done.

7         MR. DRISCOLL:  I think it will be fine, your Honor.

8         THE COURT:  Again, if you are all saying you think

9   you can get it done, I'm going to go ahead and include that

10   in an order that comes out of our hearing today.

11         If you need to adjust it by a day or two, and you

12   can do it by agreement and still get this to me by the 19th,

13   I'm okay with your adjusting it by a day or two.  All I care

14   about is that it gets to me by the 19th, so I have three or

15   four days to look at it, get an order out, and get it back to

16   you so you can then get the motion to stay and compel

17   arbitration filed by the 29th so.

18         MR. ATKINS:  That works, your Honor, thank you.

19         THE COURT:  We will get an order out then, all

20   right.  And again, I know -- my impression is that everybody

21   has worked very well together and cooperatively.  I know you

22   are going to continue to do that.  Just please keep in mind

23   the limited discovery, limited scope of the issues here that

24   we are dealing with so.  I know you will.  So all right,

25   okay.

1          MR. DRISCOLL:  Yes, your Honor.

2          MR. ATKINS:  Thank you, your Honor.

3          THE COURT:  And let me ask you, Mr. Atkins, while

4    you are up here, and Mr. Dumain is here.  This has to do with

5    defendant Noel Biderman's ability to file a separate motion

6    and brief on the arbitration issue.  You have talked to

7    Mr. Dumain; is that correct, and discussed the issue with

8    him?

9          MR. ATKINS:  I have, yes.

10         THE COURT:  Are you telling me that you believe

11   that it is necessary for him to file a separate motion?

12         MR. ATKINS:  Yes, I'll let --

13         THE COURT:  And I'm going to let him speak.  I

14   don't mean to.

15         MR. ATKINS:  There are issues that are separate and

16   apart from the ones that we are briefing.  So we are going to

17   work so we have no duplication, but he has separate issues.

18         THE COURT:  Mr. Dumain, maybe you can come up and

19   explain the separate issues that you believe necessitate the

20   filing of a separate motion on behalf of Noel Biderman.

21         MR. DUMAIN:  Absolutely, your Honor, as a

22   preliminary matter, I just want to remind the Court, as you

23   probably remember, that on the March 4th hearing when Barnes

24   and Thornburg were still in the case, Mr. Doerhoff, I think

25   his name was, raised the issue of liaison counsel with

1    respect to the defendants, and you had said at that time,

2    that you did not intend to foreclose any of the individual

3    defendants from putting in briefs, if they thought they were

4    necessary.

5         And you are asking why is it necessary.  If the

6    plaintiffs are willing to concede, and I wish they would,

7    that the arbitration provision, to the extent they are

8    enforceable, are enforceable as to -- by Mr. Biderman to the

9    same extent that they are by the Avid defendants, then we

10   don't need to file anything separate.  But if they expect to

11   take the position that there could be a situation in which

12   the claims against Avid are sent to arbitration, but the

13   claims against Biderman remain in this Court, then we want to

14   address the issue of why the claims are intertwined and why

15   this travels together.

16        So I would put it to the plaintiffs why they --

17   whether or not they intend to make that argument.  If they

18   don't, we are happy to work with Avid to file one brief on

19   the entire case, and all the claims should be sent to

20   arbitration.  But if they are drawing a distinction, we want

21   to speak for ourself.

22        THE COURT:  All right, thank you, Mr. Dumain.  Mr.

23   Driscoll, I'm not really asking you necessarily to commit

24   yourself, but if you know that you are going to take the

25   position that Mr. Biderman is in a separate position as it

relates to the enforceability of the arbitration provision,
then it is probably helpful to know that.

MR. DRISCOLL:  I don't know that I'm prepared to
concede as I was invited to do.  I would say I don't think
that a separate brief is necessary.  I think that any of
those separate arguments could be incorporated within the
brief that the defendant Avid is going to file, perhaps an
extra five pages, or something of that nature.

I don't know how much more you can beat this dead
horse after the brief that Mr. Atkins is planning on filing.
So if it can be incorporated, I think that's fine.  I think
it might serve all.  That would force me to not have to
deliberate whether I'm going to concede anything or not, and
I think it might satisfy Mr. Biderman if it was all roped
into one.  So that's my opinion, your Honor.

THE COURT:  Okay.  I guess my answer to this is I
tend to agree that it seems to me it could be consolidated
into a single brief.  Having said that, if you want to file a
separate response, you have leave of Court to do so.

I understand the issue with regard to the defendant
Noel Biderman is separate and distinct, and there may be
issues that need to be separately raised.  So I suppose my
answer to you, again, I just encourage you to work with
counsel for Avid Life.  If you believe it is necessary to
file a separate motion or brief, then you have leave of Court

1  to do so.

