# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| _____ | ) MDL No. 2669 |
| | ) |
| IN RE: ASHLEY MADISON CUSTOMER | ) |
| DATA SECURITY BREACH LITIGATION | ) Case No. 4:15-MD-2669-JAR |
| | ) |
| _____ | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NOEL BIDERMAN'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................ 1

    A.  Biderman was an employee of the companies that owned and operated Ashley
        Madison.............................................................................................2

    B.  Since March 2011, the Ashley Madison Terms and Conditions have contained
        arbitration provisions covering all claims arising from users' relationships with
        Ashley Madison. .................................................................................2

    C.  Plaintiffs' complaint does not distinguish between Biderman and Avid.................4

ARGUMENT ..............................................................................................4

   I.    Plaintiffs' claims against Biderman are covered by the arbitration provision in the
       2013 Terms and Conditions. .................................................................5

    A.  The plain language of the 2013 Terms and Conditions covers Plaintiffs' claims
        against Biderman. ...............................................................................5

    B.  Biderman may compel arbitration under New York law.........................................6

        1.  Biderman is entitled to compel arbitration because he was an agent of
            ADL. .........................................................................................6

        2.  Biderman is entitled to compel arbitration under the doctrine of
            equitable estoppel. ........................................................................7

            a.  Plaintiffs' claims against Biderman are intertwined with the
               2013 Terms and Conditions. ....................................................8

            b.  The relationship between Avid and Biderman is sufficiently
               close that Plaintiffs effectively consented to arbitrate claims
               against Biderman and it would be inequitable to permit
               Plaintiffs to avoid arbitration. ..................................................8

   II.   Plaintiffs' claims against Biderman are covered by the arbitration provision in the
       March 2011 Terms and Conditions............................................................11

    A.  The plain language of the 2011 Terms and Conditions cover Plaintiffs' claims
        against Biderman. ...............................................................................11

i

B.  Biderman may compel arbitration under Ontario law. ...........................................12

    1.  Biderman is a third-party beneficiary of the arbitration clause. ................12

    2.  The claims against Biderman and Avid are heavily intertwined. ..............13

III.    Federal law also permits Biderman to compel arbitration of Plaintiffs' claims. .........14

CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Arnold v. DirectTV, Inc.*,
  2013 WL 6159456 (E.D. Mo. Nov. 25, 2013) .................................................. 5, 10

*Brener v. Becker Paribas, Inc.*,
  628 F. Supp. 442 (S.D.N.Y. 1985) .............................................................. 6

*CD Partners, LLC v. Grizzle*,
  424 F.3d 795 (8th Cir. 2005)................................................................ 15

*Dalimpex Ltd. v. Janicki*,
  [2003] 172 O.A.C. 312 (Can. Ont. C.A) ...................................................... 14

*DiBello v. Salkowitz*,
  4 A.D. 3d 230 (N.Y. App. Div. 2004)......................................................... 7

*Dryburgh v. Oak Bay Marina*, (1992),
  2001 FCT 671 (Can.) ........................................................................ 13

*Dunmire v. Lee*,
  14 Misc. 3d 813 (N.Y. Sup. 2006) ........................................................... 7

*Fraser River Pile & Dredge Ltd. v. Can-Dive Serv. Ltd*,
  [1999] 3 S.C.R. 108 (Can.)................................................................. 12

*Gov't Emp. Ins. Co.* v. *Grand Med. Supply*,
  2012 WL 2577577 (E.D.N.Y. July 4, 2012) .............................................. 6, 7, 8, 9

*Greenfield Ethanol Inc. v. Suncor Energy Prods. Inc.*,
  (2007) 159 A.C.W.S. (3d) 474 (Can. Ont. S.C.J.) ........................................... 12

*Hirschfeld Prods., Inc. v. Mirvish*,
  88 N.Y.2d 1054 (1996) ...................................................................... 7

*Hoffman v. Fingerlakes Instrumentation*,
  7 Misc. 3d 179 (N.Y. Sup. 2005) ............................................................ 9

*Kates v. Wyant*,
  [2002] 112 A.C.W.S. (3d) 49 (Ont. Sup. Ct.) ............................................... 14

*Laing Prop. Corp. v. All Seasons Display Inc*,
  2000 BCCA 467 (Can.)....................................................................... 13

