**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION | ) ) ) | |
| This Document Relates to: | ) ) ) | MDL No. 2669 |
| ALL CASES | ) ) ) | Case No. 4:15-MD-02669-JAR |

**AVID'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

     A.     Plaintiffs' Ashley Madison Accounts ...................................................... 2

     B.     The Ashley Madison Registration Pages ..............................................10

ARGUMENT ......................................................................................................... 11

I.     Avid Has Established Plaintiffs' Accounts By More Than a Preponderance.................. 12

II.     Plaintiffs Assented to the Terms and Conditions In Creating Their Accounts ................................................................................................... 14

III.     All the Plaintiffs Agreed to Arbitrate Their Claims........................................ 22

IV.     The Arbitration Agreement Is Not Unconscionable .......................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Appistry, Inc.* v. *Amazon.com, Inc.*,
No. 4:13-cv-2547, 2015 WL 881507 (E.D. Mo. Mar. 1, 2015)............................12, 16, 17, 25

*AT&T Mobility LLC* v. *Concepcion*,
563 U.S. 333 (2011)........................................................................................................11, 23

*Badie* v. *Bank of Am.*,
67 Cal. App. 4th 779 (1998) ...................................................................................................23

*Bank of Am., N.A.* v. *JB Hanna, LLC*,
766 F.3d 841 (8th Cir. 2014) ..................................................................................................11

*Bar-Ayal* v. *Time Warner Cable Inc.*,
No. 03-cv-9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006)..............................................17

*Bekele* v. *Lyft, Inc.*,
No. 15-cv-11650, 2016 WL 4203412 (D. Mass. Aug. 9, 2016) .............................................17

*Berkson* v. *Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .................................................................................17, 18

*Burcham* v. *Expedia, Inc.*,
No. 4:07-cv-1963, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009).......................11, 13, 16, 17, 21

*Clark* v. *Matthews Int'l Corp.*,
639 F.3d 391 (8th Cir. 2011) ..................................................................................................13

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
835 F.3d 1195 (10th Cir. 2016) ..............................................................................................25

*CQL Original Prods.* v. *Nat'l Hockey League Players' Ass'n*,
39 Cal. App. 4th 1347 (Ct. App. Cal. 1995) ...........................................................................23

*Crinnion* v. *Great Atl. & Pac. Tea Co.*,
156 N.J. Super. 479 (Sup. Ct. N.J. 1978)................................................................................23

*Cullinane* v. *Uber Techs., Inc.*,
No. 14-cv-14750, 2016 WL 3751652 (D. Mass. July 11, 2016) ..........................14, 16, 17, 19

*Davidson & Assoc., Inc.* v. *Internet Gateway, Inc.*,
No. 4:02-cv-00498 (E.D. Mo. Dec. 22, 2003) .......................................................................13

*Decker* v. *Bookstaver*,
No. 4:09-cv-1361, 2010 WL 2132284 (E.D. Mo. May 26, 2010) ...........................................25

*Douglas* v. *U.S. District Court for the Central District of Calif.*,
495 F.3d 1062 (9th Cir. 2007) ........................................................................................23, 24

*Ekin* v. *Amazon Servs., LLC*,
No.14-cv-0244, 2014 WL 7741772 (W.D. Wash. Dec. 10, 2014) ........................................23

*Faber* v. *Menard, Inc.*,
367 F.3d 1048 (8th Cir. 2004) .............................................................................................25

*Fteja* v. *Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................16, 17, 19

*Gay* v. *CreditInform*,
511 F.3d 369 (3d Cir. 2007)...................................................................................................25

*Gillman* v. *Chase Manhattan Bank, N.A.*,
534 N.E.2d 824 (N.Y. 1988)..................................................................................................25

*Goza* v. *Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*,
No. 12-cv-6125, 2014 WL 3672128 (W.D. Ark. July 23, 2014)................................20, 21. 22

*Jackson* v. *Pasadena Receivables, Inc.*,
921 A.2d 799 (Md. 2007) ......................................................................................................23

*Jones* v. *Titlemax of Missouri*,
No. 4:15-cv-01361, 2016 WL 4158886 (E.D. Mo. Aug. 5, 2016) ........................................24

*Keystone Retaining Wall Sys., Inc.* v. *Basalite Concrete Prods., LLC*,
No. 10-cv-4085, 2011 WL 6436210 (D. Minn. Dec. 19, 2011) ............................................22

*Major* v. *McCallister*,
302 S.W.3d 227 (Mo. Ct. App. 2009).....................................................................................20

*Masters* v. *UHS of Del., Inc.*,
No. 06-cv-1850, 2008 WL 5600714 (E.D. Mo. Oct. 21, 2008)..............................................22

*McKeage* v. *Cordonnier*,
357 S.W.3d 597 (Mo. 2012) ..................................................................................................23

*Meyer* v. *Kalanick*,
No. 15-cv-9796, 2016 WL 4073012 (S.D.N.Y. July 29, 2016)...............................................17

*Patco Const. Co.* v. *People's United Bank*,
No. 09-cv-503, 2011 WL 2174507 (D. Me. May 27, 2011).....................................................23

iii

*Ragone* v. *Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010)..........................................................................25

*Rent-A-Ctr., W., Inc.* v. *Jackson*,
  561 U.S. 63 (2010).......................................................................................24

*Royal Bed & Spring Co.* v. *Famossul Industria e Comercio de Moveis Ltda.*,
  906 F.2d 45 (1st Cir. 1990)...........................................................................25

*Salameno* v. *Gogo Inc.*,
  No. 16-cv-0487, 2016 WL 4005783 (E.D.N.Y. July 25, 2016)....................2, 18, 19

*Selden* v. *Airbnb, Inc.*,
  No. 16-cv-00933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ..............10, 14, 16, 18

*Snap-on Bus. Solutions Inc.* v. *O'Neil & Assoc., Inc.*,
  708 F. Supp. 2d 669 (N.D. Ohio 2010)..........................................................20

*Starke* v. *Gilt Groupe, Inc.*,
  No. 13-cv-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ..............15, 17, 19

*Swain* v. *Auto Servs., Inc.*,
  128 S.W.3d 103 (Mo. Ct. App. 2003)............................................................25

*Titus* v. *William F. Cooke Ents. Inc.*,
  2007 CarswellOnt 5229 (Can. Ont. Ct. App. 2007)....................................24, 25

*Yamada Corp.* v. *Yasuda Fire and Marine Ins. Co.*,
  305 Ill. App. 3d 362 (App. Ct. Ill. 1999) .......................................................23

Avid respectfully submits this Reply Memorandum in further support of its motion to dismiss or stay and to compel arbitration.  Pursuant to F.R.C.P. 78 and E.D. Mo. L.R. 4.02(B), Avid respectfully requests oral argument on its motion.  Avid's motion presents an important issue in this litigation, which warrants the hearing of oral argument.

## INTRODUCTION

Plaintiffs claim that there is too much uncertainty about the creation of their Ashley Madison accounts to find that they assented to the website's arbitration agreement.  Plaintiffs labor over perceived imperfections in the registration process and documentation.  Upon inspection, however, most of Plaintiffs' critiques have nothing to do with the documents and facts on which Avid's motion actually rests.  The facts that matter in deciding this motion are either undisputed, admitted, or established by more than a preponderance of the evidence:

1.      Plaintiffs *do not dispute* that the 18 accounts specifically identified by Avid as the basis of its motion are, in fact, the most recent accounts created by Plaintiffs.

2.      Avid identified those 18 accounts based on unique identifying information that Plaintiffs themselves produced to Avid.  Avid did not guess or speculate.  Avid located these accounts using the names, numbers, and email addresses provided by Plaintiffs.

3.      Plaintiffs created those accounts using one of the five registration pages attached as Appendices 1-5.  None of the Plaintiffs claims to have created these accounts using any other registration pages.  Thus, Plaintiffs' criticisms of the other registration pages are irrelevant.

4.      Four of these registration pages (App. 1-4) come from Avid's internal business records.  Only one (App. 5) comes from the Internet Archive, which has authenticated the document.

