<u>Exhibit 1</u> to
Motion for Preliminary Approval of Settlement
(Stipulation of Settlement)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION | ) ) ) | MDL No. 2669 |
|  | ) | Case No. 4:15-MD-02669-JAR |
| This Document Relates to: | ) ) | **STIPULATION OF SETTLEMENT** |
| ALL CASES | ) ) | |

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and subject to and conditioned upon approval by the Court of the terms and conditions contained herein, this Stipulation of Settlement ("Agreement" or "Settlement Agreement") is made and entered into by and among (a) Brian Farr, Steven Coward, Marc Benefield, Nhung Truong, Gustavo Alfaro, David Yagel, John Hiles III, Matthew Lisuzzo, Britt Garrett, Christopher Russell, David Miller, James Mike Shows, Todd Witengier, Byron Goetting, Marvin Cabiness, Keith Macomber, Paul Jack, and Anthony Imbarrato (the "Class Representatives" or "Plaintiffs"), both individually and on behalf of the Settlement Class (as defined below), and (b) Defendants Ruby Corp. (previously named Avid Life Media Inc.) and Ruby Life Inc. (previously named Avid Dating Life Inc.) (together, "Avid), and Noel Biderman (altogether, "Defendants"), by and through their respective duly authorized counsel.

## 1.    RECITALS

A.    WHEREAS, on July 20, 2015, Avid announced that it had been the victim of an intrusion of its computer network by an unauthorized person or persons who subsequently publicly released personal and account information of Avid customers (the "Data Breach").

B.    WHEREAS, following announcement of the Data Breach, multiple putative class action lawsuits were filed against Avid related to its alleged inadequate data security practices and to alleged misrepresentations regarding Ashley Madison, an online data website owned and operated by Avid Dating Life since 2007 (the "Data Breach Cases"). Two of the Data Breach Cases also named Noel Biderman, former Chief Executive Officer of Avid Life Media, as a defendant.

C.    WHEREAS, since December 9, 2015, the United States Judicial Panel on Multidistrict Litigation ("JPML") has transferred twenty-four Data Breach Cases to the United States District Court for the Eastern District of Missouri (the "Court") for coordinated or consolidated pretrial proceedings under docket number 4:15-md-02669-JAR.  The multi-district litigation has been assigned to Judge John A. Ross.

D.      WHEREAS, on January 7, 2016, the Court ordered Plaintiffs to file a consolidated class action complaint (ECF No. 75).

E.      WHEREAS, on June 3, 2016, Plaintiffs filed a Consolidated Class Action Complaint (ECF No. 180), which they amended on June 24, 2016 (ECF No. 186).  The operative First Amended Consolidated Class Action Complaint (the "Complaint") asserts the following claims:  violation of the Racketeer Influenced and Corrupt Organizations Act; violation of the Federal Stored Communications Act; negligence and negligence *per se*; breach of implied contract; breach of contract; unjust enrichment; negligent misrepresentation; violation of state consumer fraud and protection statutes; violation of the California Customer Records Act; and violation of state data breach notice statutes.

F.      WHEREAS, on July 1, 2016, the Court issued an order for limited discovery and briefing related to anticipated motions to compel arbitration by Defendants.  (ECF No. 189.)

G.      WHEREAS, on August 29, 2016, Defendants moved to dismiss or stay and to compel arbitration based on an arbitration clause and class action waiver contained in the Ashley Madison Terms and Conditions ("Arbitration Motion").

H.      WHEREAS, Plaintiffs opposed Defendants' Arbitration Motions, which remain pending before the Court.

I.      WHEREAS, Class Counsel represent that they have conducted a thorough examination and investigation of the facts and law relating to the matters in this Action, including, but not limited to, engaging in discovery, review and analysis of Avid's documents and data produced in connection with the Arbitration Motions.  Class Counsel also represents that it evaluated the merits of the Parties' contentions and evaluated this Settlement Agreement, as it affects all parties, including Settlement Class Members.  Class Counsel further recognize and acknowledge the expense, uncertain outcome, and risk of any litigation, as well as the difficulties and delays inherent in such litigation, and the inherent problems of proof and possible defenses to the claims alleged in the Action.  Taking into account the foregoing, Class Counsel believe that the settlement set forth in this Settlement Agreement confers substantial monetary and other benefits upon the Settlement Class, and Class Counsel are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate, and that this Settlement Agreement is in the best interest of the Settlement Class Members.

J.      WHEREAS, Defendants deny any wrongdoing or that they committed any act or omission giving rise to any liability or violation of the law, and assert that Plaintiffs agreed to submit their claims to arbitration and further waived any right to proceed by class action.  Defendants deny the material allegations of the Complaint, including all claims asserted therein, and Defendants further deny that any of the Settlement Class Members is entitled to any monetary or relief whatsoever in connection with the Action.

K.      WHEREAS, Defendants, while disclaiming all liability with respect to all claims, consider it desirable to resolve the Action on the terms stated herein in order to

2

avoid further expense, inconvenience and burden and, therefore, have determined that this settlement on the terms set forth herein is in their respective best interests.  This Settlement Agreement shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Defendants with respect to any fact or matter alleged in the Action, or any claim of fault or liability or wrongdoing or damage whatsoever.

L.      WHEREAS, significant arms'-length settlement negotiations have taken place between and among the Parties, including a day-long mediation session on April 7, 2017, conducted with the assistance of former United States District Court Judge Layn R. Phillips.  As a result, this Settlement Agreement has been reached, subject to the Court approval process set forth herein.

M.      WHEREAS, in connection with the mediation referenced in paragraph L above and settlement negotiations between and among the Parties, Avid provided Class Counsel with the Avid financial records, including audited financial statements and financial projections, that were submitted to the Federal Trade Commission ("FTC"), as referenced in paragraph IV.C of the Stipulated Order for Permanent Injunction and Other Equitable Relief entered on December 18, 2016, to resolve claims by the FTC against Avid as described further below in paragraph 4.3.

N.      NOW THEREFORE, in consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims as described below, and other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged by the Parties, the Class Representatives, on behalf of themselves and the Settlement Class Members, and Defendants agree to the Settlement Agreement described herein, subject to Court approval, under the following terms and conditions.

## 2.   DEFINITIONS

2.1     In addition to the terms defined at various points within this Agreement, the following terms shall have the meaning set forth below:

2.2     "Action" or "Litigation" means Multi-District Litigation No. 2669, *In re: Ashley Madison Customer Data Security Breach Litigation*, No. 15-md-02669 (E.D. Mo.) ("MDL 2669").  MDL 2669 includes the Consolidated Class Action Complaint (ECF No. 180) and any amendments thereto, and all individual actions transferred to, and coordinated with MDL 2669 by the Judicial Panel on Multi-District Litigation ("JPML") (collectively, the "Individual Actions"), specifically:  *Doe, et al.* v. *Avid Life Media, Inc., et al.*, No. 15-cv-01132 (E.D. Mo., filed 7/22/15); *Doe* v. *Avid Life Media, Inc., et al.*, No. 15-cv-02750 (N.D. Tex., filed 8/21/15); *Doe 1, et al.* v. *Avid Life Media, Inc., et al.*, No. 15-cv-06405 (C.D. Cal., filed 8/21/15); *Doe 1, et al.* v. *Avid Life Media, Inc., et al.*, No. 15-cv-01347 (C.D. Cal., filed 8/24/15); *Doe* v. *Avid Life Media, Inc., et al.*, No. 15-cv-01464 (N.D. Ala., filed 8/25/15); *Doe 1, et al.* v. *Avid Life Media, Inc., et al.*, No. 15-cv-06619 (C.D. Cal., filed 8/28/15); *Doe* v. *Avid Life Media, Inc., et al.*, No. 15-cv-07760 (N.D. Ill., filed 9/2/15); *Doe* v. *Avid Life Media, Inc., et al.*, No. 15-cv-00386 (E.D. Va., filed 9/3/15); *Doe* v.  *Avid Life Media, Inc., et al.*, No. 15-cv-07017 (S.D.N.Y., filed 9/4/15); *Doe 1, et al.* v. *Avid Life Media, Inc., et al.*, No. 15-cv-00658 (S.D. Miss., filed 9/8/15); *Russell* v. *Avid Life Media,*