2  　　　　MR. DUMAIN:  Thank you, your Honor.

3  　　　　THE COURT:  All right.  This sort of ties into the

4  actions of people separately, I suppose.  But I want to raise

5  another issue, and I think that those are all of the issues

6  that you had in terms of the agenda.

7  　　　　The separate issue that I had is that there are, I

8  believe, four named plaintiffs who were not included in the

9  consolidated complaint, and perhaps two John Does, we believe

10  were not included in the consolidated complaint.  And I guess

11  what I would like to know from you, Mr. Driscoll,

12  Mr. Garrison, as lead counsel, if you have discussed the

13  matter with counsel for those plaintiffs who have not joined

14  the consolidated complaint and gotten any indication of how

15  they intend to proceed, I don't believe that any of their

16  counsel is present or on the phone.

17  　　　　Although, I had thought that counsel for Robin

18  Fipps, Ms. Quinn, was going to join us on the phone.

19  Ms. Quinn, you have not joined the phone call; is that

20  correct?  And I don't hear her, so I'll assume she is not.

21  Again, I would just ask that you reach out to counsel for

22  those plaintiffs who have not joined the consolidated

23  complaint, and get some indication of how they intend to

24  proceed.  At some point, and I don't think I'm at that point,

25  I will probably issue some kind of a show cause order if we

1    have no other response from them, just so that I can find out
2    the status.
3              MR. DRISCOLL:  Yes, your Honor.
4              THE COURT:  But I'll just ask that you reach out to
5    them.
6              MR. DRISCOLL:  And we have thus far, and we will
7    continue to do so.  Thank you, your Honor.
8              THE COURT:  Okay.  Mr. Driscoll, Mr. Garrison, on
9    behalf of the plaintiffs, anything else that we need to take
10   up here today, Mr. Dowd, I'll join you.
11             MR. DOWD:  No, your Honor.
12             THE COURT:  Okay.  And on behalf of the defendants,
13   Mr. Atkins, Mr. Cassetta, anything else, Mr. Dumain.
14             MR. ATKINS:  Nothing further, your Honor.
15             MR. DUMAIN:  Nothing further.
16             MR. CASSETTA:  Your Honor, on the schedule, the
17   next status conference, your Honor, is scheduled for
18   September 2nd, which I believe is the Friday before Labor
19   Day.
20             THE COURT:  That was on my last thing to take up.
21             MR. CASSETTA:  Okay.
22             THE COURT:  I think just because of the timing,
23   first of all, it is the Friday of Labor Day weekend.  It also
24   would be just a couple of days after the filing of the motion
25   to stay and compel arbitration.  So I'd like to move that to

1    the following Friday, September 9th, at 10:00 a.m.

2            So we will include in our order, and it will go on

3    the website as well, that the September 2nd date will be

4    cancelled.  It will be reset for September 9th at 10:00 a.m.

5    It is conceivable again, because the motion will have been

6    filed, will be in the period of where plaintiffs are

7    preparing their response to the motion.

8            It is conceivable that we may not have issues to

9    take up, but I want to go ahead and have a setting, and you

10   can do as you have done, which is to just notify the Court

11   that there are no agenda items, and then I can determine if I

12   have anything separate that I need to address with you; and

13   if I don't, then I can cancel it, and we will go to the

14   following month.  But I'd like to have a setting for

15   September the 9th at 10:00 a.m.

16           MR. CASSETTA:  Okay.  Thank you, your Honor.

17           THE COURT:  Okay.  Anybody have anything else?

18   Anybody on the phone have anything else that they need to

19   take up with the Court?

20           Again, I appreciate you all being here, and I will

21   see you in September.  It is hard to believe that we are

22   already into August and talking about September.

23           So that's why I was saying I hope you have been

24   having a good summer, because it is moving along quickly.  So

25   again, thank you for being here.  We will be in recess.

(The proceedings concluded at 10:50 a.m.)

1                    C E R T I F I C A T E

2

3           I, Lisa M. Paczkowski, Registered Professional

4    Reporter, hereby certify that I am a duly appointed Official

5    Court Reporter of the United States District Court for the

6    Eastern District of Missouri.

7           I further certify that the foregoing is a true and

8    accurate transcript of the proceedings held in the

9    above-entitled case and that said transcript is a true and

10   correct transcription of my stenographic notes.

11          I further certify that this transcript contains

12   pages 1 through 25 inclusive and that this reporter takes no

13   responsibility for missing or damaged pages of this

14   transcript when same transcript is copied by any party other

15   than this reporter.

16          Dated St. Louis, Missouri, this 11th day of August,

17   2016.

18

19

20

     ------------------------------------------
21   /s/Lisa M. Paczkowski
     Lisa M. Paczkowski, CCR, CSR, RPR
22   Official Court Reporter

23

24

25