*London Drugs Ltd. v. Kuehne & Nagel Int'l Ltd*,
  [1992] 3 S.C.R. 299 (Can.)............................................................. 12, 13

*Midwest Swim & Active, LLC v. Fall*,
  2005 WL 2739235 (W.D. Mo. Oct. 21, 2005)................................................... 1

*Momentous.ca Corp. v. Canadian Am. Assn. of Prof'l Baseball Ltd.*,
  2010 ONCA 722 (Can. Ont. C.A.), *aff'd* 2012 SCC 9 (Can.)................................. 13

*Nardi v. Povich*,
  12 Misc. 3d 1188(A) (N.Y. Sup. 2006)..................................................................... 7

*Nesslage v. York Sec. Inc.*,
  823 F.2d 231 (8th Cir. 1987).............................................................................. 14

*Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Tech. Inc.*,
  2003 WL 23641529 (S.D.N.Y. June 4, 2003)........................................................ 10

*Pike v. Aaronson*,
  34 Misc 3d 1238(A) (N.Y. Sup. 2012)............................................................... 6, 9

*PRM Energy Systems, Inc. v. Primenergy, L.L.C.*,
  592 F.3d 830 (8th Cir. 2010)......................................................................... 14, 15

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974)........................................................................................ 13

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
  198 F.3d 88 (2d Cir. 1999).............................................................................. 10

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
  542 F.3d 354 (2d Cir. 2008).............................................................................. 7

*The Sarabia v. Oceanic Mindoro*,
  [1996] B.C.W.L.D. 2898 (Can.).......................................................................... 13

*Victorio* v. *Sammy's Fishbox Realty Co., LLC*,
  2015 WL 2152703 (S.D.N.Y. May 6, 2015)........................................................... 9

*Williams-Sonoma Inc. v. Oxford Prop. Grp. Inc*,
  2013 ONCA 441 (Can.) .................................................................................. 13

*Winter Inv'rs, LLC v. Panzer*,
  2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015) ....................................................... 6

**Statutes and Rules**

18 U.S.C. § 1962..................................................................................................... 1

18 U.S.C. § 2702..................................................................................................... 1

Fed. R. Civ. P. 12.................................................................................................... 1

## INTRODUCTION

Like Defendants Avid Dating Life ("ADL") and Avid Life Media ("ALM") (collectively, "Avid"), Defendant Noel Biderman asks this Court to compel arbitration of Plaintiffs' claims against him and dismiss or stay the case.  For all the reasons set out in Avid's Memorandum of Law in Support of Motion to Dismiss or Stay and Compel Arbitration ("Avid's Brief"), Plaintiffs' claims against Avid must be arbitrated.  Plaintiffs' claims against Biderman must likewise be arbitrated—under all three relevant bodies of law—because Biderman was an employee of a signatory to the arbitration agreement (ADL), and because Plaintiffs' claims against Biderman are intertwined with its claims against Avid.[1]

## FACTUAL BACKGROUND

This lawsuit arises out of the hack of Ashley Madison that was revealed in July 2015. *See generally* First Amended Consolidated Class Action Complaint (the "Complaint" or "Compl.") ¶¶ 1, 81-2.  In the Complaint, Plaintiffs have asserted claims under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1962), the Federal Stored Communications Act (18 U.S.C. § 2702), various states' data breach notification statutes, various states' consumer fraud and protection statutes, and the California Customer Records Act, as well as claims for negligence, breach of contract, unjust enrichment, and negligent misrepresentation.  *See id.* ¶¶ 132-283.  Plaintiffs have named as defendants ADL—the company that owned and operated the Ashley Madison Website—and its corporate parent, ALM.  *See id.* ¶ 82.  Plaintiffs have also named Biderman.

---

[1] Defendant Noel Biderman reserves his personal jurisdiction defense, which he intends to raise when (and if) he is required to move to dismiss under Federal Rule of Civil Procedure 12.  *Cf. Midwest Swim & Active, LLC v. Fall*, 2005 WL 2739235, at *3 n.2 (W.D. Mo. Oct. 21, 2005) (concluding that personal jurisdiction defense was preserved where defendant complied with Federal Rule of Civil Procedure 12 by raising the defense in its answer).