On these uncontested facts, the legal test for determining whether Plaintiffs became bound by the online Terms and Conditions when they created their Ashley Madison accounts is

straightforward:  (1) did the registration process give them "reasonable notice" of the Terms and Conditions, and (2) did Plaintiffs "manifest their assent" to those Terms and Conditions by clicking on the registration page to sign up and use the website.  That is the governing law of online contract formation.

As the judge who decided *Berkson*, the case on which Plaintiffs so heavily rely, found in a subsequent case that Plaintiffs so conspicuously fail to cite:  an online agreement is enforceable "where the hyperlinked 'terms and conditions' is next to the only button that will allow the user to continue use of the website."  *Salameno* v. *Gogo Inc.*, No. 16-cv-0487, 2016 WL 4005783, at *4 (E.D.N.Y. July 25, 2016) (quotation marks and citation omitted).  That some of the Plaintiffs claim not to "recall" seeing or reading the Ashley Madison Terms and Conditions is legally irrelevant.  Plaintiffs were given notice via a hyperlink and then assented to the Terms and Conditions when they clicked the button creating their accounts.  As a matter of law, they each agreed to arbitrate and they each should be compelled to arbitrate.

## FACTUAL BACKGROUND

### A.  Plaintiffs' Ashley Madison Accounts

To help the Court navigate Plaintiffs' opposition, we set forth below the evidence and admissions establishing the relevant account and registration page for each Plaintiff.  Based on the identifying information *provided by Plaintiffs*, Avid located the most recent account created by each Plaintiff, using one of the five appended registration pages.  (Avid Br., App. A.)

### 1.  Marc Benefield

Account:  No. ███████████████ created April 18, 2015.

- Benefield *does not dispute* creating this account.
- Account matches identifying information Benefield provided:  email address ████████████, state (Arkansas), and creation date (April 2015). (McDonough Dec. Ex. 6 at 6; Jiwan Reply Dec. Ex. 1.)

2

Registration Page:  Appendix 1.  (Ex. I.)[1]

- Terms and Conditions on April 18, 2015 included the arbitration clause. (Jiwan Dec. ¶ 26.)

## 2.    Paul Jack

Account:  No. ███ ██████████████████ created March 24, 2015.

- Jack *does not dispute* creating this account.
- Account matches identifying information Jack provided:  email address ████████████████, and city/state (Charlotte, North Carolina). (McDonough Dec. Ex. 14 at 6; Jiwan Reply Dec. Ex. 2.)

Registration Page:  Appendix 1.  (Ex. I.)

- Terms and Conditions on March 24, 2015 included the arbitration clause. (Jiwan Dec. ¶ 26.)

## 3.    David Miller

Account:  No. ██████  created January 10, 2015.

- Miller *does not dispute* creating this account.
- Account matches identifying information Miller provided:  email address ████████████████, account number, and state (Minnesota). (McDonough Dec. Ex. 17 at 6; Jiwan Reply Dec. ¶ 4 n.3, Ex. 3.)

Registration Page:  Appendix 1.  (Ex. I.)

- Terms and Conditions on January 10, 2015 included the arbitration clause. (Jiwan Dec. ¶ 26.)

## 4.    David Yagel

Account:  No. ██████  created on January 6, 2015.

- Yagel *does not dispute* creating this account.
- Account matches identifying information Yagel provided:  email address ████████████████, account number, city/state (Pueblo, Colorado), and birthday ████████.  (McDonough Dec. Ex. 22 at 3, 4, 6; Jiwan Reply Dec. ¶ 4 n.3, Ex. 4.)

Registration Page:  Appendix 1.  (Ex. I.)

- Terms and Conditions on January 6, 2015 included the arbitration clause. (Jiwan Dec. ¶ 26.)

---

[1]   References to the Exhibits of the Amended Declaration of Rizwan Jiwan ("Jiwan Dec.") are cited as "(Ex. __.)."  References to the Reply Declaration of Rizwan Jiwan are cites as "Jiwan Reply Dec."

<u>Other Evidence of Assent to Arbitration</u>:  Dialog Box.

- Yagel also clicked "I Agree" in the Dialog Box on April 28, 2011 (using Account No. ███████), agreeing to Terms and Conditions with arbitration clause.  (Jiwan Dec. ¶ 24, 26; Jiwan Reply Dec. ¶ 6, Ex. 19.)

- Yagel *does not dispute* clicking the Dialog Box, just claims he does not recall. (McDonough Dec. Ex. 40 ¶ 6.)

**5.     Byron Goetting**

<u>Account</u>:  No. ████████ ████████ created March 18, 2014.

- Goetting *does not dispute* creating this account.

- Account matches identifying information Goetting provided:  email address ████████████████, account greeting ████████, city/state (Las Vegas, Nevada), and birthday ████████.  (McDonough Dec. Ex. 11 at 3, 6; Jiwan Reply Dec. Ex. 5.)

<u>Registration Page</u>:  Appendix 1.  (Ex. I.)

- Terms and Conditions on March 18, 2014 included the arbitration clause. (Jiwan Dec. ¶ 26.)

**6.     John Hiles**

<u>Account</u>:  No. ████████ created December 12, 2013.

- Hiles *does not dispute* creating this account.

- Account matches identifying information Hiles provided:  email address ████████████████, account number, and birthday ████████. (McDonough Dec. Ex. 12 at 3, 6; Jiwan Reply Dec. ¶ 4 n.3, Ex. 6.)[2]

<u>Registration Page</u>:  Appendix 1.  (Ex. I.)

- Terms and Conditions on December 12, 2013 included the arbitration clause. (Jiwan Dec. ¶ 26.)

**7.     Gustavo Alfaro**

<u>Account</u>:  No. ████████ ████████ created August 25, 2013.

- Alfaro *does not dispute* creating this account.

- Account matches identifying information Alfaro provided:  email address

---

[2]   Hiles claims that he does not recall listing Madison, Alabama in his profile (McDonough Dec. Ex. 30 ¶ 8), but his other profile details for account No. ████████ match the information Hiles provided in discovery -- *including his account number*.  Hiles also claims to recall creating an account in May 2012, but Avid's search did not identify such an account and he has submitted no evidence supporting that recollection.  (Jiwan Reply Dec. ¶ 5.)

████████████████, state (California), and birthday ████████████████.
(McDonough Dec. Ex. 5 at 3, 6; Jiwan Reply Dec. Ex. 7.)  Usernames he
provided (████████████████ and ████████████████████) are nearly the same
as the username for this account ████████████████.  (*Id.*)

<u>Registration Page</u>:  Appendix 1.  (Ex. I.)

- Terms and Conditions on August 25, 2013 included the arbitration clause.
  (Jiwan Dec. ¶ 26.)

**8.     Brian Farr**

<u>Account</u>:  No. ██████████ created July 20, 2013.

- Farr *does not dispute* creating this account.
- Account matches identifying information Farr provided:  email address
  ████████████████████, and city/state (Birmingham, Alabama).
  (McDonough Dec. Ex. 9 at 6; Jiwan Reply Dec. ¶ 4 n.3, Ex. 8.)

<u>Registration Page</u>:  Appendix 1.  (Ex. I.)

- Terms and Conditions on July 20, 2013 included the arbitration clause.
  (Jiwan Dec. ¶ 26.)

**9.     Britt Garrett**

<u>Account</u>:  No. ██████████ created February 25, 2013.

- Garrett *does not dispute* creating this account.
- Account matches identifying information Garrett provided:  email address
  ████████████████████, city/state (Stonewall, Louisiana), birthday ██████████
  ██████████, and creation date (2013).  (McDonough Dec. Ex. 10 at 3, 6; Jiwan
  Dec. ¶ 4 n.3, Ex. 9.)

<u>Registration Page</u>:  Appendix 2.  (Ex. S.)

- Terms and Conditions on February 25, 2013 included the arbitration clause.
  (Jiwan Dec. ¶ 26.)

**10.    James Shows**

<u>Account</u>:  No. ██████████ █████████████████████created January 14, 2013.

- Shows *does not dispute* creating this account.
- Account matches identifying information Shows provided:  email address
  ████████████████████, account number, username ████████████████,
  account greeting ████████████████, birthday (June 14), and state (Mississippi).