*Inc., et al.*, No. 15-cv-02693 (D. Md., filed 9/11/15); *Doe* v. *Avid Life Media, Inc., et al.*, No. 15-cv-08270, (N.D. Ill., filed 9/21/15); *Pauly* v. *Avid Life Media, Inc., et al.*, No. 15-cv-08842 (N.D. Ill, filed 10/5/15); *Doe* v. *Avid Life Media, Inc., et al.*, No. 15-cv-00640 (E.D. Ark., filed 10/16/15); *Berki, et al.* v. *Avid Life Media, Inc., et al.*, No. 15-cv-08208 (C.D. Cal., filed 10/20/15); *Poyet* v. *Avid Life Media, Inc., et al.*, No. 15-cv-08456 (C.D. Cal., filed 10/29/15); *Alfaro* v. *Avid Life Media, Inc., et al.*, No. 15-cv-02295 (C.D. Cal., filed 11/6/15); *Deloach* v. *Avid Life Media, Inc., et al.*, No. 15-cv-00299 (S.D. Ga., filed 11/10/15); *Campbell* v. *Avid Life Media, Inc., et al.*, No. 15-cv-09475 (C.D. Cal., filed 12/8/2015);[1] *Lisuzzo* v. *Avid Life Media, Inc., et al.*, No. 15-cv-11305 (N.D. Ill., filed 12/16/15); *Fipps* v. *Avid Life Media, Inc., et al.*, No. 16-cv-00152 (N.D. Ala., filed 1/27/16); *Scharf* v. *Avid Life Media Inc et al*, No. 16−cv-00225 (E.D. Ark., filed July 20, 2016)[2]; *Plaisance* v. *Avid Life Media, Inc. et al*, No. 16-cv-16077 (E.D. La., filed Nov. 4, 2016); *Doe 312017* v. *Avid Life Media, Inc.*, No. 17-2492 (C.D. Cal., filed March 30, 2017).  Any action filed after the date of this Settlement Agreement that is transferred by the JPML to MDL 2669 shall be deemed to be included within the definition of Individual Actions.

2.3    "Ashley Madison" means the online dating website AshleyMadison.com owned or operated by Avid during the Settlement Class Period, and any mobile applications for that website.

2.4    "Claim" or "Claim Form" means the form substantially similar to the attached Exhibit A which Settlement Class Members must submit to be eligible for relief under the terms of the Settlement Agreement, in accordance with the Notice Plan attached hereto as Exhibit B and further described in the Declaration of Steven Weisbrot.

2.5    "Claims Deadline" means the deadline for submitting Claim Forms as agreed by Class Counsel and Defendants or ordered by the Court.

2.6    "Class Counsel" means the Court-appointed co-lead and liaison counsel in this Action:  Dowd & Dowd, P.C., 211 North Broadway, Suite 4050, St. Louis, Missouri 63102; The Driscoll Firm, P.C., 211 N. Broadway, 40th Floor, St. Louis, Missouri 63102; Heninger Garrison Davis, LLC, 2224 1st Avenue North, Birmingham, Alabama 35203.

2.7    "Class Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement Agreement.

2.8    "Class Notice Date" means the date upon which Class Notice is initially sent.

---

[1]    On March 4, 2016, Plaintiff Lee Campbell filed a notice of voluntary dismissal without prejudice of this action.  (ECF No. 123.)

[2]    On February 16, 2017, Plaintiff Thadeaus G. Scharf, III filed a notice of voluntary dismissal without prejudice of this action.  (ECF No. 332.)

2.9    "Class Representatives" means the 18 plaintiffs named in the Complaint: Brian Farr, Steven Coward, Marc Benefield, Nhung Truong, Gustavo Alfaro, David Yagel, John Hiles III, Matthew Lisuzzo, Britt Garrett, Christopher Russell, David Miller, James Mike Shows, Todd Witengier, Byron Goetting, Marvin Cabiness, Keith Macomber, Paul Jack, and Anthony Imbarrato.

2.10    "Court" means the United States District Court for the Eastern District of Missouri, which is presiding over the Action.

2.11    "Defendants' Counsel" means the law firms of Paul, Weiss Rifkind, Wharton & Garrison LLP; and Bryan Cave LLP (together, "Avid's Counsel"); and Boies Schiller Flexner LLP.

2.12    "Effective Date" means the first business day after which all of the following events and conditions have occurred: (a) Class Counsel and Defendants' Counsel have executed this Settlement Agreement; (b) the Court has entered the Final Approval Order; and (c) the Final Approval Order has become a final, non-appealable judgment approving the Settlement Agreement in all material respects and is no longer subject to review, rehearing, appeal, petition for allowance of appeal, petition for certiorari, or other review of any kind.  The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amounts that Class Counsel requests.  Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Fee and Expense Award awarded to Class Counsel.

2.13    "Engager" or "Engager Profile" means an employee or agent-generated account that is not an account used by an actual customer.

2.14    "Fee and Expense Award" means the amount awarded to Class Counsel by the Court for attorneys' fees, costs, and expenses, which shall be distributed by Class Counsel to Class Counsel and Supporting Counsel in a manner consistent with counsel's contribution to the benefit obtained for the Settlement Class Members.

2.15    "Final Approval Order" means an order and judgment issued and entered by the Court, approving this Settlement Agreement as binding upon the Parties and the Settlement Class Members and dismissing the claims against Defendants with prejudice, and setting the amount for an award of fees, costs, and expenses to Class Counsel.  The Final Approval Order shall constitute a judgment within the meaning and for purposes of Rule 54 of the Federal Rules of Civil Procedure.  The Parties jointly shall request the Court to enter the proposed Final Approval Order.  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval Order means the date of the last of such orders.

2.16    "Full Delete," "Paid Delete" or "Complete Profile Removal" means the feature offered on AshleyMadison.com allowing users to cancel their Ashley Madison account and delete their user profile, including the content of any messages sent or received by the user, and for which, until July 20, 2015, Avid charged a one-time payment of $19.00.

2.17   "Net Settlement Fund" means the amount remaining in the Settlement Fund after payment of the amounts set forth in paragraphs 3.3.1 to 3.3.4.

2.18   "Notice Program" or "Notice Plan" means the notice plan and methods, substantially as described in Exhibit B hereto, developed by the Settlement Administrator and also described in more detail in the Declaration of Steven Weisbrot, Esq. On Adequacy of Notice Program, dated July 13, 2017, filed contemporaneously herewith.

2.19   "Objection Deadline" means sixty (60) days after the Class Notice Date.

2.20   "Opt-Out Deadline" means sixty (60) days after the Class Notice Date.

2.21   "Parties" means the Class Representatives, Avid, and Noel Biderman.

2.22   "Personal information" means individually identifiable information from or about an individual consumer, including, but not limited to: (1) first and last name; (2) home or other physical address, including street name and name of city or town; (3) email address or other online contact information, such as an instant messaging user identifier or a screen name; (4) telephone number; (5) date of birth; (6) government-issued identification number, such as a driver's license, military identification, passport, or Social Security number, or other personal identification number; (7) payment card account numbers; (8) photographs of the consumer; and (9) sexual preferences.

2.23   "Preliminary Approval" means that the Court has entered an order preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing and content of notice to Settlement Class Members.

2.24   "Preliminary Approval Date" means the date on which the Court enters an Order granting Preliminary Approval.

2.25   "Long Form Notice" means the proposed long form notice, substantially in the form as that attached hereto and made a part hereof as Exhibit C, to be approved by the Court and to be published in accordance with Section 4 of this Settlement Agreement and in accordance with the Notice Program attached hereto and described in the Declaration of Steven Weisbrot.

2.26   "Summary Publication Notice" means the proposed short form notice, substantially in the form as that attached hereto and made a part hereof as Exhibit D, to be approved by the Court and to be published in accordance with Section 6 of this Settlement Agreement and in accordance with the Notice Program attached hereto and described in the Declaration of Steven Weisbrot.

2.27   "Released Parties" means (a) Ruby Corp. (previously named Avid Life Media Inc.), Ruby Life Inc. (previously named Avid Dating Life Inc.), and each of their respective present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, executives, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, vendors, auditors, principals,

predecessors, successors, and assigns of each of them, and (b) Noel Biderman and his heirs, assigns, beneficiaries, and successors.

2.28    "Releasing Parties" means the Class Representatives and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement Class, and each of their respective heirs, assigns, beneficiaries, and successors.