### A.   Biderman was an employee of the companies that owned and operated Ashley Madison.

In July 2015, Biderman was the Chief Executive Officer of ALM.  *See* Declaration of Noel Biderman ("Biderman Decl.") at ¶ 1.  Biderman had held that position since October 2010. *See id. ¶* 2.  Before then and beginning in August 2007, when ALM acquired Ashley Madison from Magnolia Stone Corporation ("MSC"), Biderman was the Chief Operating Officer of ALM. *See id.* ¶ 3.  Biderman was not the founder of Ashley Madison or the founder of ALM, as Plaintiffs allege (*see* Compl. ¶ 82).  *Id. ¶* 4.

In addition to his positions at ALM, Biderman also held various officer positions at ADL. Between January 2009 and August 2015, Biderman held positions including Chief Executive Officer, Chief Operating Officer, and President.  *See id.* ¶ 5.

All of Plaintiffs' allegations as they relate to Biderman—assuming but not conceding their truth—relate to actions that Biderman took in the scope of his employment at ALM and ADL.  *See id.* ¶ 6.

### B.  Since March 2011, the Ashley Madison Terms and Conditions have contained arbitration provisions covering all claims arising from users' relationships with Ashley Madison.

Shortly after Biderman became CEO of ALM, the Ashley Madison Terms and Conditions were modified to include an arbitration clause covering Ashley Madison users' relationship with the website.

The first version of the arbitration clause, which was in effect between March 17, 2011 and April 18, 2013 (the "2011 Terms and Conditions "), covered "any Dispute arising out of or relating to these Terms and Conditions."  Declaration of Ian M. Dumain ("Dumain Decl.") Exhibit B, Excerpt of Avid Dating Life Inc.'s and Avid Life Media Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories to Defendants at Response 2 ("Avid Interrog.

Resp. 2"); Dumain Decl. Exhibit C, March 2011 Terms and Conditions (AVID 00000076-82). The term Dispute included "any dispute, claim or controversy regarding any aspect of your relationship with Ashley Madison that has accrued or may hereafter accrue, whether based in contract, statute, regulation, tort (including without limitation claims arising from or pertaining to misrepresentation or negligence)." Dumain Decl. Exhibit C, March 2011 Terms and Conditions (AVID 00000076-82). The 2011 Terms and Conditions were governed by the internal substantive laws of Ontario, Canada, but the Arbitration Act of 1991 (Ontario) governed the arbitrability of all Disputes unless that act would not be enforced. *Id.* In that case arbitrability would be governed by the federal arbitration act in the relevant jurisdiction, such as the Federal Arbitration Act. *Id.*

The Terms and Conditions were revised on April 18, 2013 (the "2013 Terms and Conditions "). Dumain Decl. Exhibit B, Avid Interrog. Resp. 2; Dumain Decl. Exhibit D, 2013 Terms and Conditions (AVID 00000169-80). The arbitration in provision in force since then has—similar to the 2011 version—covered all "Disputes arising from or relating to this Arbitration Provision (including the interpretation, breach, termination and invalidity thereof) or the relationship that results from this Agreement". Dumain Decl. Exhibit B, Avid Interrog. Resp. 2; Dumain Decl. Exhibit D, 2013 Terms and Conditions (AVID 00000169-80). The term Dispute was defined to include "disputes, controversies, [and] causes of action (in tort, contract, by statute or otherwise). Dumain Decl. Exhibit D, 2013 Terms and Conditions (AVID 00000169-80). The 2013 Terms and Conditions further provide for United States residents that the substantive law of New York applies to all Disputes and the agreement itself unless there is a difference between the Federal Arbitration Act and New York law, in which case the Federal Arbitration Act would control. *Id.*

3

### C.  Plaintiffs' complaint does not distinguish between Biderman and Avid.

Plaintiffs' allegations about Biderman are intertwined with their allegations about Avid. Plaintiffs define ADL, ALM, and Biderman collectively as Defendants and use that definition to make their allegations throughout the Complaint.[2]  *See* Compl. ¶ 80.  Every claim in the complaint is pleaded against all three Defendants as a single unit.  *See id.* ¶¶ 132-283.