(McDonough Dec. Ex. 19 at 3, 6; Jiwan Reply Dec. Ex. 10.)[3]

Registration Page:  Appendix 2.  (Ex. S.)
- Terms and Conditions on January 14, 2013 included the arbitration clause. (Jiwan Dec. ¶ 26.)

Other Evidence of Assent to Arbitration:  Dialog Box.
- Shows also clicked "I Agree" in the Dialog Box on December 14, 2015 (using Account No. ▮▮▮▮▮▮), agreeing to Terms and Conditions with arbitration clause.  (Jiwan Dec. ¶¶ 24, 26; Jiwan Reply Dec. ¶ 6, Ex. 23.)
- Shows *does not dispute* clicking the Dialog Box, just claims he does not recall.  (McDonough Dec. Ex. 37 ¶ 4.)

## 11.   Nhung Truong

Account:  No. ▮▮▮▮ ▮▮▮▮▮ created August 22, 2012.
- Truong *does not dispute* creating this account.
- Account matches identifying information Truong provided:  email address ▮▮▮▮▮▮▮▮▮, username ▮▮▮▮▮▮, account greeting ▮▮▮, and state (California).  (McDonough Dec. Ex. 20 at 6; Jiwan Reply Dec. Ex. 11.)[4]

Registration Page:  Appendix 3.  (Ex. E.)
- Terms and Conditions on August 22, 2012 included the arbitration clause. (Jiwan Dec. ¶ 26.)

## 12.   Keith Macomber

Account:  No. ▮▮▮▮ ▮▮▮▮▮ created March 7, 2012.
- Macomber *does not dispute* creating this account.
- Account matches identifying information Macomber provided:  email address ▮▮▮▮▮▮▮, username ▮▮▮▮▮, city/state (Ashburn, Virginia), and birthday ▮▮▮▮▮.  (McDonough Dec. Ex. 16 at 3, 6; Jiwan Reply Dec. Ex. 12.)  The account number Macomber provided ▮▮▮▮▮ is also the same, with the second two digits reversed.  (*Id*.)

Registration Page:  Appendix 3.  (Ex. E.)
- Terms and Conditions on March 7, 2012 included the arbitration clause. (Jiwan Dec. ¶ 26.)

---

[3]   Shows claims to recall creating an account in July 2008 (Pl. Br. 11 n.9), but Avid's search did not identify such an account and Shows has submitted no evidence supporting his recollection.  (Jiwan Reply Dec. ¶ 5.)

[4]   Truong claims to recall creating an account on May 1, 2008 (Pl. Br. 11 n.9), but Avid's search did not identify such an account and Truong has submitted no evidence supporting her recollection.  (Jiwan Reply Dec. ¶ 5.)

<u>Other Evidence of Assent to Arbitration</u>:  Dialog Box.

- Macomber also clicked "I Agree" in the Dialog Box on April 27, 2016 (using Account No. ████████), agreeing to Terms and Conditions with arbitration clause.  (Jiwan Dec. ¶¶ 24, 26, Jiwan Reply Dec. ¶ 6, Ex. 20.)

- Macomber *does not dispute* clicking the Dialog Box, just claims he does not recall.  (McDonough Dec. Ex. 34 ¶ 6.)

- Macomber *admits* that he "probably did" read the Terms and Conditions, but "cannot specifically recall/remember."  (McDonough Dec. Ex. 16 at 7.)

## 13.   Anthony Imbarrato

<u>Account</u>:  No. ████████   ███████████ created October 10, 2011.

- Imbarrato *does not dispute* creating this account.

- Account matches identifying information Imbarrato provided:  email address ████████████. (McDonough Dec. Ex. 13 at 6; Jiwan Reply Dec. ¶ 4 n.3.)  The account number Imbarrato provided ███████████ is nearly identical.  (McDonough Dec. Ex. 13 at 6; Jiwan Reply Dec. Ex. 13.)

<u>Registration Page</u>:  Appendix 4.  (Ex. D.)

- Terms and Conditions on October 10, 2011 included the arbitration clause. (Jiwan Dec. ¶ 26.)

## 14.   Steven Coward

<u>Account</u>: No. ████████   ███████████ created March 6, 2011.

- Coward *does not dispute* creating this account.

- Account matches identifying information Coward provided:  email address █████████████, username ████████████, account greeting ████████████, and city/state (Peoria, Arizona).  (McDonough Dec. Ex. 8 at 4, 6; Jiwan Reply Dec. Ex. 14.)

<u>Registration Page</u>:  Appendix 4.  (Ex. D.)

<u>Other Evidence of Assent to Arbitration</u>:  Dialog Box.

- Coward also clicked "I Agree" in the Dialog Box on May 1, 2011 (using Account No. ████████), agreeing to Terms and Conditions with arbitration clause.  (Jiwan Dec. ¶¶ 24, 26; Jiwan Reply Dec. ¶ 6, Ex. 22.)

- Coward *does not dispute* clicking the Dialog Box, just claims he does not recall.  (McDonough Dec. Ex. 26 ¶ 7.)

## 15.   Todd Witengier

<u>Account</u>:  No. ████████ created December 17, 2010.

- Witengier *does not dispute* creating this account.
- Account matches identifying information Witengier provided:  email address ███████████████, account number ██████████, city/state (Chesterfield, Missouri), and creation date (December 17, 2010).  (*See* McDonough Dec. Ex. 21 at 6; Jiwan Reply Dec. ¶ 4 n.3, Ex. 15.)

Registration Page:  Appendix 4.  (Ex. D.)

- Terms and Conditions on December 17, 2010 provided that Witengier's continued use of the website constituted acceptance of amended terms, including arbitration clause.  (Ex. L at AVID 00000022.)
-  (Jiwan Dec. ¶ 27.)

## 16.   Christopher Russell

Account:  No. ████████ ███████████ created March 3, 2010.

- Russell *does not dispute* creating this account.
- Account matches identifying information Russell provided:  email address ████████████████, city/state (Chesapeake Beach, Maryland), birthday ██████████████, and creation date (March 2010).  (*See* McDonough Dec. Ex. 18 at 3, 6; Jiwan Reply Dec. Ex. 16.)

Registration Page:  Appendix 4.  (Ex. D.)

- Terms and Conditions on March 3, 2010 provided that Russell's continued use of the website constituted acceptance of amended terms, including arbitration clause.  (Ex. L at AVID 00000022.)
- Russell *admits* he used the website and "browsed" the Terms and Conditions after the arbitration clause was added in March 2011.  (McDonough Dec. Ex. 18 at 6-7.)

## 17.   Marvin Cabiness

Account:  No. ████████ ████████████ created June 28, 2009.

- Cabiness *does not dispute* creating this account.
- Account matches identifying information Cabiness provided:  email address ████████████████, username ████████████, city/state (Bloomfield, New Jersey), and birthday █████████████████.[5]  (McDonough Dec. Ex. 7 at 3, 6; Jiwan Reply Dec. Ex. 17.)

Registration Page:  Appendix 5.  (Ex. C.)

---

[5]   Cabiness claims to recall creating an account in May 2008 (Pl. Br. 11 n.9), but Avid's search did not identify such an account and Cabiness has submitted no evidence supporting his recollection. (Jiwan Reply Dec. ¶ 5.)

- Terms and Conditions on June 28, 2009 provided that Cabiness's continued use of the website constituted acceptance of amended terms, including arbitration clause.  (Ex. L at AVID 00000022.)

- Cabiness *admits* that he read the Terms and Conditions.  (McDonough Dec. Ex. 7 at 7.)

- ███████████████████████████████████ (Jiwan Dec. ¶ 27.)

18.   **Matthew Lisuzzo**

Account:  No. ████████ created March 3, 2009.

- Lisuzzo *does not dispute* creating this account.

- Account matches identifying information Lisuzzo provided:  email address ███████████████, username ████████, birthday ████████, and city/state (Brookfield, Illinois).[6]  (McDonough Dec. Ex. 15 at 3, 6; Jiwan Reply Dec. Ex. 18.)