2.29    "Reasonable Documentation" means documentation supporting a Claim. Non-exhaustive examples of Reasonable Documentation include credit card statements, bank statements, invoices, telephone records, e-mail receipts, other payment records, or sworn declaration or affidavit.  A completed Claim Form with the name, signature, and date of a Class Member on the attestation and signature page of the Claim Form shall constitute a sworn declaration for purposes of Reasonable Documentation as defined herein.

2.30    "Settlement Administrator" means Angeion Group.  Class Counsel and Avid may, by agreement, substitute a different settlement administrator, subject to approval by the Court.  In the absence of agreement, either Class Counsel or Avid may move the Court to substitute a different settlement administrator, upon a showing that the responsibilities of settlement administrator have not been adequately executed by the incumbent.

2.31    "Settlement Class" and "Settlement Class Members" means: All residents of the United States of America who used Ashley Madison during the Settlement Class Period (as defined in paragraph 2.32 below), including, but not limited to, all persons who whose Personal Information was compromised or released publicly as a result of the Data Breach,  who purchased the Paid Delete or Full Delete option on Ashley Madison on or before July 20, 2015, or who purchased credits or account upgrades on Ashley Madison or otherwise paid to use Ashley Madison.   Settlement Class Members who exclude themselves from the Settlement Class, pursuant to the procedures set forth in Sections 6.4 and 6.6 of the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by this Settlement Agreement, and shall not be eligible to make a Claim for any benefit under the terms of this Settlement Agreement or object thereto.

2.32    "Settlement Class Period" means the period of time from January 1, 2002 through the Preliminary Approval Date.

2.33    "Settlement Fund" means the total cash commitment of Defendants for purposes of effectuating the settlement of this Action, with a total value of Eleven Million, Two Hundred Thousand Dollars and no cents ($11,200,000), the payment and disposition of which is subject to the provisions of this Settlement Agreement.

2.34    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement Agreement, through and including

hyperlinked access to this Agreement, the Class Notice, the order preliminarily approving this Settlement Agreement, the Claim Form, the Complaint and such other documents as Class Counsel and Defendants agree to post or that the Court orders posted on the website. These documents shall remain on the Settlement Website at least until the Final Approval Order. The URL of the Settlement Website shall be agreed upon by Class Counsel and Defendants, but in any event shall be a nondescript URL that will not include any reference to Ashley Madison, Avid Life Media, Avid Dating Life, Ruby, Noel Biderman, or any other information identifying the URL as being related in any way to the substance of this litigation or purpose of ashleymadison.com. Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website. The Settlement Website shall not include any advertising and shall remain operational until the date distributions become void.

2.35  "Supporting Counsel" means the members of the Plaintiffs' Executive Committee, comprised of the law firms of John Arthur Eaves Attorneys at Law 101 North State Street, Jackson, Mississippi, 39201; Carlson Lynch Sweet & Kilpela, LLP, 1133 Penn Ave., 5th floor, Pittsburgh, Pennsylvania 15222; Zimmerman Law Offices, 77 West Washington Street, Suite 1220, Chicago, Illinois 60602; Hammond Law, P.C., 1180 S. Beverly Drive, Suite 610, Los Angeles, CA 90035; and Lite DePalma Greenberg, 211 W. Wacker Drive, Ste. 500, Chicago, IL 60606.

2.36  "Valid Claim Form" means a Claim Form submitted by a Settlement Class Member that (a) is submitted in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) is substantially completed with sufficient information for the Settlement Administrator to evaluate the validity of the claim and executed by a Settlement Class Member on the initial submission; (c) is signed physically or by e-signature by a Settlement Class Member or person with authority to sign for and bind a Settlement Class Member, subject to penalty of perjury; (d) is returned via mail and post-marked by the Claims Deadline or received by mail or on-line submission by 11:59 p.m. of the Claims Deadline Eastern Standard Time and is determined to be valid by the Settlement Administrator.

## 3.   SETTLEMENT CONSIDERATION

3.1  In consideration for the releases contained in Section 10 of this Agreement, and without admitting liability for any of the alleged acts or omissions alleged in the Complaint, Avid will pay eleven million, two hundred thousand dollars and no cents ($11,200,000) to create a Settlement Fund, as set forth in this Section. Defendants' total financial commitment and obligation under this Settlement Agreement shall not exceed eleven million, two hundred thousand dollars and no cents ($11,200,000).

3.2  Establishment of the Settlement Fund.

3.2.1  Notice Reserve. No later than ten (10) calendar days after the Preliminary Approval Order, Avid shall deposit an amount equal to five hundred thousand and no cents ($500,000) (the "Notice Reserve") from the Settlement Fund into an escrow account. Such account and the terms of the escrow shall be acceptable to

Class Counsel, acting reasonably (the "Escrow Account").  The Notice Reserve shall be used to pay for the cost of the Notice Program, including the fees and expenses associated with the administration of the Settlement Fund.  Payments to the Settlement Administrator shall be made upon authorization from the Parties, which shall not be unreasonably withheld.  Payment for Notice expenses such as publication, postage, setup fees and the like shall be paid prior to the commencement of the Notice Program.

    3.2.2 Settlement Fund Remainder.  No later than fifteen (15) calendar days after the Final Approval Order, Avid shall deposit the remainder of the Settlement Fund, an amount equal to ten million, seven hundred thousand dollars and no cents ($10,700,000), into the Escrow Account.  In the event a Final Approval Order is not entered by the Court, the Settlement Fund (except for fees incurred for notice and for reasonable administration expenses) shall revert to Avid.  The Settlement Fund shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.  The Settlement Administrator shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Fund and the monies deposited into the Settlement Fund, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1 .468B-l. Avid shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Fund pursuant to Treas. Reg. § 1.468B- l.  All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

   3.3  Distribution of the Settlement Fund.  The Settlement Fund shall be applied to pay, in the following order:

    3.3.1 All costs and payments associated with the Notice Program and administration of the Settlement Fund, including all payments to the Settlement Administrator, as described in sections 6 and 7 and paragraph 8.10 below;

    3.3.2 Any necessary taxes and tax expenses on the Settlement Fund;

    3.3.3 Any award of attorneys' fees and costs as approved by the Court to Class Counsel under the Settlement Agreement, described further in paragraph 11.1 below;

    3.3.4 Any Service Award as approved by the Court, but in no event to exceed $5,000 per Class Representative, in accordance with paragraph 11.2 below; and

    3.3.5 Cash benefits submitted by Settlement Class Members pursuant to section 8 below.

## 4. BUSINESS PRACTICE CHANGES AND ACTIONS FOLLOWING DATA BREACH

   4.1  Avid represents that from July 20, 2015, when it announced the Data Breach, and in response to the filing of this Action on July 22, 2015 against Avid and other legal proceedings relating to the Data Breach, to the date of this Agreement, Avid has implemented numerous remedial measures to further enhance the security of its customers'

data, including, but not limited to, the measures listed below.  The Parties agree that Avid has undertaken the following measures and that such measures remain in effect as of the date of this Settlement Agreement:

       4.1.1   Completed a comprehensive third-party review of the protections it has in place to secure personal information;

       4.1.2   Implemented an enhanced comprehensive information security program to protect the security, confidentiality, and integrity of personal information collected from consumers;

       4.1.3   Created and filled the position of Chief Information Security Officer;

       4.1.4   Provided the Full Delete option free of charge;

       4.1.5   Updated its practices related to the retention of Personal Information of users who are inactive or have deactivated their accounts to ensure that it is not holding Personal Information beyond an appropriate retention period; and

       4.1.6   Implemented enhanced mandatory security training for employees.

4.2   Avid further represents that after the announcement of the Data Breach and the filing of this Action, Avid searched for websites that had posted actual or alleged copies of the hacked personal and account information and also reviewed other websites posting such information that were brought to its attention.  For each site that it determined violated applicable terms and conditions or law, Avid sent takedown letters to the website's owners or service providers.  After Avid issued such letters, many of the websites removed the offending content, including, for example, ashleymadisonleakeddata.com, www.cheaterleak.com, checkashleymadison.com, and isheonthelist.weebly.com.

4.3   The Parties further acknowledge that after the filing of this Action, Avid entered into discussions with the Federal Trade Commission, the states of Alaska, Arkansas, Hawaii, Louisiana, Maryland, Mississippi, Nebraska, New York, North Dakota, Oregon, Rhode Island, Tennessee, and Vermont, and the District of Columbia for the purpose of resolving allegations that it had deceived Ashley Madison customers, including the Settlement Class Members, and failed to protect their account and profile information in relation to the Data Breach.  As a consequence, Avid entered into a settlement agreement requiring it to implement a comprehensive data security program for the benefit of its customers, including the Settlement Class Members, including third party assessments, and a payment of $1,657,000 to resolve claims of consumer deception and other claims similar to those alleged in this Action.   This payment was made by Avid with no admission of liability.