When Plaintiffs do make allegations regarding Biderman's individual conduct, it is frequently to suggest that his interests were aligned with Avid beyond the "normal scope of his employment as an executive" and that he had a "personal interest in concealing the true nature of the illicit activities of the Ashley Madison website."  Compl. ¶ 142.  Plaintiffs contend that Avid "us[ed] Biderman and other executive officers of the corporate defendants" for Avid's own purposes, and even that Biderman and Avid constituted a single enterprise "associated for the common or shared purpose of defrauding Plaintiffs," who engaged in a "common course of conduct," were "associated-in-fact with each other and with other individuals and entities for a number of common and ongoing purposes," and maintained "a common communication network" to "share[ ] information on a regular basis."  *Id.* ¶¶ 146, 138, 136, 135, 150.

### ARGUMENT

For the reasons set out in Avid's Brief, each Plaintiff entered an enforceable agreement with Avid, and each Plaintiff's claims against Avid must be arbitrated under either one or both of the arbitration provisions that have been in effect since March 2011.  The Plaintiffs' claims against Biderman must likewise be arbitrated.

---

[2] Plaintiffs also served a single set of discovery on Avid and Biderman.  *See* Dumain Decl. ¶ 4.  In that discovery, Plaintiffs defined the terms "You," "Your," and "Defendants" to collectively refer to ADL, ALM, and all their employees and agents including Biderman.  *See id.* Ex. A, Plaintiffs' First Set of Interrogatories to Defendants ¶ 1.

4

As this Court has observed, "[s]tate contract law determines whether a non-signatory [like Biderman] can enforce the provisions of an arbitration clause" and "[w]hen the available state law is sparse, the Court may look primarily to federal law." *Arnold v. DirectTV, Inc.*, 2013 WL 6159456, at *3 (E.D. Mo. Nov. 25, 2013) (Ross, J.).  In this case, the governing Terms and Conditions had New York and Ontario choice of law provisions.  And under both New York law and Ontario law, Plaintiffs' claims against Biderman are arbitrable to the same extent as their claims against Avid.  Federal law leads to the same result.

**I.     Plaintiffs' claims against Biderman are covered by the arbitration provision in the 2013 Terms and Conditions.**

As Avid has demonstrated, all Plaintiffs who are bound by the 2013 Terms and Conditions  must arbitrate the claims they have asserted against ADL.  That conclusion should apply equally to those Plaintiffs' claims against Biderman because those claims (1) fall squarely within the plain language of the arbitration clause and (2) the governing New York law demands it.

**A.  The plain language of the 2013 Terms and Conditions covers Plaintiffs' claims against Biderman.**

As noted above, the 2013 Terms and Conditions contained an arbitration provision that on its face covers any state or federal claims, under any theory, that relate to the relationship between Ashley Madison users and ADL.  It provides under the headings "ARBITRATION AND CLASS ACTION WAIVER" and "Scope" as follows:

> **All** disputes, controversies, **causes of action** (**in tort, contract, by statute or otherwise**) ('Disputes'), including, without limitation, Disputes **arising from or relating to** this Arbitration Provision (including the interpretation, breach, termination and invalidity thereof) or **the relationship that results from this Agreement** shall be resolved by binding arbitration by a single independent and impartial arbitrator . . . .

5

Dumain Decl. Exhibit B, Avid Interrog. Resp. 2; Dumain Decl. Exhibit D, 2013 Terms and Conditions (AVID 00000169-80) (emphasis added).

The claims against Biderman are predicated upon alleged conduct relating to Plaintiffs' relationship with Ashley Madison. *See* Compl. ¶ 141. They are thus covered by the arbitration provision. *See Brener v. Becker Paribas, Inc.*, 628 F. Supp. 442, 451 (S.D.N.Y. 1985) (compelling arbitration of claims against non-signatory broker under arbitration provision covering "any controversy arising out of the plaintiffs' [brokerage] accounts").

### B. Biderman may compel arbitration under New York law.

Even absent the broad language of the 2013 Terms and Conditions, arbitration of Plaintiffs' claims against Biderman would be required under the New York law that governs them. New York law "recognize[s] that arbitration need not always involve parties to the agreement." *Gov't Employees Ins. Co.* v. *Grand Med. Supply*, 2012 WL 2577577, at *3 (E.D.N.Y. July 4, 2012). Courts applying New York law have relied on many theories to permit non-signatories to arbitration agreements to bind signatories. *See Pike v. Aaronson*, 34 Misc 3d 1238(A), at *5 (N.Y. Sup. 2012) (setting out five theories).[3] Biderman is entitled to compel arbitration under at least two of them—agency and equitable estoppel.