Registration Page:  Appendix 5.  (Ex. C.)

- Terms and Conditions on March 3, 2009 provided that Lisuzzo's continued use of the website constituted acceptance of amended terms, including arbitration clause.  (Ex. L at AVID 00000022.)

Other Evidence of Assent to Arbitration:  Dialog Box.

- Lisuzzo also clicked "I Agree" in the Dialog Box on April 29, 2011 (using Account No. ████████), agreeing to Terms and Conditions with arbitration clause.  (Jiwan Dec. ¶¶ 24, 26; Jiwan Reply Dec. ¶ 6, Ex. 21.)

- Lisuzzo *does not dispute* clicking the Dialog Box, just claims he does not recall.  (McDonough Dec. Ex. 33 ¶ 7.)

Plaintiffs try to create confusion by arguing about *other* accounts that Avid supposedly "attributed" to them.  (Pl. Br. 7-8.)  That is a red herring.  Those other accounts are not the basis of this motion.  Avid identified those accounts in discovery because it was being as responsive as possible:  based on the information provided by Plaintiffs, Avid searched for every account that Plaintiffs *might* have created.  (Jiwan Reply Dec. ¶ 3.)  The 53 accounts it found included the 18 relevant accounts above, accounts Plaintiffs had created earlier, and 17 which Avid stated

---

[6]   Lisuzzo claims that he created an account in August 2007 (Pl. Br. 11 n.9), but Avid's search did not identify such an account and Lisuzzo has submitted no evidence supporting his recollection. (Jiwan Reply Dec. ¶ 5.)

explicitly it could not confirm and was not relying on.  (*Id.*)  None of the evidentiary doubts raised by Plaintiffs about the accounts *not* at issue, has any bearing on this motion.

### B.     The Ashley Madison Registration Pages

Likewise, there is no genuine dispute about which registration pages were in use when Plaintiffs created the 18 subject accounts.  They are the five appended here.  (Exs. C, D, E, S, I.)  Not a single Plaintiff denies that those are the relevant registration pages.  And not a single Plaintiff claims to have used any other registration page.[7]

These five registration pages satisfy the legal requirements for enforcing the Terms and Conditions governing Plaintiffs' accounts -- including the arbitration provision.  Ashley Madison is not a website open to anyone wanting to take a look or make a single purchase.  It is a membership website that cannot be accessed without creating an account.  As is made plain on the registration page, and apparent on virtually every other page of the website, the use of those accounts is governed by Terms and Conditions.  (Jiwan Dec. ¶ 23.)  That is a "ubiquitous" feature of all online accounts, *Selden* v. *Airbnb, Inc.*, No. 16-cv-00933, 2016 WL 6476934, at *1 (D.D.C. Nov. 1, 2016), and it surely was no surprise that a dating website like Ashley Madison had legal ground rules.  For all their carefully worded failures of recollection, none of the Plaintiffs claims to believe that they opened their accounts, used the website, and paid money to Avid without being subject to any contractual requirements.   "Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular [online] service, he or she is accepting the terms and conditions of the provider."  *Id.* at *5.

---

[7]    Four of the pages -- App. 1-4 (Exs. I, S, D, E) -- were produced from Avid's internal business records.  (Jiwan Reply Dec. ¶ 7.)  The dates that these registration pages were used were provided in a sworn declaration by Avid's former COO, Rizwan Jiwan, and documents and information confirming those dates were produced in discovery.  (Jiwan Dec. ¶¶ 9-15.)  The remaining registration page -- Appendix 5 (Ex. C) -- was produced from the Internet Archive, a third-party digital library of archived webpages.  (*Id.*)  This page has been authenticated by the Internet Archive, which confirms the dates it appeared on the website.  (Cassetta Reply Dec. Ex. 1.)

The evidence here establishes that Plaintiffs could not use the website without first creating their accounts.  (Jiwan Dec. ¶¶ 6-7.)  They could not create their accounts without first completing and clicking on the account registration pages.  (*Id.*)  As the Court can see, each of these Ashley Madison registration pages is simple to follow, easy to read, and requires the user to actively engage with the page by typing in or selecting required information -- all leading to a clear statement that the user has "read and accepted" or "read and agree[d]" to the Terms and Conditions.  Those Terms and Conditions are provided by a hyperlink highlighted in **blue** and located immediately above or next to a large click button.  The user cannot create an account or use the website without clicking that button.  (*Id.* ¶ 8.)  The plain wording and highlighted hyperlink gave Plaintiffs reasonable notice of the Terms and Conditions.  And when Plaintiffs clicked on the button to create their accounts, they manifested their assent to abide by those Terms and Conditions.

## ARGUMENT

Plaintiffs suggest that Avid must satisfy some extraordinary standard of proof.  They ask the Court to conduct a searching multi-state choice of law analysis, and then indulge "every reasonable presumption" against enforcement of the arbitration agreement.  (Pl. Br. 2-3.)  That is not necessary, and that is not the law.  Rather, "courts must place arbitration agreements on an equal footing with other contracts."  *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011).  Courts deciding the "legal effect of online agreements . . . apply traditional principles of contract law."  *Burcham* v. *Expedia, Inc.*, No. 4:07-cv-1963, 2009 WL 586513, at *2 (E.D. Mo. Mar. 6, 2009).

Thus, Avid's burden is a familiar one:  demonstrate by a preponderance of evidence -- *i.e.*, that it is more likely than not -- that Plaintiffs agreed to arbitrate.  *See generally Bank of Am., N.A.* v. *JB Hanna, LLC*, 766 F.3d 841, 852 (8th Cir. 2014); (Pl. Br. 5.)  Specifically, Avid must

show -- and Avid has shown -- that each Plaintiff: (1) had "reasonable notice" of the Terms and Conditions when he or she created an account on the website; and (2) "manifested assent" to the Terms and Conditions in creating their account.  *See Appistry, Inc.* v. *Amazon.com, Inc.*, No. 4:13-cv-2547, 2015 WL 881507 at *3 (E.D. Mo. Mar. 1, 2015).

## I.     Avid Has Established Plaintiffs' Accounts By More Than a Preponderance

As detailed above, there is no real dispute about each Plaintiff's most recent account. And even if there were, Avid's evidence far exceeds the preponderance standard.   As demonstrated in the declarations of Rizwan Jiwan, Avid's Chief Operating Officer from 2013 to 2016, Plaintiffs' accounts were identified by, and precisely matched to, multiple pieces of identifying information given to Avid by Plaintiffs.  (Jiwan Reply Dec. ¶¶ 3-4.)  Some Plaintiffs provided their own account numbers, so those accounts are beyond debate.  Some provided email addresses that matched the accounts Avid found:  *e.g.*, Benefield ███████████ = ███████████.  Some provided their unique usernames that matched the accounts Avid found:  *e.g.*, Shows ███████████ = ███████████.  Some provided their online greetings that matched the accounts Avid found:  *e.g.*, Truong ███████████ = ███████████

Yet, sounding like criminal defendants trying to generate reasonable doubt, Plaintiffs question the quality of Avid's evidence without actually denying that these are the correct accounts.  They argue, for example, that since Avid did not "verify the identities of its users," "it cannot determine who actually opened any particular account."  (Pl. Br. 6.)  That might be an issue if there had been no individualized discovery, but there was such discovery:  Plaintiffs provided identifying information that Avid used to identify the 18 undisputed accounts.