4.4   The foregoing paragraphs recite only some of the business practice changes and other actions that Avid has undertaken following the Data Breach and the filing of this Action.  The recitation of these actions is intended to provide information to Class Members and the Court about some of Avid's actions following the Data Breach and the

filing of this Action relating to the Data Breach and does not create any rights or obligations.  Avid may, in its discretion, amend the business practices described in this Section 4 or adopt other or alternate cybersecurity business practices in the future that are consistent with the business practices described in paragraphs 4.1-4.3.

## 5.    PRELIMINARY APPROVAL

5.1    Upon execution of this Agreement by the Parties, Class Counsel shall promptly move the Court for an order granting preliminary approval of this Settlement Agreement ("Preliminary Approval Order"), substantially in the form of Exhibit E.  The motion for preliminary approval shall request that the Court: (a) preliminarily approve the terms of the Settlement Agreement as within the range of fair, adequate, and reasonable; (b) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (c) approve the Notice Program set forth herein and approve the form and content of the Class Notice; (d) approve the procedures set forth in Section 6 for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement Agreement; (e) stay all proceedings in this Action unrelated to the Settlement Agreement pending final approval of the Settlement Agreement; (f) stay and/or enjoin, pending final approval of the Settlement Agreement, any actions brought by Settlement Class Members concerning a Released Claim; and (g) schedule a final approval hearing for a time and date convenient for the Court, at which the Court will conduct an inquiry into the fairness of the Settlement Agreement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses ("Final Approval Hearing").

## 6.    CLASS NOTICE

6.1    Notice Program.  The Notice Program shall include:

6.1.1    Settlement Website.  No later than the first date that any form of Class Notice is provided, the Settlement Administrator will develop, host, administer, publish, and maintain the Settlement Website in accordance with the Notice Program, which shall include the ability to electronically file Claim Forms online, provided that such Claims Forms, if signed electronically, will be binding for purposes of applicable law and contain a statement to that effect.  Internet Notice on the Settlement Website shall be substantially in the form of the Long Form Notice.

6.1.2    Print Publication Notice.  As soon as practical after the Preliminary Approval Date, the Settlement Administrator will provide Summary Publication Notice in accordance with the Notice Program by placing the Summary Publication Notice in the publications identified in the Notice Program.

6.1.3    Class Counsels' Websites. As soon as practical after the Preliminary Approval Date, the Class Notice will be posted in a prominent location on Class Counsels' websites.  The Parties shall also work cooperatively so that all other pertinent information to submit a Claim, request exclusion from the Settlement, object to the Settlement

Agreement or provide notice of an intention to appear in Court, is provided to all Class Members on Class Counsels' websites. Defendants will have the right to review and approve, acting reasonably, publications on Class Counsels' websites concerning this matter.

       6.1.4   Online Publication Notice. The Settlement Administrator will supplement the Summary Publication Notice with Internet banner ads, along with related online targeted advertisement in accordance with the Notice Program, in the form of Exhibit F. These ads will run for sixty (60) days and contain active hyperlinks to the Settlement Website.

       6.2   The Class Notice shall:

       6.2.1   Inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief under the proposed settlement;

       6.2.2   Contain a short, plain statement of the background of the Action, the class certification, and the proposed settlement;

       6.2.3   Describe the proposed settlement relief outlined in this Settlement Agreement; and

       6.2.4   State that any relief to Settlement Class Members is contingent upon the Court's final approval of the proposed Settlement Agreement.

       6.3   Notice of Opt-Out and Objection Rights. The Class Notice shall inform Settlement Class Members of their rights to exclude themselves from the Settlement Class or object to the proposed Settlement Agreement.

       6.4   Requests for Exclusion. If, within such time as is ordered by the Court and contained in the Class Notice, any Settlement Class Member wishes to be excluded from the Settlement Class, he or she must do so by timely mailing a valid opt-out notice, including their real name, as described in the Class Notice. Any Settlement Class Member who timely elects to opt out of the Settlement Class shall not be permitted to object to the Settlement Agreement. Persons falling within the definition of the Settlement Class who validly and timely request exclusion from the Settlement Class effected by this Settlement Agreement, pursuant to the procedures set forth in this paragraph, shall not be Settlement Class Members, shall not be bound by this Settlement Agreement and shall not be eligible to make a Claim for any benefit under the terms of this Settlement Agreement.

       6.5   At least seven (7) calendar days prior to the Final Approval Hearing, Class Counsel shall prepare or cause the Settlement Administrator to prepare a list of the persons who have excluded themselves in a valid and timely manner from the Settlement Class (the "Opt-Outs"), and Class Counsel shall file that list with the Court.

       6.6   Objections. Any Settlement Class Member who intends to object to the Settlement Agreement must do so no later than sixty (60) calendar days after the Notice

Date (the "Objection Deadline").  In order to object, the Settlement Class Member must file a notice of appearance with the Court (if represented by counsel), and file with the Court and provide a copy to Class Counsel and Defendants' Counsel, a hand signed document that includes:

> 6.6.1   The real name (consistent with the Court's ruling in ECF No. 138), address, telephone number, and, if available, the email address of the person objecting, and if represented by counsel, of his/her counsel;

> 6.6.2   Specifically and in writing, each objection and the grounds for each objection, accompanied by any legal support for the objection;

> 6.6.3   Whether he/she intends to appear at the Final Approval Hearing, either with or without counsel;

> 6.6.4   A statement sufficient to establish his/her membership in the Settlement Class, including all information required by the Claim Form;

> 6.6.5   A detailed list of any other objections submitted by the Settlement Class Member, and/or his/her counsel, to any class actions submitted in any court, whether state or federal, in the United States in the previous five (5) years.  If the Settlement Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement Agreement;

> 6.6.6   Any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity; and

> 6.6.7   The objector's signature on the written objection (an attorney's signature is not sufficient).

> 6.7   The proposed order granting Preliminary Approval will provide that any Settlement Class Member wishing to object and/or appear who fails to follow the procedures set forth above may, in the discretion of the Court, be precluded from doing so.

## 7.   SETTLEMENT ADMINISTRATION

> 7.1   Responsibilities of Settlement Administrator.   The Settlement Administrator (including subcontractors, if any) shall help implement the terms of the proposed Settlement Agreement.  The Settlement Administrator shall be responsible for administrative tasks, including, without limitation (a) arranging, as set forth in the Notice Program, for distribution of Class Notice (in the form approved by the Court) and Claim Forms (in a form ordered by the Court) to Settlement Class Members, (b) answering inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel or their designee, (c) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the settlement, (d) establishing the Settlement Website that posts notices, Claim

Forms and other related documents, (e) receiving and processing Claims and distributing cash payments to Settlement Class Members, and (f) otherwise assisting with implementation and administration of the Settlement Agreement terms.  The actual costs and expenses of the Settlement Administrator will be paid from the Settlement Fund.

      7.2      Performance Standards of Settlement Administrator.  The contract with the Settlement Administrator shall obligate the Settlement Administrator to abide by the following performance standards:

      7.2.1    The Settlement Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and neutrally describe, the provisions of this Settlement Agreement in communications with Settlement Class Members;

      7.2.2    The Settlement Administrator shall provide prompt, accurate and objective responses to inquiries from Class Counsel or its designee, Avid and/or Avid's Counsel or its designee, and shall periodically report on Claims, objectors, exclusion requests, or such other information that may be reasonably requested by Defendants' Counsel or Class Counsel; and

      7.2.3    The Settlement Administrator shall seek clarification, instruction or authorization for performance of its duties and expenditure or disposition of cash from both Class Counsel and its designee and from Avid and/or Avid's Counsel or its designee.