#### 1. Biderman is entitled to compel arbitration because he was an agent of ADL.

As an initial matter, from January 2009 until August 2015 Biderman held various positions at ADL—the party to the 2013 Terms and Conditions—including CEO, COO, and President. Courts applying New York law consistently hold that employees or agents of a party

---

[3] Because the Second Circuit relies upon "traditional principles of state law" to determine when a non-signatory may compel arbitration of claims made by a signatory to the relevant arbitration agreement, "the distinction between federal law [in the Second Circuit] and New York law on this issue appears to be insignificant." *Gov't Employees Ins. Co.* v. *Grand Med. Supply*, 2012 WL 2577577, at *3 (E.D.N.Y. July 4, 2012) (internal citation omitted); *see Winter Inv'rs, LLC v. Panzer*, 2015 WL 5052563, at *10 n.7 (S.D.N.Y. Aug. 27, 2015) (noting New York law governed the issue of estoppel, but relying on Second Circuit precedent because it "is consistent with the contours of the estoppel theory under New York law.").

6

to an arbitration agreement are protected by that agreement.  *See, e.g.*, *DiBello v. Salkowitz*, 4 A.D. 3d 230, 230 (N.Y. App. Div. 2004) (granting motion to compel arbitration by non-party radio station manager where plaintiff and station owner were signatories to arbitration agreement); *Dunmire v. Lee*, 14 Misc. 3d 813, 815 – 816 (N.Y. Sup. 2006) (granting motion to compel arbitration by non-party broker where plaintiff and brokerage firm were signatories to arbitration agreement); *Nardi v. Povich*, 12 Misc. 3d 1188(A), at *5 (N.Y. Sup. 2006) (granting motion to compel arbitration by non-party television studio employees where plaintiff and studio were signatories to arbitration agreement); *see also Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056 (1996) (applying FAA and affirming order compelling arbitration of claims against non-signatory agents where plaintiff and principal were signatories to arbitration agreement). This authority should end the inquiry under the 2013 Terms and Conditions.

### 2.  Biderman is entitled to compel arbitration under the doctrine of equitable estoppel.

The doctrine of equitable estoppel provides an independently sufficient basis to compel arbitration of the claims against Biderman.  This doctrine permits a non-signatory to compel arbitration with a signatory if (1) the subject matter of the dispute is intertwined with the contract providing for arbitration; and (2) the non-signatory has a relationship with a signatory to the agreement that is sufficiently close to support either the conclusion that (a) the non-movant effectively consented to extend the agreement to the non-signatory or (b) it would be inequitable to allow the non-movant to avoid arbitration with the moving party.  *See Grand Med. Supply*, 2012 WL 2577577, at *3 – *4 (citing *Sokol Holdings, Inc. v. BMB Munai, Inc.,* 542 F.3d 354, 361 (2d Cir. 2008)).  This test is met here.

### a.   Plaintiffs' claims against Biderman are intertwined with the 2013 Terms and Conditions.

Plaintiffs' claims are intertwined with the Terms and Conditions for at least two reasons.

First, as Avid has explained in its brief, each Plaintiff created at least one Ashley Madison profile by agreeing to the Terms and Conditions.  And had Plaintiffs not created those Ashley Madison profiles, they would not have been able to allege that they were harmed by Biderman's alleged conduct relating to the Plaintiffs' use of those profiles.  *See Grand Med. Supply*, 2012 WL 2577577, at *4 (finding that claims against principal of corporate defendants were intertwined with claims against corporate defendants where plaintiff would not have had any relationship with principal but for the plaintiff's relationship with the corporate defendants).

Second, the 2013 Terms and Conditions may provide a full or partial defense to Plaintiffs' claims.  For example, Plaintiffs allege that "Defendants were engaging in deceptive and fraudulent conduct by creating fake computer 'hosts' or 'bots', which were programmed to generate and send messages to male members" and assert a number of claims based on that alleged conduct.  Compl. ¶ 107.  But the 2013 Terms and Conditions contain disclosure about the authenticity of member profiles.  *See* Dumain Decl. Exhibit D, 2013 Terms and Conditions (AVID 00000169-80) ("We do not guarantee the authenticity of any member using our site.").  The 2013 Terms and Conditions also limit ADL's liability to $5,000.  *See id.*

### b.   The relationship between Avid and Biderman is sufficiently close that Plaintiffs effectively consented to arbitrate claims against Biderman and it would be inequitable to permit Plaintiffs to avoid arbitration.