Plaintiffs also cite Mr. Jiwan's testimony that he was *only* "80-90 percent sure" that the accounts matched to Plaintiffs were actually created by them.  (Cassetta Dec. Ex. 2 at 125:25-126:10.)  Maybe that would be an issue if this were a criminal case, but that testimony handily

satisfies the preponderance standard.  *See*, *e.g.*, *Clark* v. *Matthews Int'l Corp.*, 639 F.3d 391, 397 (8th Cir. 2011) (preponderance means "more likely than not").   Mr. Jiwan was simply acknowledging that the accuracy of Avid's account search was dependent on the accuracy of Plaintiffs' discovery responses.  (*See* Cassetta Dec. Ex. 2 at 106:13-107:9.)  His carefulness and candor only bolster his credibility, and confirm that Avid found the correct accounts.[8]

Plaintiffs' attempt to question Mr. Jiwan's technical qualifications is frivolous.   Mr. Jiwan has a degree in computer engineering, an MBA from the University of Toronto, and has been building web pages from scratch since he was in high school.  (*Id.* 8:16-10:19.)  He held senior technology and business positions at Avid, including Chief Operating Officer from 2013 to 2016 and Vice President of Product Marketing and Operations from 2011 to 2013.   (Jiwan Dec. ¶ 1.)  He also started and managed the teams at Avid responsible for overseeing the implementation of developments to the website, and for managing data in internal databases related to the website.  (Cassetta Dec. Ex. 2 at 23:11-24:25; 32:9-22; 33:4-17.)[9]

Plaintiffs' suggestion that the amendments to Mr. Jiwan's declaration and an errata to his deposition somehow cast doubt on Avid's identification of Plaintiffs' accounts also is meritless. None of Mr. Jiwan's clarifications had to do with the process by which Avid identified Plaintiffs' accounts.  Instead, as Avid explained in its motion for leave to amend, which the Court granted (ECF Nos. 258, 262), Mr. Jiwan was deposed about certain versions of the registration page attached to his declaration, so he followed up and determined that two of those images reflected

---

[8]    As to the three accounts (for Hiles, Farr, and Benefield) that Plaintiffs say supposedly raise doubts about Avid's conclusions, Avid does not rely on any of those accounts in support of its motion.  In any event, each one was created using an email address provided by that Plaintiff.  (*Compare* McDonough Dec. Ex. 12 at 6 *with id.* Ex. 41 (Hiles); *id.* Ex. 9 at 6 *with id.* Ex. 42 (Farr); *id.* Ex. 6 at 6 *with* Jiwan Reply Dec. ¶ 4 n.3 (Benefield).)

[9]    Courts in this district have enforced online agreements supported by similar declarations.  *See, e.g.*, Declaration of Theodore Jansen, *Burcham*, No. 4:07-cv-01963 (E.D. Mo. Jan. 30, 2008), ECF No. 8 (Senior Vice President of Product and Retail); Declaration of Paul W. Sams, *Davidson & Assoc., Inc.* v. *Internet Gateway, Inc.*, No. 4:02-cv-00498 (E.D. Mo. Dec. 22, 2003), ECF No. 118 Att. #2 (Senior Vice President of Business Operations).

proposed changes to the registration page rather than the live versions, which Avid has provided. (ECF No. 258 at 2, Exs. A, B.)

## II.     Plaintiffs Assented to the Terms and Conditions In Creating Their Accounts

Plaintiffs' opposition follows the same approach typically taken by plaintiffs -- and almost always rejected by the courts -- in online agreement cases:  deny seeing or reading the Terms and Conditions, cite a few inapposite cases, and critique the format, font and wording of the sign-up page.  The best way to see the fallacy of Plaintiffs' arguments is to look at the ever-growing number of decisions enforcing online agreements.

- In *Selden* v. *Airbnb, Inc.*, No. 16-cv-00933, 2016 WL 6476934, at *2 (D.D.C. Nov. 1, 2016), the court enforced an arbitration agreement against a plaintiff who created an Airbnb account using the registration page below (circling added) that required clicking "**Sign up with Facebook**" above a hyperlink to Airbnb's Terms of Service. *Id.* at *2, 9.  As with Ashley Madison registration pages, the plaintiff "would have seen the relevant text from a quick glance down the rest of the page." *Id.* at *5.



- In *Cullinane* v. *Uber Techs., Inc.*, No. 14-cv-14750, 2016 WL 3751652, at *2, 7 (D. Mass. July 11, 2016), the court enforced an arbitration agreement in Uber's terms of service.  On the final sign up screen below (circling added), appears the words "By creating an Uber account, you agree to the Terms of Service & Privacy Policy." *Id.* at *2; Holden Dec. Ex. A-3, *id.*, (D. Mass. May 4, 2015) ECF No. 32-2.  After entering their information, users could click "**Done**" which, the court noted, "although perhaps

slightly less precise than 'I accept,' or 'I agree,' makes clear" to users that it "will bind them to the Agreement." *Cullinane*, 2016 WL 3751652, at *8 (emphasis added).



- In *Starke* v. *Gilt Groupe, Inc.*, the court enforced an arbitration clause entered via the online agreement shown below (circling added).  The court found that plaintiff's "decision to click the '**Shop Now**' button represents his assent[.]"  No. 13-cv-5497, 2014 WL 1652225, at *1-3 (S.D.N.Y. Apr. 24, 2014) (emphasis added); Stahl Dec. Ex. A, *id.* (S.D.N.Y. Mar. 19, 2014), ECF No. 14-1.



15

- In *Fteja* v. *Facebook, Inc.*, the court enforced Facebook's forum-selection clause against a user who clicked "**Sign Up**" above text which read, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service" provided by hyperlink.  841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012); Mem. in Support of Mot. to Join at 17, *id.* (S.D.N.Y. Apr. 18, 2011), ECF No. 12 (shown below, circling added).



As summarized in the *Airbnb* case, the unifying legal principle is that the "sign-up screen adequately placed [the plaintiff] on notice of Airbnb's Terms of Service, and that he assented to those terms by clicking the sign-up box and using the service."  *Airbnb*, 2016 WL 6476934, at *5; *see also Burcham*, 2009 WL 586513, at *2, 4; *Appistry*, 2015 WL 881507, at *3.  The particular words in the click button are not decisive -- *e.g*, "Done," "Shop now," "Sign Up."  *See supra*, pp. 14-16.  The online agreement in *Burcham* was enforced because the plaintiff clicked a button that said "continue."  2009 WL 586513, at *3.  "The process through which the plaintiffs established their accounts put them on reasonable notice that their ***affirmative act of signing up*** also bound them to" the terms.  *Cullinane*, 2016 WL 3751652, at *7 (emphasis added).

That a particular user may not have actually seen or read the terms, as some of the Plaintiffs here claim, is of no legal consequence when the terms have been provided by a hyperlink adjacent to the click button.  As the court found in the Facebook case:

> [C]licking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket.  In both cases, the consumer is prompted to examine terms of sale that are located somewhere else.  ***Whether or not the consumer bothers to look is irrelevant***.

*Fteja*, 841 F. Supp. 2d at 839 (emphasis added); *see also Starke*, 2014 WL 1652225, at *3.  "Whether or not plaintiffs had *actual* notice of the terms of the Agreement, all that matters is that plaintiffs had *reasonable* notice of the terms."  *Cullinane*, 2016 WL 3751652, at *7.  As in the Expedia case in this court, that plaintiff "either didn't read the agreement or didn't see it may be unfortunate for him, but it does not change the outcome."  *Burcham*, 2009 WL 586513, at *4.  It is also irrelevant whether Plaintiffs "recall" being presented with the Terms.  *See, e.g.*, *Bekele* v. *Lyft, Inc.*, No. 15-cv-11650, 2016 WL 4203412, at *3, 21 (D. Mass. Aug. 9, 2016); *Bar-Ayal* v. *Time Warner Cable Inc.*, No. 03-cv-9905, 2006 WL 2990032, at *4, 10 (S.D.N.Y. Oct. 16, 2006).  That is because "assent to an agreement is determined by [a user's] *objective* conduct" -- *i.e.*, clicking the button to create an account.  *Appistry*, 2015 WL 881507, at *3 (emphasis added).  A "failure to read or understand a contract" does not invalidate that assent.  *Id.*

The cases Plaintiffs cite do not support denying this motion.  *Meyer* v. *Kalanick*, No. 15-cv-9796, 2016 WL 4073012 (S.D.N.Y. July 29, 2016), which is now on appeal, relied on the small screen that users used to register and other factors not present here:  (1) the statement about the terms (and hyperlink) "appears far below" the registration button, *id.* at *8; (2) two additional buttons, "PayPal" and "Google Wallet," separate the registration button and the terms, *id.* at *4; (3) the phrase "terms of service" might be read as "a description of the types of services that Uber intends to provide, not to the user's waiver" of rights, *id.* at *9; and (4) the hyperlink did not take users directly to the text of the terms and conditions, *id.* at *4.