      7.3      The Settlement Administrator shall, subject to the supervision of the Court, administer the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost-effective and timely manner.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement.  The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices, and such records will be made available to Class Counsel and Defendants' Counsel, the Parties and their representatives promptly upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall promptly provide Class Counsel and Defendants' Counsel with information concerning Class Notice, administration, and implementation of the Settlement Agreement.  Should the Court request or should it be reasonably advisable to do so, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator.  Without limiting the foregoing, the Settlement Administrator shall:

      7.3.1    Upon request, promptly forward to Defendants' Counsel and Class Counsel, copies of all documents and other materials relating to the administration of the Settlement Agreement;

      7.3.2    Receive requests from Class Members to exclude themselves from the Settlement Class and promptly provide to Class Counsel and Defendants' Counsel a copy thereof upon receipt.  If the Settlement Administrator receives any requests for

exclusion from Class Members after the Opt-Out Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendants' Counsel;

       7.3.3   Provide reports and summaries, as requested, to Class Counsel and Defendants' Counsel, including without limitation, reports regarding the number of Claim Forms received and the identity of the Settlement Class Members;

       7.3.4   Employ reasonable procedures to screen Claims Forms for waste, fraud, and abuse and shall reject a Claim Form, or any part of a Claim for a payment reflected therein, where the Settlement Administrator determines that there is evidence of fraud. The Settlement Administrator will review each Claim Form based upon the initial submission by a Settlement Class Member and ensure that each is complete, properly substantiated and, based on the substantiation, determine the appropriate benefit to be paid, if any, in accordance with the terms of this Agreement. The Settlement Administrator is empowered to pay Claims determined to be valid;

       7.3.5   Prepare a declaration attesting to compliance with the Class Notice requirements set forth below and identifying all Opt-Outs and/or objectors. Such declaration shall be provided to Defendants' Counsel and Class Counsel for filing with the Court no later than fourteen (14) calendar days prior to the Final Approval Hearing; and

       7.3.6   Distributing cash payments to Settlement Class Members according to the processes and criteria set forth herein and in the Notice Program, such processes and criteria including payment in the form of (i) mailed check; (ii) direct credit to a PayPal account, or (iii) electronic check emailed to the Class Member, as directed by the Settlement Class Member during the claim process. Such payment form shall be selected by each Settlement Class Member. All checks issued to Settlement Class Members pursuant to this Agreement shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. To the extent that a check issued to a Settlement Class Member is not cashed within ninety (90) days after the date of issue, the check will be void. No form of payment or any form of delivery of said payment shall be issued with any reference to Ashley Madison, Avid Life Media, Avid Dating Life, Ruby, or any other information identifying the source of the funds as being related in any way to the substance of this litigation, and if the payment form is sent through mail, the Settlement Class Member shall provide the address to where the payment shall be sent.

       7.4   Notice to Attorneys General. The Defendants shall provide notice of this proposed Settlement Agreement to the appropriate state and federal officials as required by 28 U.S.C. § 1715.

## 8.   CLAIMS PROCESS

       8.1   Each Settlement Class Member shall be entitled to submit one Claim for a cash payment pursuant to the terms of the Settlement Agreement and as set forth further below. The period for submitting such Claims shall commence upon the Class Notice Date and continue for no less than 150 days.

8.2     Filing a Claim.  Each Settlement Class Member may file a Claim that will, if determined by the Settlement Administrator to be a valid Claim, entitle the Class Member to a distribution from the Settlement Fund as follows:

8.2.1   Recognized Losses.

8.2.1.1     First, Settlement Class Members who submit a Valid Claim Form and Reasonable Documentation demonstrating that he or she purchased Full Delete and his or her Personal Information was released publicly as a result of the Data Breach will have a recognized loss of nineteen dollars ($19) for each Full Delete purchase. In the case that a Settlement Class Member purchased more than one Full Delete, Settlement Class Members submitting such a claim shall in no event have a recognized loss greater than five hundred dollars ($500) under this section.

8.2.1.2     Second, Settlement Class Members who submit a Valid Claim Form and Reasonable Documentation demonstrating that he or she purchased or used credits and have a good faith belief that they used those credits to communicate with Engagers will have a recognized loss equal to one dollar ($1) for every one dollar ($1) spent for such purpose.  Settlement Class Members submitting such a claim shall in no event have a recognized loss greater than five hundred dollars ($500) under this section.

8.2.1.3     Third, Settlement Class Members who submit a Valid Claim Form and Reasonable Documentation of any unreimbursed loss caused by the Data Breach not described in paragraphs 8.2.1.1-2 above, and his or her Personal Information was released publicly as a result of the Data Breach, including, but not limited to, alleged identity theft, will have a recognized loss equal to one dollar ($1) for every one dollar ($1) spent for such purpose.  Settlement Class Members submitting such a claim shall in no event have a recognized loss greater than two thousand dollars ($2000) for such unreimbursed loss under this section.

8.2.1.4     If the total recognized loss for the Claims in Sections 8.2.1.1 to 8.2.1.3 exceed the Net Settlement Fund, the Net Settlement fund will be allocated on a pro rata basis based on each claims recognized loss as compared to all recognized losses for all Claims described in sections 8.2.1.1 to 8.2.1.3. If total recognized loss for the Claims described in sections 8.2.1.1 to 8.2.1.3 are equal to or exceed the Net Settlement Fund, claims made pursuant to Section 8.2.2.1 shall not receive a distribution.

8.2.1.5     If the total recognized loss for the Claims in Sections 8.2.1.1 to 8.2.1.3 is less than or equal to the Net Settlement Fund, Claims made under Sections 8.2.1.1 to 8.2.1.3 will receive a distribution equal to their recognized loss.

8.2.2   Remaining Funds.

8.2.2.1     Any funds remaining after allocations under Sections 8.2.1.1 to 8.2.1.3 will be divided equally amongst Settlement Class Members who submit a Valid Claim Form and Reasonable Documentation demonstrating that his or her Personal Information was released publicly as a result of the Data Breach. Settlement Class Members submitting such a claim are eligible to receive no more than five hundred dollars

($500) for such claim.  In the event that the pro rata distribution of funds to Settlement Class Members that only have a claim under this Section 8.2.2.1 is less than $10 (*i.e.,* a distribution is impractical due to associated administration costs), the remaining Net Settlement Fund shall not be distributed to Class Members making a claim under this Section 8.2.2.1 but rather distributed pursuant to Section 8.2.2.2.

           8.2.2.2   If the amounts paid under paragraphs 3.3, 8.2.1, and 8.2.2.1 do not exhaust the Settlement Fund, then the remaining funds in the Settlement Fund will be donated to one or more Internal Revenue Code Section 501(c)(3) charitable digital privacy or other similar organizations chosen jointly by Class Counsel (on behalf of the Settlement Class) and Avid (a "Charity").

    8.3   No more than fourteen (14) days after the Claims Deadline, cash benefits will be distributed pursuant to section 8 herein up to a maximum of three thousand five hundred dollars ($3,500) per class member.

    8.4   Claim Form and Reasonable Documentation.  All Claims must be submitted with a Valid Claim Form and Reasonable Documentation substantiating the claim, and received by the Settlement Administrator or postmarked by the Claims Deadline, which shall be clearly set forth in the Class Notice, the Settlement Website, and on the Claim Form.  The Claim Form will be available on the Settlement Website.  The Claim Form will also be mailed or emailed to Settlement Class Members upon request by calling or writing to the Settlement Administrator.  Settlement Class Members may submit their completed and signed Claim Forms to the Settlement Administrator by such means as prescribed by the Class Notice on or before the Claims Deadline.  Such Claim Form shall be in a form substantially similar to the form attached hereto and made a part hereof as Exhibit A.

    8.5   After all Claims have been processed, the Settlement Administrator will provide Defendants' Counsel and Class Counsel with the approved claimants list, including the distribution calculations for each Claim, and details regarding any deficient Claim Forms and all Claims marked for denial.  The Settlement Administrator will maintain a database of filed Claims, which will include all relevant information captured from the Claim Form.  Depending on the number of Claims Forms marked as deficient, the Parties shall meet and confer to determine if a deficiency and denial process is necessary.  The Parties shall communicate their determination to the Claims Administrator, who shall proceed as instructed.  Any deadlines set forth in this agreement shall be changed to accommodate for such deficiency processes as deemed appropriate by the Parties.

    8.6   Review of Claims. The Settlement Administrator shall be responsible for reviewing all Claims to determine their validity.  The Settlement Administrator shall reject any Claim that does not comply in any material respect with the instructions on the Claim Form or the terms of paragraph 8.4, above, or is submitted after the Claims Deadline.  The Parties may review any Claims found to be invalid by the Settlement Administrator and bring any disagreement to the attention of the Settlement Administrator.  If the Parties each agree that a Claim is valid, the Claim shall be paid irrespective of the determination made by the Settlement Administrator.  If either Class Counsel or Defendants' Counsel believe a Claim is valid while the other does not, such disagreements shall be resolved by the Hon.