The second element of the equitable estoppel test is also met:  The relationship between Biderman and Avid that Plaintiffs have alleged in the Complaint is sufficiently close to support both the conclusion that Plaintiffs effectively consented to arbitrate their claims against

Biderman and the conclusion that it would be inequitable to permit Plaintiffs to avoid arbitration. Many courts granting relief to non-signatories based on equitable estoppel have focused on two factors that are present here.

First, Plaintiffs have alleged "substantially interdependent and concerted misconduct" by both Avid and Biderman. *Hoffman v. Fingerlakes Instrumentation*, 7 Misc. 3d 179, 185 (N.Y. Sup. 2005) (granting motion to compel arbitration by non-party defendant LLC where plaintiff alleged substantially interdependent and concerted misconduct by defendant LLC and defendant LLC members who were signatories to an arbitration agreement); *see also Grand Med. Supply*, 2012 WL 2577577, at *4 (granting motion to compel arbitration where plaintiff alleged individual non-signatory defendant controlled the signatory corporations); *Pike v. Aaronson*, 34 Misc. 3d 1238(A), at *5 (N.Y. Sup. 2012) (granting motion to compel arbitration by defendant non-signatory attorney of signatory co-defendant where investor plaintiff alleged non-signatory attorney acted in concert with signatory to defraud plaintiff).  For example, Plaintiffs have alleged that Avid and Biderman were engaged in a "criminal conspiracy" and that Biderman used his "influence and position within the corporate defendants to carry out" what they define as "the Illegal Scheme."  Compl. ¶¶ 143, 153.

And second, Plaintiffs have generally made their allegations collectively about Defendants, which includes Avid and Biderman, "attributing the alleged wrongdoing jointly between [them] and the relevant corporation(s) in many of [their] allegations."  *Grand Med. Supply*, 2012 WL 2577577, at *4; *see also Victorio* v. *Sammy's Fishbox Realty Co., LLC*, 2015 WL 2152703, at *18 (S.D.N.Y. May 6, 2015) ("By treating all the Defendants as a single unit, Plaintiffs themselves have demonstrated the level of 'intertwined-ness' needed to force arbitration of any claims Plaintiffs may have against these non-signatory corporations."); *Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Tech. Inc.*, 2003 WL 23641529, at *11 (S.D.N.Y. June 4,

2003) (granting non-signatory's motion to compel arbitration where plaintiff's claims against signatory and non-signatory were substantially identical and plaintiff sued both defendants together in each claim).[4]  In fact, every claim in the Complaint is pled against all three Defendants, treating them as a single unit.  *See* Compl. ¶¶ 132-283.

In light of Plaintiffs' own allegations, the Court should conclude both that Plaintiffs effectively consented to arbitrate their claims against Biderman and that it would be inequitable to permit Plaintiffs to avoid arbitration.  Either conclusion requires granting relief to Biderman.

* * * * *

For the reasons set out above, under New York law, the claims against Biderman are arbitrable under the 2013 Terms and Conditions to the same extent as the claims against Avid. To the extent, however, the Court reaches the contrary conclusion (or if it concludes that New York law on this question is sparse), it must look to federal law.  *See* Dumain Decl. Exhibit D, 2013 Terms and Conditions (AVID 00000169-80) (stating that Federal Arbitration Act governs if there is a conflict between it and New York law); *Arnold v. DirectTV, Inc.*, 2013 WL 6159456, at *3 (E.D. Mo. Nov. 25, 2013) ("[w]hen the available state law is sparse, the Court may look primarily to federal law.").  And as set out in Part III, federal law permits Biderman to compel arbitration of the claims against him.

## II.     Plaintiffs' claims against Biderman are covered by the arbitration provision in the March 2011 Terms and Conditions.

As with the 2013 Terms and Conditions, Avid has demonstrated that the Plaintiffs who are bound by the 2011 Terms and Conditions must arbitrate the claims they have asserted against

---

[4] Plaintiffs' treatment of Biderman and Avid that determines whether Plaintiffs may be estopped from avoiding arbitration. *See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999) (applying estoppel where the plaintiff treated non-signatory companies and their signatory assignees as though they were "interchangeable" and "as a single unit").  Biderman denies that he and Avid are interchangeable or that any basis exists to disregard Avid's corporate form.