*Berkson* v. *Gogo LLC*, is an interesting if arduous read, but its holding is not on point:  the court determined that based on the discovery to date, there was not sufficient evidence to

conclude that plaintiffs were bound by the sign-in agreement.  97 F. Supp. 3d 359, 381 (E.D.N.Y. 2015).  The court held that the motions to dismiss "may be renewed after discovery is completed."  *Id.* at 403-04.  Here, as discussed above and below, the discovery has established Plaintiffs' agreement to arbitrate by more than a preponderance.  The *Berkson* court also was troubled in part by the fact that the hyperlink to the terms was on the opposite corner of the registration page from one of the two click buttons, *id.* at 374, but that is not true of Ashley Madison's registration pages.

More importantly, there is a subsequent decision about the same website (Gogo) by the same judge (Weinstein) which enforced the online arbitration agreement.  *Salameno*, 2016 WL 4005783, at *3.  Plaintiffs do not even cite that decision.  *Salameno* is in sync with the cases cited *supra* pp. 14-17:  users were required to create an account; to create an account, they were required to complete a "Sign in/up" page; and a hyperlink to the "terms of use" appeared at the bottom of the page immediately above a click button with the words "Sign up."  *Id*. at *3.  The side-by-side comparison of the Gogo sign-up page and one of the Ashley Madison registration pages attached as **Appendix 6** demonstrates that the Ashley Madison Terms and Conditions and arbitration agreement should be enforced for the same reasons as in *Salameno*.

The court in *Salameno* rejected plaintiffs' argument that the hyperlink was "inconspicuous," just as this Court should reject Plaintiffs' design critiques of the Ashley Madison registration pages.  (App. 1-5).  Plaintiffs contend that the location, font size, and color of the text referring to the Ashley Madison Terms and Conditions were "designed to keep users from discovering" the terms.  (Pl. Br. 15.)  There is no evidence of that.  A comparison to the registration pages in the other cases shows that the Ashley Madison text is "clearly legible, appropriately sized, and unobscured by other visual elements," *Airbnb*, 2016 WL 6476934, at *5,

and that the hyperlink to the Terms and Conditions is highlighted and appears "immediately" next to the registration click button. *Fteja*, 841 F. Supp. 2d at 835, 840; *Salameno*, 2016 WL 4005783, at *5.  In fact, contrary to Plaintiffs' own argument, several Plaintiffs *admit* that they saw and even read the Terms and Conditions.  (Avid Br. 3.)

Plaintiffs' assertion that the arbitration clause was "buried after pages of legalese" (Pl. Br. 18) has no merit since the very first paragraph of the Terms and Conditions alerted users to the arbitration clause.  (Avid Br. 10.)  Other courts have rejected similar excuses.  *See Cullinane*, 2016 WL 3751652, at *7 (enforcing arbitration clause that did "not appear until the 8th or 9th page" of agreement); *Starke*, 2014 WL 1652225, at *2 (enforcing arbitration clause in "the sixteenth paragraph" of the agreement).

Plaintiffs' other design critiques are equally baseless:

1.     <u>Appendix 1 (Ex. I)</u>.  Eight Plaintiffs created their most recent accounts by clicking the  button in this registration page.  Plaintiffs argue that an "ordinary user" would not understand that by clicking "I Agree," they were agreeing to the Terms.  (Pl. Br. 27-29.)  But that is exactly what the page says, in clear language:  "I acknowledge that by choosing to continue and search now, I certify I am at least 18 years old and ***have read and agree*** to the Ashley Madison **<u>Privacy Policy</u>** and **<u>Terms and Conditions</u>**." (App. 1 (emphasis added).)  Plaintiffs' speculation that some hypothetical "ordinary user" might not understand the words "I Agree," is not grounds for refusing to enforce the Terms and Conditions.  Plaintiffs also claim, with no proof, that this page was "reduced in size to a narrow,

smartphone-like screen."  (Pl. Br. 26.)  In truth, this page measured approximately 6 inches wide

by 11 inches long on a standard 19-inch monitor.  (Jiwan Reply Dec. ¶ 8.)[10]

2.  <u>Appendix 2 (Ex. S)</u>.  Two Plaintiffs -- Garrett and Shows -- used this registration

page.  Shows *admits* to seeing the Terms when he created his account.  (McDonough Dec. Ex. 19

at 7.)  Nonetheless, Plaintiffs argue that because the button was labeled "Search Now," clicking

it did not manifest assent.  (Pl. Br. 24.)  However, the text right above the button states:  "by

choosing to continue and ***search now***, I certify I . . . have read and agree to the Ashley Madison

**<u>Privacy Policy</u>** and **<u>Terms and Conditions</u>**."  (App. 2 (emphasis added).)  As discussed above,

the click button need not be labeled with any particular words to manifest assent and words such

as "Search Now" are more than sufficient.  *See supra* p. 16; *see also Goza* v. *Multi-Purpose*

*Civic Ctr. Facilities Bd. for Pulaski Cty.*, No. 12-cv-6125, 2014 WL 3672128, at *3 (W.D. Ark.

July 23, 2014) ("Submit Order" button); *Major* v. *McCallister*, 302 S.W.3d 227, 229 (Mo. Ct.

App. 2009) ("Submit for Matching Pros" button); *Snap-on Bus. Solutions Inc.* v. *O'Neil &*

*Assoc., Inc.*, 708 F. Supp. 2d 669, 683 (N.D. Ohio 2010) ("Enter" button).  Plaintiffs also

speculate that the "average user" might be confused by the button or "distracted" by the words at

the top, "take 30 seconds to complete your profile and start searching" (Pl. Br. 24-25), but

Plaintiffs offer no proof of these imagined problems.

3.  <u>Appendix 3 (Ex. D) and Appendix 4 (Ex. E)</u>.  Six Plaintiffs created their most

recent accounts using these registration pages.  Three of them, Macomber, Imbarrato and

Russell, *admit* to actually seeing or reading (or "probably" reading) the Terms (McDonough

Dec. Ex. 16 at 7; *id.* Ex. 13 at 7; *id.* Ex. 18 at 7), and Macomber agreed to updated Terms and

Conditions using the Dialog Box in 2016.  (Jiwan Reply Dec. ¶ 6.)  Despite those admissions,

---

[10]  Plaintiffs' claim that a disclosure that Avid does not perform criminal background checks of users was "designed to distract a new user from the terms" (Pl. Br. 28) is pure conjecture.

and the clear and succinct statement above the button, "I have read and accepted the **Terms and Conditions**," (App. 3, 4), Plaintiffs argue that the pre-checked box next to that statement somehow defeats or overrides their assent.  (Pl. Br. 25-26.)   On the contrary, the box with a check mark is an additional design element that draws attention to the highlighted hyperlink.

Like the plaintiff in *Burcham* who "speculate[d]" that someone else might have created his account, 2009 WL 586513, at *2, Plaintiffs hypothesize that the checkbox *might* not have worked and someone *might* have been able to uncheck the box and still have registered.  (Pl. Br. 21.)  But also like the plaintiff in *Burcham,* Plaintiffs do not "offer any facts that would support it."  2009 WL 586513, at *3.   None of the Plaintiffs who used this page claims to have "unchecked" the box.   And after this hypothetical was raised at his deposition, Mr. Jiwan confirmed that during all times when each of the Plaintiffs created their accounts, the checkbox was a required field and users could not create an account without the box being checked. (Jiwan Reply Dec. ¶ 2.)  *See Goza*, 2014 WL 3672128, at *3 (defendant demonstrated assent to Terms despite "Plaintiff hypothesiz[ing] that the website could have malfunctioned on the day Plaintiff was using it").