Layn R. Phillips or another third party mediator agreed upon by the Parties.  Any further mediation fees shall be paid from the Settlement Fund.

8.7    Confidentiality of Claim Forms.  The Parties agree that all Claim Forms submitted by Settlement Class Members, and the Personal Information contained therein, shall be treated as strictly confidential and will not be disclosed to any person other than the Parties' counsel, the Settlement Administrator, the Court, and any other persons to whom disclosure is necessary to effectuate the terms of this Settlement Agreement, or required by applicable state or federal law.

8.8    Uncleared Checks.  Those Settlement Class Members whose cash benefit checks are not cleared within ninety (90) days after issuance shall be ineligible to receive a cash settlement benefit and Defendants shall have no further obligation to make any payment pursuant to this Settlement Agreement or otherwise to such Settlement Class Members. The Settlement Administrator shall honor requests for checks to be reissued provided said requests are made within the void period and Class Members provide any and all necessary documentation to support a request for reissue.  Reissued checks shall be valid for a term of 30 days from mailing or the original void date whichever is later.  All unpaid funds from uncleared checks shall remain in the Settlement Fund pending further order of the Court.  If any unpaid funds remain in the Settlement Fund, Class Counsel shall make an application to the Court to seek approval for a proposed disposition of the unpaid funds.  Such proposed distribution may not include any additional payment to Class Counsel for fees or expenses.

8.9    Each Settlement Class Member may submit only one Claim irrespective of the number of Ashley Madison accounts that he or she created.

8.10   The Settlement Administrator shall pay all fees associated with the administration and issuance of checks for cash payments to Settlement Class Members from the Settlement Fund.

## 9.    FINAL APPROVAL ORDER AND JUDGMENT

9.1    The Class Representatives' motion for preliminary approval of the Settlement Agreement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.  The Final Approval Hearing shall be scheduled no earlier than 90 days after notices of this proposed Settlement Agreement are served on the appropriate state and federal officials as required by 28 U.S.C § 1715.  At or before the Final Approval Hearing, the Class Representatives shall move for entry of a Final Approval Order and Judgment consistent with the terms of this Agreement and the Preliminary Approval Order, granting final approval of this Settlement Agreement and, among other things, (a) determining that the Settlement Agreement is fair, adequate, and reasonable; (b) finally certifying the Settlement Class for settlement purposes only; (c) determining that the Class Notice provided satisfied Due Process requirements; (d) dismissing the action with prejudice; (e) barring and enjoining the Releasing Parties from asserting any of the Released Claims, as set forth in Section 10, including during the pendency of any appeal from the Final Approval Order; (f) releasing the Released Parties from the Released

Claims, as set forth in Section 10; (g) and reserving the Court's continuing and exclusive jurisdiction over Avid and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

9.2     Upon issuance of the Final Approval Order: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members; (ii) Defendants shall not be subject to liability or expense of any kind to any Settlement Class Member except as set forth herein; and (iii) Settlement Class Members shall be permanently barred from initiating, asserting, or prosecuting any and all Released Claims against Defendants in any federal or state court in the United States or any other tribunal

9.3     Settlement Announcement and Communication. Plaintiffs, Defendants, and their respective counsel shall make no public statements outside of the court proceedings in this matter concerning this settlement except as provided in this Paragraph 9.3.  Class Counsel and Defendants shall agree on (a) the content of a joint press release to be issued immediately after the filing of the motion for preliminary approval announcing the Settlement Agreement, which shall include a statement by Avid that merely because a person's name appears to have been released in the Data Breach does not mean that such person actually was a member of Ashley Madison, and (b) the language that Plaintiffs and Plaintiffs' representatives, including Class Counsel, may use in responding to any inquiries from the press or third parties.  Plaintiffs recognize and agree that this provision is important to Defendants and that potentially inaccurate statements concerning this Settlement Agreement may cause confusion among Class Members, all of whom are or have been Avid's customers.  Thus, any breach of this provision by any Plaintiffs or their representatives shall be deemed a material breach of this Settlement Agreement by that Plaintiff, with liquidated damages resulting from that breach in the form of forfeiture of the Plaintiff's respective Service Award and any other cash benefits paid under this Settlement Agreement.  Nothing in this paragraph shall be deemed to prevent Class Counsel from communicating with Plaintiffs and Class Members and discussing the nature, benefits, and reasons for this Settlement Agreement with them.

## 10.     RELEASE

10.1     Release by Settlement Class Members.  As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from any and all liabilities, rights, claims, actions, causes of action, demands, lawsuits, arbitrations, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to in any way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in this Action, or which could have been alleged in this Action, including, without limitation, all liabilities, rights, claims, actions, causes of action, demands, lawsuits, arbitrations, damages, penalties, costs, attorneys' fees, losses, and remedies, or remedies relating to, based upon, resulting from, or arising out of: (1) the theft, exposure or disclosure of Settlement Class Members'

Personal Information; (2) Avid's maintenance and storage of Settlement Class Members' Personal Information; (3) Avid's information security policies and practices; (4) Avid's notice of the Data Breach to Settlement Class Members; and (5) the Settlement Class Members' use of Ashley Madison, including, but not limited to, creating an Ashley Madison account, using the website to communicate with other members, or purchasing credits, the Paid Delete or Full Delete service, or other services available on Ashley Madison (the "Released Claims").

     10.2    With respect to the Released Claims, each Settlement Class Member shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States of America or any state or territory thereof, or of the common law or civil law).  Section 1542 provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

     10.3    For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States, including, but not limited to, the Racketeer Influenced and Corrupt Organizations Act, the Federal Stored Communications Act, state consumer fraud and protection statutes, state data breach notice statutes, and the California Customer Records Act; claims under the common or civil laws of any state or other jurisdiction in the United States, including, but not limited to, negligence, negligence per se, breach of contract, breach of implied contract, unjust enrichment, misrepresentation (whether fraudulent, negligent, or innocent), bailment, conversion, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states or jurisdictions in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.

     10.4    Upon entry of the Final Approval Order, the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order.  It is further agreed that the Settlement Agreement may be pleaded as a complete defense to any proceeding subject to this section.

10.5    Effectuation of Settlement.  None of the above releases include releases of claims or otherwise affect the Parties' rights to enforce the terms of the Settlement Agreement.

## 11.    ATTORNEYS' FEES AND SERVICE AWARDS

11.1    Attorneys' Fees, Costs and Expenses.  The parties understand that Class Counsel will petition the Court for an award of attorneys' fees in an amount not to exceed one third of the total $11.2 million value of the Settlement Fund, exclusive of interest accumulated, along with Class Counsel's reasonable costs and expenses.  Class Counsel will distribute such fees, costs and expenses in a manner consistent with counsel's contribution to the benefit obtained for the Settlement Class.  Such fees, costs and expenses, if approved by the Court, shall be payable within 15 days of the entry of the Final Approval Order, or such later date as required by the Court, subject to the provision of reasonable and adequate security, and Class Counsel providing all payment routing information and the tax I.D. numbers for Class Counsel.  In the event the Final Approval Order is reversed or vacated by the U.S. Court of Appeals for the Eighth Circuit or the U.S. Supreme Court, Class Counsel shall refund all fees, costs, and expenses paid by Avid to Avid within 30 days of the order vacating or reversing the Final Approval Order.  Defendants agree that the attorney fee award is a matter to be determined by the Court and Defendants will take no position regarding the attorney fee award.  The Fee and Expense Award shall be the total obligation of Defendants to pay for attorneys' fees, costs and/or expenses of any kind (including, but not limited to, travel, filing fees, court reporter and videographer expenses, expert fees and costs, and document review and production costs related to this Action or any claims asserted in the Action).  Any disputes regarding the distribution of fees or the reasonableness or adequacy of the security to be provided by counsel shall be mediated by the Hon. Layn R. Phillips and decided by the Court.  Class Counsel and Supporting Counsel agree that the denial of, reduction or downward modification of, or failure to grant any application for attorneys' fees, costs, or expenses shall not constitute grounds for modification or termination of this Settlement Agreement, including the releases provided for herein.