ADL.  That conclusion should apply equally to their claims against Biderman because those claims (1) fall squarely within the plain language of the arbitration clause and (2) the governing Ontario law demands it.

**A.  The plain language of the 2011 Terms and Conditions cover Plaintiffs' claims against Biderman.**

As noted above, the 2011 Terms and Conditions contained an arbitration provision that on its face covers any state or federal claims, under any theory, that relates to the relationship between Ashley Madison users and ADL.  It provides under the heading "Arbitration and Class Actions Waiver" as follows:

> **Any Dispute arising out of or relating to these Terms and Conditions** may be resolved through binding arbitration . . . The term **"Dispute" means** any dispute, **claim** or controversy **regarding any aspect of your relationship with Ashley Madison** that has accrued or may hereafter accrue, **whether based in contract, statute, regulation, tort (including without limitation claims arising from or pertaining to misrepresentation or negligence)**, and includes the validity and enforceability of this Arbitration Provision . . . .

Dumain Decl. Exhibit B, Avid Interrog. Resp. 2; Dumain Decl. Exhibit C, March 2011 Terms and Conditions (AVID 00000076-82) (emphasis added).

The claims against Biderman are predicated upon alleged conduct relating to Plaintiffs' relationship with Ashley Madison.  *See* Compl.  ¶ 141.  They are thus covered by this language.

**B.  Biderman may compel arbitration under Ontario law.**

Even absent the broad language of the 2011 Terms and Conditions, arbitration of Plaintiffs' claims against Biderman would be required under the Ontario law that governs them. As an initial matter, "[a]rbitration agreements are interpreted broadly, in favor of arbitration." *Greenfield Ethanol Inc. v. Suncor Energy Products Inc.*, (2007) 159 A.C.W.S. (3d) 474, para. 8 (Can. Ont. S.C.J.).  Where an arbitration clause is "capable of two interpretations," courts will

11

adopt the interpretation that favors arbitration.  *Id.*  Here, Biderman is entitled to compel

arbitration for two independently sufficient reasons.

### 1.  Biderman is a third-party beneficiary of the arbitration clause.

First, Biderman is entitled to enforce the arbitration provision in the 2011 Terms and

Conditions under the "principled exception" to the rule of privity.

Under the "principled exception," a non-signatory can enforce contractual provisions to

which they are not privy where (1) "the parties to the contract intend[ed] to extend the benefit in

question to the third party seeking to rely on the contractual provision" and (2) "the activities

performed by the third party seeking to rely on the contractual provision are the very activities

contemplated as coming within the scope of the contract in general, or the provision in particular,

again as determined by reference to the intentions of the parties[.]"  *Fraser River Pile & Dredge*

*Ltd. v. Can-Dive Services Ltd*, [1999] 3 S.C.R. 108, para. 32 (Can.).  The "principled exception"

is meant to apply where there is an "identity of interest" between the contracting party and the

third party in relation to the contracting party's performance of its obligations under the

agreement.  *London Drugs Ltd. v. Kuehne & Nagel International Ltd*, [1992] 3 S.C.R. 299, para.

246 (Can.).  "Unless there is a clear intention not to cover the employees, the Court should imply

that they are covered by" the clause at issue.  *Dryburgh v. Oak Bay Marina,* (1992), 2001 FCT

671, para. 52 (Can.); *see also Laing Property Corp. v. All Seasons Display Inc*, 2000 BCCA 467,

para. 107, 118 (Can.) (extending protection of insurance clauses in lease agreement between

landlord and tenants to landlord's employees); *Williams-Sonoma Inc. v. Oxford Properties*

*Group Inc*, 2013 ONCA 441 para. 27-39 (Can.) (finding release of claims for water damage in

lease agreement extended to the benefit of the landlord's non-signatory contractor).

Avid and Biderman have the "identity of interest between the employer and [the] employee[ ]" that underlies the principled exception.  *London Drugs,* [1992] 3 S.C.R. 299, para. 246; *see* Compl. ¶¶ 80, 141.  And the 2011 Terms and Conditions do not reflect an intent—much less a clear intent—to exclude employees.  Biderman is thus entitled to compel arbitration of Plaintiffs' claims.