4.   Appendix 5 (Ex. C).  Two Plaintiffs -- Lisuzzo and Cabiness -- created their most recent accounts with this registration page.  Lisuzzo later agreed to the updated Terms and Conditions with the arbitration clause when he clicked "I Agree" in the Dialog Box.  (Jiwan Dec. ¶ 24.)  As for Cabiness, he *admits* that he read the Terms and Conditions around the time he created his account.  (McDonough Dec. Ex. 7 at 7.)  Thus, Plaintiffs' objections that Avid no longer has the pre-2010 source code for the website and that the screenshot for this registration page was obtained from the Internet Archive, is just static.  There is no evidence of any other registration page when Lisuzzo and Cabiness last registered; Lisuzzo and Cabiness do not deny

using this registration page; and the Internet Archive has authenticated this page and confirmed the dates it appeared.  (Cassetta Reply Dec. ¶ 1, Ex. 1-A at 2.)[11]

## III.    All the Plaintiffs Agreed to Arbitrate Their Claims

As demonstrated in Avid's moving brief, 13 Plaintiffs created their latest Ashley Madison accounts after the arbitration clause was included in the Terms and Conditions (March 17, 2011), and 2 Plaintiffs registered earlier but later agreed to those updated Terms and conditions by clicking "I Agree" in the Dialog Box after March 17, 2011.  (Avid Br. 21-25.) That those two (Lisuzzo and Coward) claim not to recall clicking the Dialog Box is irrelevant.[12]

The remaining three Plaintiffs -- Cabiness, Russell and Witengier -- agreed to arbitrate by accepting Terms and Conditions that gave Avid the right to make changes to the Terms and Conditions, and by continuing to use the website after the arbitration clause was included.  (Avid Br. 23-24.)  Two of them -- Cabiness and Russell -- admit reading or seeing the Terms and Conditions, and ███████████████████████████████████████

███████████████████████.  The Terms and Conditions these Plaintiffs agreed to are expressly governed by Ontario law, and Plaintiffs do not dispute that, under Ontario law, such change in terms provisions are enforceable.  (*Id.* at 13-14.)   Contracts containing such modification

---

[11]    Federal courts "regularly accept[] evidence from the Internet Archive."  *Keystone Retaining Wall Sys., Inc.* v. *Basalite Concrete Prods., LLC*, No. 10-cv-4085, 2011 WL 6436210, at *9 n.9 (D. Minn. Dec. 19, 2011) (citing cases); *see also Masters* v. *UHS of Del., Inc.*, No. 06-cv-1850, 2008 WL 5600714, at *2 (E.D. Mo. Oct. 21, 2008).  Plaintiffs also argue that Appendix 5, dated 9/24/08, cannot be used to show the registration page used by Cabiness and Lisuzzo to create their accounts on 6/28/09 and 3/3/09.  (Pl. Br 18-19.)  But exemplars of the registration page are sufficient to satisfy the preponderance standard.  Avid is not "required to offer the exact webpage that Plaintiff viewed."  *Goza*, No. 12-cv-6125, 2014 WL 3672128, at *3.  In any event, subsequent images of the page confirm that it looked the same.  (Cassetta Reply Dec. Ex. 1-A at 2-5.)

[12]    Plaintiffs also cannot avoid their agreement to arbitrate based on their earlier accounts.  The Terms and Conditions contain an integration clause so when Plaintiffs registered for their latest accounts, they agreed that Terms and Conditions in effect superseded any prior inconsistent versions.  (*See* Ex. L at AVID 00000026; M at AVID 00000081-82; Ex. N at AVID 00000180.)  The Terms and Conditions also created an agreement between Avid and each individual user, not each account.  (*See, e.g.*, Ex. N at AVID 00000169 ("This legal agreement is made between *you* and *us*.") (emphasis added); Ex. M at AVID 00000076 (same).  Thus, by creating their latest accounts, Plaintiffs agreed to arbitrate claims related to all of their activity on the website.

provisions also have been enforced by federal courts.[13]  Therefore, Plaintiffs' reliance on U.S. state law cases is academic.  The parties are bound to follow Ontario law.  (Avid Br. 24-25.)[14]

In any event, Plaintiffs' principal case, *Badie* v. *Bank of America*, 67 Cal. App. 4th 779 (1998), is inapposite.  *Badie* is an intermediate California appellate decision from nearly twenty years ago.  The court held that a bank could not add an arbitration provision to credit card and deposit account agreements pursuant to a modification provision because the bank "sought to add an entirely new *kind* of term to the original account agreements."  *Badie*, 67 Cal. App. 4th at 787, 795.  Specifically, in those agreements, "the method and forum for *dispute resolution . . .* [wa]s not discussed at all."  *Id.* at 800.  Here, by contrast, the Terms and Conditions that Cabiness, Russell, and Witengier agreed to contained a section entitled "DISPUTE RESOLUTION," which provided that all disputes would be "exclusively resolved in courts located in Toronto, Ontario."  (*See* Ex. L at AVID 00000026.)  That provision was later changed to provide for disputes to be resolved by binding arbitration.  (*Id.* Ex. M at AVID 00000080.)

*Douglas* v. *U.S. District Court for the Central District of California*, 495 F.3d 1062 (9th Cir. 2007), also is inapposite.  Unlike here, there was no indication in that case that the agreement contained a modification provision at all.  *Id.* at *1066; *see Patco Const. Co.* v. *People's United Bank*, No. 09-cv-503, 2011 WL 2174507, *24-25 & n.126 (D. Me. May 27, 2011) (enforcing modified agreement pursuant to modification provision and distinguishing *Douglas*), *rev'd in part on other grounds*, 684 F.3d 197 (1st Cir. 2012).  Moreover, the court

---

[13]   *See, e.g.*, *Concepcion*, 563 U.S. at 336 (2011) (enforcing agreement that "authorized AT&T to make unilateral amendments, which it did to the arbitration provision on several occasions"); *Ekin* v. *Amazon Servs., LLC*, No.14-cv-0244, 2014 WL 7741772, *4 (W.D. Wash. Dec. 10, 2014).

[14]   Courts in Plaintiffs' domicile states routinely enforce choice of law provisions, including ones designating foreign law.  *See, e.g.*, *CQL Original Prods.* v. *Nat'l Hockey League Players' Ass'n*, 39 Cal. App. 4th 1347, 1352 (Ct. App. Cal. 1995) (enforcing Ontario choice of law/forum); *Yamada Corp.* v. *Yasuda Fire and Marine Ins. Co.*, 305 Ill. App. 3d 362, 368 (App. Ct. Ill. 1999) (enforcing Japanese choice of law); *Jackson* v. *Pasadena Receivables, Inc.*, 921 A.2d 799, 803-05 (Md. 2007); *McKeage* v. *Cordonnier*, 357 S.W.3d 597, 600 (Mo. 2012) (en banc); *Crinnion* v. *Great Atl. & Pac. Tea Co.*, 156 N.J. Super. 479, 482-83 (Sup. Ct. N.J. 1978).

found that the plaintiff had never visited the website and that doing so was the only way he could have learned of the new terms. *Douglas*, 495 F.3d at 1066. Here, the Terms and Conditions had a clear modification provision (Avid Br. 12), and the relevant Plaintiffs certainly had occasion to visit the website because that is the only way to use the service. Indeed, ███████████████

███████████████████████████████████████████████, and Russell visited the website *and* read the Terms and Condition after that time. *Supra* p. 7-9.[15]

## IV.   The Arbitration Agreement Is Not Unconscionable

If it had any merit, Plaintiffs' unconscionability argument would have to be decided by the arbitrator to whom the Terms and Conditions delegate that decision-making power. (Avid Br. 28-29.) Furthermore, since April 2013, the arbitration clause has incorporated the Rules of the American Arbitration Association, which authorize the arbitrator to address "her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (Ex. N at AVID 00000178; Cassetta Dec., Ex. P at R-14(a).) The Supreme Court has held that where parties delegate enforceability to the arbitrator, a claim of unconscionability cannot be decided by the courts. *Rent-A-Ctr., W., Inc.* v. *Jackson*, 561 U.S. 63, 70-72 (2010). Thus, applying *Rent-A-Center*, this Court recently declined to address an unconscionability argument directed at an arbitration agreement. *Jones* v. *Titlemax of Missouri*, No. 4:15-cv-01361, 2016 WL 4158886, at *3-5 (E.D. Mo. Aug. 5, 2016) (Ross, J.).