11.2    Service Awards.  Class Counsel will petition the Court for approval of, and Defendants will not oppose, service awards not to exceed $5,000 for each Class Representative, which are intended to compensate such individuals for their efforts in the litigation and commitment on behalf of the Settlement Class ("Service Awards").  Service Awards will be in addition to any claim which the Class Representative may be entitled to under the claims process set forth in Section 8 of this agreement.  Any Service Awards approved will be paid from the Settlement Fund.  Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Agreement.

11.3    Except as otherwise provided in this Settlement Agreement, each party to this Settlement Agreement shall bear his, her or its own costs of the Litigation.

## 12.    TERMINATION

12.1    Effect If Settlement Not Approved.  This Settlement Agreement was entered into only for purposes of settlement, subject to and without waiver of the Parties' respective rights.  If the Court does not enter the order granting Preliminary Approval or the Final Approval Order, or if the Effective Date does not occur, Class Counsel and Defendants' Counsel shall endeavor, consistent with the Settlement Agreement, to cure any defect identified by the Court; provided, however, that Defendants shall not be obligated to accept such cure if it increases the cost or burden of the Settlement Agreement to Avid or Biderman or reduces or otherwise affects the scope of the releases provided by this Settlement Agreement.

12.2    This Settlement Agreement may be terminated by either the Class Representatives or Defendants by serving on counsel for the opposing Party and filing with the Court a written notice of termination within fourteen (14) days (or such longer time as may be agreed between Class Counsel and Avid) after any of the following occurrences: (a) Class Counsel and Avid agree to termination before the Effective Date; (b) the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement Agreement; (c) an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; (d) the Court or any reviewing appellate court incorporates material terms or  provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Approval Order, or the Settlement Agreement; or (e) the Effective Date does not occur.

12.3    If a threshold number of Class Members submit valid requests to opt out of the Settlement Class (that threshold number being agreed by the Parties), Defendants may terminate this Agreement by providing written notice of termination to Settlement Class Counsel and to the Court no later than 7 days before the Final Approval Hearing.

12.4    If the Settlement Agreement is terminated for any reason, the Final Approval Order is not entered for any reason, or the Effective Date does not occur, then no term or condition of the Settlement Agreement, or any draft thereof, or any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Action, or in any other proceeding, the Parties shall be restored to their respective positions immediately preceding execution of this Settlement Agreement.

12.5    If the Final Approval Order or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, then within 30 days, Class Counsel shall return to Avid all attorneys' fees, costs, and other payments received by Class Counsel under the Settlement Agreement except for fees incurred for notice and for reasonable administration expenses, as set forth in paragraph 3.1 above.

## 13.    NO ADMISSION OF LIABILITY

13.1    This Settlement Agreement reflects, among other things, the compromise and settlement of disputed claims among the parties, and neither this Settlement Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Settlement Agreement, are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, defense, or of any point of fact or law on the part of any party.  Defendants deny the material allegations of the complaint filed in this Action.  Neither this Settlement Agreement, nor the fact of settlement, nor the settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by any or all of the Released Parties, or be offered or received in evidence as an admission, concession, presumption or inference of any wrongdoing or liability by any or all of the Released Parties in any proceeding, other than such proceedings as may be necessary to consummate, interpret or enforce this Settlement Agreement.

## 14.    EFFECT OF CLASS CERTIFICATION

14.1    The Parties agree, for settlement purposes only, that this Action shall be certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3), with a class consisting of all Settlement Class Members, and with Brian Farr, Steven Coward, Marc Benefield, Nhung Truong, Gustavo Alfaro, David Yagel, John Hiles III, Matthew Lisuzzo, Britt Garrett, Christopher Russell, David Miller, James Mike Shows, Todd Witengier, Byron Goetting, Marvin Cabiness, Keith Macomber, Paul Jack, and Anthony Imbarrato, as Class Representatives, and with Class Counsel as counsel for the Settlement Class Members.

14.2    Any certification of a conditional, preliminary or final settlement class pursuant to the terms of this Settlement Agreement shall not constitute, and shall not be construed as, an admission on the part of Defendants that this Action, or any other proposed or certified class action, is appropriate for trial class treatment pursuant to Federal Rule of Civil Procedure or any similar state or federal class action statute or rule.  This Settlement Agreement shall be without prejudice to the rights of Defendants to: (a) move to dismiss or stay this Action on any applicable basis; (b) oppose certification in this Action should this Settlement Agreement not be approved or implemented for any reason; or (c) oppose certification in any other proposed or certified class action.  Neither the fact of this settlement nor this Settlement Agreement shall be used in connection with efforts in any proceeding to seek certification of any claims asserted against Defendants.

## 15.    MISCELLANEOUS PROVISIONS

15.1    Change of Time Periods.  The time periods and/or dates described in this Settlement Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Class Counsel and Defendants' Counsel, without notice to Settlement Class Members.  The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Settlement Agreement, as well as to correct any inadvertent, non-substantive mistakes or typographical errors contained in the Settlement Agreement.

15.2    Binding Agreement.  This Settlement Agreement shall be binding upon and inure to the benefit of the respective heirs, successors, and assigns of the Parties, the Settlement Class Members and the other Released Parties.

15.3    Confidentiality.  The Parties agree that all drafts, discussions, negotiations, documentation, or other information prepared in relation to the Settlement Agreement and the Parties' settlement discussions shall be treated as strictly confidential and may not be disclosed to any person other than the Parties' counsel, insurers, accountants, auditors, and other related parties required to have notice of this Settlement Agreement pursuant to applicable state and federal law.

15.4    Cooperation of Parties.  The Parties agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the settlement described in this Agreement.

15.5    Obligation To Meet And Confer.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

15.6    No Waiver.  The waiver by any party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Settlement Agreement.

15.7    Integration.  All of the exhibits of this Settlement Agreement are material and integral parts hereof, and are fully incorporated herein by reference.  This Settlement Agreement and the exhibits hereto constitute the entire, fully integrated agreement among the Parties and cancel and supercede all prior written and unwritten agreements, negotiations and understandings pertaining to the Settlement Agreement and the Litigation, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties further intend that this Settlement Agreement constitutes the complete and exclusive statement of its terms as between the Parties, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Settlement Agreement.

15.8    No Conflict Intended.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

15.9    Singular and Plurals.  As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

15.10   Execution in Counterparts.  This Settlement Agreement shall become effective upon its execution by all of the undersigned.  The parties may execute this Settlement Agreement in counterparts, and execution of counterparts shall have the same force and effect as if all parties had signed the same instrument.  The parties further agree

that signatures provided by portable document format (PDF) or other electronic transmission shall have the same force and effect as original signatures.

15.11   Authority.  Class Counsel, who are signatories hereof, represent and warrant that they have the authority, on behalf of Plaintiffs and Class Counsel, and to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby.  This Settlement Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiffs and constitutes their legal, valid and binding obligation.

15.11.1     Defendants, through their undersigned attorneys, represent and warrant that they have the authority, on behalf of their respective clients, to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Defendants of this Settlement Agreement and the consummation by it of the actions contemplated hereby have been duly authorized by all necessary corporate action on the part of Defendants.  This Settlement Agreement has been duly and validly executed and delivered by Defendants and constitutes their legal, valid, and binding obligation.

15.12   No Construction Against Drafter.  The determination of the terms of, and the drafting of, this Settlement Agreement, including its exhibits, has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel.  Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the Parties was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Settlement Agreement.

15.13   Enforcement of this Settlement Agreement.   The Court shall retain jurisdiction, and shall have exclusive jurisdiction, to enforce, interpret, and implement this Settlement Agreement, including any alleged violation, and the terms of any order entered pursuant to this Settlement Agreement.  However, any dispute or disagreement between the Parties regarding this Agreement and its implementation for purposes of submission to the Court for Preliminary Approval, shall be mediated by the Hon. Layn R. Phillips.

15.14   Governing Law.  This Settlement Agreement is intended to and shall be governed by the laws of the State of Missouri without giving effect to principles of conflicts of laws.