### 2.   The claims against Biderman and Avid are heavily intertwined.

Even if the Court concludes that Biderman is not entitled to avail himself of the principled exception, Ontario law provides another avenue for Biderman to compel arbitration.

Courts applying Ontario law consider arbitration provisions to be "in effect, a specialized kind of forum selection clause" specifying both the situs and procedure of the dispute.  *The Sarabia v. Oceanic Mindoro*, [1996] B.C.W.L.D. 2898, para. 32 (Can. B.C. C.A.), *citing Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519 (1974) (noting there is "no reason in principle to treat choice of jurisdiction clauses differently from arbitration agreements").  And like New York law, Ontario law permits a non-signatory defendant to obtain the benefit of a forum selection clause when the claims against the non-signatory are heavily intertwined with claims against a signatory defendant.  *See Momentous.ca Corp. v. Canadian American Assn. of Professional Baseball Ltd*., 2010 ONCA 722, para. 50-53 (Can. Ont.), *aff'd* 2012 SCC 9 (Can.) (holding that non-signatory commissioner of sports league was entitled to protection of forum selection clause in league's agreement based on plaintiffs' pleading, which alleged claims for relief arising out of the same transactions and occurrences, raising common questions of fact and law); *Dalimpex Ltd. v. Janicki*, [2003] 172 O.A.C. 312, para. 44- 45 (Can. Ont.) (affirming trial court decision staying claims against non-signatories pending arbitration where claims of non-signatories would "stand or fall on the merits of the action against" the signatory); *Kates v. Wyant*, [2002] 112 A.C.W.S.

(3d) 49, para. 39 (Can. Ont. Sup. Ct.) (giving defendant law firm partner benefit of forum selection clause where claims against partner and law firm were heavily intertwined with claims against signatory client).  As discussed in Part I(B)(2)(a), Plaintiffs' claims against Biderman are heavily intertwined with their claims against Avid.  Biderman thus can compel arbitration of its claims under the 2011 Terms and Conditions.

### III.      Federal law also permits Biderman to compel arbitration of Plaintiffs' claims.

For the reasons set out above, the Court can compel arbitration of Plaintiffs' claims against Biderman under New York and Ontario law.  To the extent, however, the Court were to conclude that resort to federal law were necessary, the result would be the same.  Biderman is also entitled to compel arbitration under federal law because he was Avid's agent and Plaintiffs have alleged a close relationship between Biderman and Avid during the period at issue.  *See PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010).

In the Eighth Circuit, a non-signatory to an arbitration agreement can compel arbitration against a signatory under two circumstances.  "The first relies on agency" and applies where, because of a "nonsignatory's close relationship with a signatory, a failure to [compel arbitration] would eviscerate the arbitration agreement."  *Id.* at 834; *see also Nesslage v. York Sec. Inc.*, 823 F.2d 231, 233 (8th Cir. 1987) (compelling arbitration of claims against non-signatory because non-signatory was a disclosed agent of signatory).  The second is "alternative estoppel," which can be shown (among other ways) when a signatory to the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.  *Primenergy, L.L.C.*, 592 F.3d at 834 (citing *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798-99 (8th Cir. 2005)).

14

Both tests are met here.  As discussed in Part I(B)(1), Biderman was an agent of ADL, and requiring Biderman to litigate the claims against him would eviscerate the arbitration agreement.  And as discussed in Part I(B)(2), Plaintiffs have raised allegations of substantially interdependent and concerted misconduct by Avid and Biderman.  If the Court applies Eighth Circuit authority, then the claims against Biderman must be sent to arbitration.

## CONCLUSION

For all the reasons set out above and in Avid's Brief, Biderman requests that this Court grant his motion to dismiss or stay and to compel arbitration of Plaintiffs' claims.

Dated:  August 29, 2016
        Armonk, NY

Respectfully submitted,


BOIES, SCHILLER & FLEXNER LLP

By
William S. Ohlemeyer
Christopher M. Green
Ian M. Dumain
333 Main Street
Armonk, NY  10504
Telephone: 914-749-8440
Facsimile:  914-749-8300
wohlemeyer@bsfllp.com
cgreen@bsfllp.com
idumain@bsfllp.com

*Attorneys for Defendant*
*Noel Biderman*