Plaintiffs' also have not overcome the "high hurdle" of proving unconscionability. *Titus* v. *William F. Cooke Ents. Inc.*, 2007 CarswellOnt 5229 ¶ 36 (Can. Ont. Ct. App. 2007). An arbitration agreement is unconscionable only if "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforc[ea]ble

---

[15]   Although Plaintiffs claim that the "last updated" date on the Terms and Conditions was "often wrong" and would not have alerted them to changes, the date was updated when the arbitration provision was added (March 2011) and amended (April 2013). (Ex. M at AVID 00000082, Ex. N at AVID 00000180.)

according to its literal terms." *Gillman* v. *Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).[16]

Plaintiffs make all the usual arguments: the parties had unequal bargaining power, the Terms and Conditions are an "adhesion contract," Plaintiffs were not involved in negotiating the terms. But inequality in bargaining power and lack of negotiation do not render an agreement unconscionable or "overcome the federal policy favoring arbitration." *Faber* v. *Menard, Inc.*, 367 F.3d 1048, 1053 (8th Cir. 2004); *Ragone* v. *Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010); *Swain* v. *Auto Servs., Inc.*, 128 S.W.3d 103, 107-08 (Mo. Ct. App. 2003). Amazon's online agreement was enforced in this court over the objection that it was non-negotiated: "Plaintiff cannot accept the benefits only until the Agreement requires something it does not favor and then attempt to sidestep the obligations by claiming the Agreement was a 'take it or leave it'" contract. *Appistry*, 2015 WL 881507, at *4.[17]

Plaintiffs' argument that the arbitration clause is "not mutual" is inaccurate. For example, the 2011 version provides for arbitration at *either* party's election, mutual exemption from certain small claims, and a right to opt-out. (Ex. M at AVID 00000080-81.)[18]

## CONCLUSION

For the foregoing reasons, and for those in Avid's moving brief, Avid respectfully requests that the Court grant its motion to dismiss or stay this action and compel arbitration.

---

[16]   The choice of law in the Terms and Conditions governs the unconscionability analysis. *See, e.g.*, *Gay* v. *CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007). Here, unconscionability is governed by New York law for the 2013 Terms and Conditions and Ontario law for the 2011 version. Both jurisdictions require that the agreement is "grossly" unreasonable or unfair. *See Gillman*, 534 N.E.2d at 828; *Titus*, 2007 CarswellOnt 5229.

[17]   Plaintiffs also argue that "an arbitration provision that can be applied retroactively is illusory," but arbitration agreements often apply retroactively, *see, e.g.*, *Decker* v. *Bookstaver*, No. 4:09-cv-1361, 2010 WL 2132284, at *3 (E.D. Mo. May 26, 2010), and Plaintiffs' illusory challenge is an issue for the arbitrator, *see, e.g.*, *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1209-11 (10th Cir. 2016).

[18]   Plaintiffs also object to the requirement that the arbitration take place in Toronto, but courts routinely enforce similar provisions. *See, e.g.*, *Royal Bed & Spring Co.* v. *Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 50 (1st Cir. 1990).

Dated:  December 16, 2016
          St. Louis, Missouri

Respectfully Submitted,

By:      /s/ Richard Cassetta

Richard P. Cassetta (MO #43821)
Helen C. Looney  (MO #67029)
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
richard.cassetta@bryancave.com
helen.looney@bryancave.com

- and -

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Robert A. Atkins (NY #2210771)
Yahonnes Cleary (NY #4802492)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183
ratkins@paulweiss.com
ycleary@paulweiss.com

*Attorneys for Avid Dating Life Inc. and Avid Life
Media Inc.*

# Appendix 1

## (Jiwan Dec. Ex. I)

| | |
|---|---|
| **Gustavo Alfaro** | 8/25/2013 |
| **Marc Benefield** | 4/18/2015 |
| **Brian Farr** | 7/20/2013 |
| **Byron Goetting** | 3/18/2014 |
| **John Hiles** | 12/12/2013 |
| **Paul Jack** | 3/24/2015 |
| **David Miller** | 1/10/2015 |
| **David Yagel** | 1/6/2015 |



# Appendix 2

## <u>(Jiwan Dec. Ex. S)</u>

**Britt Garrett**          2/25/2013

**James Shows**          1/14/2013

ASHLEY MADISON

# You're almost done!

Please take 30 seconds to complete your profile and start searching

| Username | Limits |
|---|---|
| | Please Select ▼ |

| Password | Height |
|---|---|
| | Please Select ▼ |

| Country | Weight |
|---|---|
| United States ▼ | Please Select ▼ |

| Zip/Postal Code | Body Type |
|---|---|
| | Please Select ▼ |

| Greeting | Ethnicity |
|---|---|
| | Please Select ▼ |

| Date of Birth | Email |
|---|---|
| | |

Relationship status

Attached Male seeking Females ▼

I acknowledge that by choosing to continue and search now, I certify I am at least 18 years old and have read and agree to the Ashley Madison Privacy Policy and Terms and Conditions.

**Search Now**

To help you have a successful affair, AshleyMadison.com and its affiliated entities will periodically notify you of potential matches in your area, new matches you've received, changes to the service and other services that may be of interest to you. We will never share or sell your email address with any other organization or individual.

# Appendix 3

## (Jiwan Dec. Ex. E)

**Keith Macomber**     3/7/2012

**Nhung Truong**     8/22/2012

# You're almost done!

Please take 30 seconds to complete your profile and start searching.

| | |
|---|---|
| Username | 1-800-BRLMan |
| Password | |
| Country | Canada |
| Zip / Postal Code | |
| Greeting | |
| Date of birth | |
| Limits | |
| Height | ▼ |
| Weight | ▼ |
| Body type | ▼ |
| Email Address | Wabbajabba.com ▼ |

☑ I have read and accepted the
**Terms and Conditions.**

**Search now**

To help you have a successful affair, AshleyMadison.com will periodically notify
you of potential matches in your area, new matches you've received and changes
to the service that may be of interest to you. We will never share or sell your email
address with any other organization or individual.

# **Appendix 4**

## **(Jiwan Dec. Ex. D**)

| | |
|---|---|
| **Steven Coward** | 3/6/2011 |
| **Anthony Imbarrato** | 10/10/2011 |
| **Christopher Russell** | 3/3/2010 |
| **Todd Witengier** | 12/17/2010 |



# Appendix 5

## (<u>Jiwan Dec. Ex. C</u>)

**Marvin Cabiness**      6/28/2009

**Matthew Lisuzzo**      3/3/2009



AVID 00000433

# **Appendix 6**



(*Salameno*, Am. Class Action Compl., ECF No. 14, Ex. Q.)                    (Avid Ex. I.)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that copies of the foregoing were served upon the

attorneys of record via the Court's electronic delivery system on the 16th day of December,

2016, to the following:

DOWD & DOWD, P.C.
Douglas P. Dowd (29240MO)
William T. Dowd (39648MO)
Alex R. Lumaghi (56569MO)
211 North Broadway, Suite 4050
St. Louis, Missouri   63102
Tel.: (314) 621-2500
Fax: (314) 621-2503
doug@dowdlaw.net
bill@dowdlaw.net
alex@dowdlaw.net

*Plaintiffs' Interim Liaison Counsel*

THE DRISCOLL FIRM, P.C.
John J. Driscoll (54729MO)
Christopher J. Quinn (41883MO)
Gregory G. Pals (48820MO)
211 N. Broadway, 40th Floor
St. Louis, Missouri  63102
Tel.: (314) 932-3232
Fax: (314) 932-3233
john@thedriscollfirm.com
chris@thedriscollfirm.com
greg@thedriscollfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

HENINGER GARRISON DAVIS, LLC
W. Lewis Garrison, Jr.
Christopher B. Hood
Taylor C. Bartlett
2224 1st Avenue North
Birmingham, Alabama  35203
Tel.: (205) 326-3336
Fax: (205) 326-3332
wlgarrison@hgdlawfirm.com
chood@hgdlawfirm.com
taylor@hgdlawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

/s/ Richard P. Cassetta