15.15   Notices.  All notices to the Parties or Class Counsel provided for herein, shall be made in writing and communicated sent by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

If to Class Counsel:

John Driscoll

THE DRISCOLL FIRM, P.C.
211 N. Broadway, 40th Floor
St. Louis, Missouri 63102
Tel.: (314) 932-3232
Fax: (314) 932-3233
*john@thedriscollfirm.com*

W. Lewis Garrison, Jr.
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Tel.: (205) 326-3336
Fax: (205) 326-3332
*wlgarrison@hgdlawfirm.com*

If to Avid or its counsel:

Robert A. Atkins
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019–6064
(212) 373-3000
ratkins@paulweiss.com

Richard P. Cassetta (MO #43821)
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
richard.cassetta@bryancave.com

If to Noel Biderman or his counsel:

Ian M. Dumain
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: 914-749-8244
Facsimile: 914-749-8300
*idumain@bsfllp.com*

**DOWD & DOWD, P.C.**

By: _____
     Douglas P. Dowd (29240MO)
     William T. Dowd (39648MO)
     Alex R. Lumaghi (56569MO)

211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Tel.: (314) 621-2500
Fax: (314) 621-2503
*doug@dowdlaw.net*
*bill@dowdlaw.net*
*alex@dowdlaw.net*

***Plaintiffs' Interim Liaison Counsel***

**THE DRISCOLL FIRM, P.C.**


By: _____
     John J. Driscoll (54729MO)
     Christopher J. Quinn (41883MO)
     Gregory G. Pals (48820MO)

211 N. Broadway, 40th Floor
St. Louis, Missouri 63102
Tel.: (314) 932-3232
Fax: (314) 932-3233
*john@thedriscollfirm.com*
*chris@thedriscollfirm.com*
*greg@thedriscollfirm.com*

**HENINGER GARRISON DAVIS LLC**

By: _____
     W. Lewis Garrison, Jr.
     James F. McDonough, III
     Christopher B. Hood
     Taylor C. Bartlett

W. Lewis Garrison, Jr.
Christopher B. Hood
Taylor C. Bartlett
HENINGER GARRISON DAVIS, LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: _____
     Robert A. Atkins
     Yahonnes Cleary

1285 Avenue of the Americas
New York, New York 10019–6064
(212) 373-3000
*ratkins@paulweiss.com*
*ycleary@paulweiss.com*

Richard P. Cassetta (MO #43821)
Helen Looney (MO #67029)
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
richard.cassetta@bryancave.com

*Attorneys for Avid Dating Life Inc. and Avid Life Media Inc.*


**BOIES SCHILLER FLEXNER LLP**


By: _____
     William S. Ohlemeyer
     Christopher M. Green
     Ian M. Dumain

333 Main Street
Armonk, NY 10504
Telephone: 914-749-8244
Facsimile: 914-749-8300
*wohlemeyer@bsfllp.com*
*cgreen@bsfllp.com*
*idumain@bsfllp.com*

*Attorneys for Defendant Noel Biderman*

27

**DOWD & DOWD, P.C.**

By: _____
      Douglas P. Dowd (29240MO)
      William T. Dowd (39648MO)
      Alex R. Lumaghi (56569MO)

211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Tel.: (314) 621-2500
Fax: (314) 621-2503
*doug@dowdlaw.net*
*bill@dowdlaw.net*
*alex@dowdlaw.net*

***Plaintiffs' Interim Liaison Counsel***

**THE DRISCOLL FIRM, P.C.**

By: _____
      John J. Driscoll (54729MO)
      Christopher J. Quinn (41883MO)
      Gregory G. Pals (48820MO)

211 N. Broadway, 40th Floor
St. Louis, Missouri 63102
Tel.: (314) 932-3232
Fax: (314) 932-3233
*john@thedriscollfirm.com*
*chris@thedriscollfirm.com*
*greg@thedriscollfirm.com*

**HENINGER GARRISON DAVIS LLC**

By: _____
      W. Lewis Garrison, Jr.
      James F. McDonough, III
      Christopher B. Hood
      Taylor C. Bartlett

W. Lewis Garrison, Jr.
Christopher B. Hood
Taylor C. Bartlett
HENINGER GARRISON DAVIS, LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: _____
      Robert A. Atkins
      Yahonnes Cleary

1285 Avenue of the Americas
New York, New York 10019–6064
(212) 373-3000
*ratkins@paulweiss.com*
*ycleary@paulweiss.com*

Richard P. Cassetta (MO #43821)
Helen Looney (MO #67029)
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
richard.cassetta@bryancave.com

*Attorneys for Avid Dating Life Inc. and Avid Life Media Inc.*

**BOIES SCHILLER FLEXNER LLP**

By: _____
      William S. Ohlemeyer
      Christopher M. Green
      Ian M. Dumain

333 Main Street
Armonk, NY 10504
Telephone: 914-749-8244
Facsimile: 914-749-8300
*wohlemeyer@bsfllp.com*
*cgreen@bsfllp.com*
*idumain@bsfllp.com*

*Attorneys for Defendant Noel Biderman*

DOWD & DOWD, P.C.

By: _____
  Douglas P. Dowd (29240MO)
  William T. Dowd (39648MO)
  Alex R. Lumaghi (56569MO)

211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Tel.: (314) 621-2500
Fax: (314) 621-2503
doug@dowdlaw.net
bill@dowdlaw.net
alex@dowdlaw.net

*Plaintiffs' Interim Liaison Counsel*

THE DRISCOLL FIRM, P.C.

By: _____
  John J. Driscoll (54729MO)
  Christopher J. Quinn (41883MO)
  Gregory G. Pals (48820MO)

211 N. Broadway, 40th Floor
St. Louis, Missouri 63102
Tel.: (314) 932-3232
Fax: (314) 932-3233
john@thedriscollfirm.com
chris@thedriscollfirm.com
greg@thedriscollfirm.com

HENINGER GARRISON DAVIS LLC

By: _____
  W. Lewis Garrison, Jr.
  James F. McDonough, III
  Christopher B. Hood
  Taylor C. Bartlett

W. Lewis Garrison, Jr.
Christopher B. Hood
Taylor C. Bartlett
HENINGER GARRISON DAVIS, LLC

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
  Robert A. Atkins
  Yahonnes Cleary

1285 Avenue of the Americas
New York, New York 10019–6064
(212) 373-3000
ratkins@paulweiss.com
ycleary@paulweiss.com

Richard P. Cassetta (MO #43821)
Helen Looney (MO #67029)
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
richard.cassetta@bryancave.com

*Attorneys for Avid Dating Life Inc. and Avid Life Media Inc.*

BOIES SCHILLER FLEXNER LLP

By: _____
  William S. Ohlemeyer
  Christopher M. Green
  Ian M. Dumain

333 Main Street
Armonk, NY 10504
Telephone: 914-749-8244
Facsimile: 914-749-8300
wohlemeyer@bsfllp.com
cgreen@bsfllp.com
idumain@bsfllp.com

*Attorneys for Defendant Noel Biderman*

27

2224 1st Avenue North
Birmingham, Alabama 35203
Tel.: (205) 326-3336
Fax: (205) 326-3332
*wlgarrison@hgdlawfirm.com*
*chood@hgdlawfirm.com*
*taylor@hgdlawfirm.com*

James F. McDonough, III
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Tel.: (404) 996-0869
Fax: (205) 326-3332
*jmcdonough@hgdlawfirm.com*

***Plaintiffs' Interim Co-Lead Counsel***

John Arthur Eaves, Jr.
JOHN ARTHUR EAVES
ATTORNEYS AT LAW
101 North State Street
Jackson, Mississippi 39201
Tel.: (601) 355-7961
Fax: (601) 355-0530
*johnjr@eaveslaw.com*

Gary F. Lynch
Jamisen A. Etzel
CARLSON LYNCH SWEET &
KILPELA, LLP
1133 Penn Ave., 5th floor
Pittsburgh, Pennsylvania 15222
Tel.: (412) 322-9243
Fax: (724) 656-1556
*glynch@carlsonlynch.com*
*jetzel@carlsonlynch.com*

Thomas A. Zimmerman, Jr.
Jordan Mitchell Rudnick
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020
*tom@attorneyzim.com*
*jordan@attorneyzim.com*

Julian A. Hammond
Ari Cherniak

Polina Pecherskaya
HAMMONDLAW, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035
(310) 601-6766
(310) 295-2385 (Fax)
*jhammond@hammondlawpc.com*
*acherniak@hammondlawpc.com*
*ppecherskaya@hammondlawpc.com*

Katrina Carroll
Kyle Alan Shamberg
LITE DEPALMA GREENBERG
211 W. Wacker Drive, Ste. 500
Chicago, IL 60606
312-750-1591
Fax: 312-212-5919
*kcarroll@litedepalma.com*
*kshamberg@litedepalma.com*

***Plaintiffs' Interim Executive Committee***