UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN RE:  ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION <br><br> This Document Relates to: <br><br> ALL CASES | ) <br> ) <br> )    MDL No. 2669 <br> ) <br> )    4:15-MD-2669-JAR <br> ) <br> ) |

**DECLARATION OF STEVEN WEISBROT, ESQ.
ON ADEQUACY OF NOTICE PROGRAM**

STEVEN WEISBROT, ESQ., of full age, hereby declares under penalty of perjury as follows:

1. I am a Principal at the class action notice and Settlement Administration firm Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2. I have been responsible in whole or in part for the design and implementation of hundreds of class action administration plans and have taught numerous Accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Class Action Notice Programs, as well as Class Action Claims Administration, generally. Additionally, I am the author of frequent articles on Class Action Notice, Digital Media, Class Action Claims Administration and Notice Design in publications such as *Bloomberg, BNA Class Action Litigation Report*, Law360, the ABA Class Action and Derivative Section Newsletter and private law firm publications.  I have given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, digital media and print publication, in effectuating Due Process notice, and I have met with representatives of the Federal Judicial Center, to discuss the proposed amendments to Rule 23 and suggested educational programs for the judiciary concerning class action notice procedures if they are adopted.

3.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants ("KCC"), a nationally recognized class action notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice and I am currently an attorney in good standing in the State of New Jersey and the Commonwealth of Pennsylvania.

4.      My notice work comprises a wide range of class actions that includes product defect, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases. Likewise, I have been instrumental in infusing digital and social media, as well as big data and advanced targeting into class action notice programs. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in ***In Re: Pool Products Distribution Market Antitrust Litigation MDL* No. 2328 (E.D. La.):**

*To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web-based forms of communication in the plan….The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.*

*The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.*

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a)      For example, on February 24, 2017, in ***James Roy et al. v. Titeflex Corp. et al.***, 384003V (Md. Cir. Ct. 2013), the Honorable Ronald B. Rubin, noted when granting preliminary approval to the settlement: "*What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make decision. To me that is a key piece of this deal.* **I think the notice provisions are exquisite.** (emphasis added)

(b) Likewise, on May 12, 2016 in his Order granting preliminary approval of the settlement in ***In Re Whirlpool Corp. Front Loading Washer Products Liability Litigation* (MDL No. 2001) (N.D. Ohio),** The Honorable Christopher A. Boyko stated:

*The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.*

      (c)   *Sateriale, et al. v R.J. Reynolds Tobacco Co.,* **Case No.  CV 09 08394 CAS (C.D. Cal.)**

Honorable Christina A. Snyder (May 3, 2016)  *The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.*

      (d) *Ferrera et al. v. Snyder's-Lance, Inc.*, **Case No. 0:13-cv-62496 (S.D. Fla.)**

Honorable Joan A. Lenard *(*February 12, 2016) *The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.*

5. Moreover, I have fulfilled the professional certification program offered by the Interactive Advertising Bureau (IAB) in Digital Media Sales. The IAB certification program is accredited by the American National Standard Institute (ANSI) and is the only globally recognized, accredited, professional certification program created specifically for digital media sales professionals.

6. By way of background, Angeion Group is a leading class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members. The executive profiles as well as the company overview are available at http://www.angeiongroup.com/meet_the_team.htm.

7.  My staff and I will draw from our in-depth class action notice and claims administration experience as well as our work in related fields to serve as Notice and Settlement Administrator in this case. This declaration will describe the notice program that we suggest using in this matter, including the considerations that informed the development of the plan.

## SUMMARY OF NOTICE PROGRAM

8. The notice plan in this matter combines a print media campaign, national press release, and a state-of-the-art targeted internet banner ad notice campaign based on objective syndicated data to reach our target audience.

9. The Notice Program is designed to deliver an approximate 75.3% reach with an average frequency of 3.04 times each. Practically, what this means is that approximately 75.3% of the target audience will see the notice about three times each.

10. The specifics of the plans, as well as the considerations that informed their recommendation are further outlined below.

## CLASS DEFINITION

11. The "Settlement Class" is defined as All residents of the United States of America who used Ashley Madison during the Settlement Class Period including, but not limited to, all persons whsose Personal Information was compromised or released publicly as a result of the Data Breach, who purchased the Paid Delete or Full Delete option on Ashley Madison on or before July 20, 2015, or who purchased credits or account upgrades on Ashley Madison or otherwise paid to use Ashley Madison.

12. I have been advised by Plaintiffs' Class Counsel that direct notice in this case is not feasible due to the parties' inability to reasonably identify reliable, verifiable, class member information. Secondarily, I have been advised that the intensely sensitive nature of the underlying settlement affects the security and privacy concerns of the Class Members (and instigating amici briefing)

and that the Court's rulings involving class member privacy make this a unique factual scenario. Specifically, I have been advised that this court found, "the possible injury to Plaintiffs rises above the level of mere embarrassment or harm to reputation and weighs against public disclosure. Under the facts alleged, it appears this may be a case where the 'injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.' *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). The disclosure of Plaintiffs' identities could expose their sensitive personal and financial information - information stolen from Avid when its computer systems were hacked - to public scrutiny and exacerbate the privacy violations underlying their lawsuit." Doc. No. 138, pp. 6-7. Therefore, the notice program described below, proceeds from the premise that that individual notice in this case is impossible to effectuate due to the lack of reliable class member information, and therefore, against this backdrop, publication notice is appropriate.  Moreover, we have taken extreme care to properly publicize this settlement to class members without further impugning their reputation or causing undue embarrassment.  The details of the proposed notice plan follow.

## **MEDIA NOTICE TARGET AUDIENCE**

13.     To develop the media plans for the notice program, the Settlement Class was profiled using GfK MRI 2016 Doublebase data[1]. This syndicated data source is used by advertising agencies and other communications professionals to understand the socio-economic characteristics, interests and practices of a target group and aids in the proper selection of media to reach that target. MRI data is instrumental in allowing the Court to review the estimated net reach and average frequency of a particular program and is precisely the type of "accepted methodology" that the Federal

---

[1] GfK MRI is a leading supplier of publication readership and product usage data for the communications industry. GfK MRI offers complete demographic, lifestyle, product usage and exposure to all forms of advertising media. As the leading U.S. source of multimedia audience research, GfK MRI provides information to magazines, television and radio networks and stations, internet sites, other media, leading national advertisers, and over 450 advertising agencies – including 90 of the top 100 in the U.S. MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

Judicial Center Checklist cautions should be used in class action notice programs. Here, the following target audience was used to profile potential class members in MRI:

- Internet Activities Done Last 30 days [Participated in on-line dating]

14. It should be noted that this target definition is intentionally over-inclusive. We are targeting *all* persons who have participated in online dating, as opposed to just those who have used Ashley Madison. This is necessary since the syndicated data does not itemize or differentiate among various dating services. Based on the target definition, the potential audience size is estimated at 5,671,000 persons. Additionally, it is should be noted that the MRI data identifies 737,000 of these individuals as being married. However, if we were to use only the smaller universe of married individuals, there is a risk that the demographic data along with media consumption habits will be inaccurate due to such a low sample size. Therefore, this over inclusive target audience, based on objective syndicated data, is an appropriate target audience to reach this class.

15. The syndicated data also aids in understanding the socio-economic characteristics, interests and practices of a target group which guides the proper selection of media to reach that target. Here, the target audience has the following characteristics:

- Adults ages 25-44 with an average age of 38
- 13% are married (737,000 people)
- 48.8% have a college degree
- 57.0% live in households with total income below $75K
- 74.0% are employed, with most working full time (60.1%)

16. To identify the best vehicles to deliver messaging to the target audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population. Here, it shows our target audience spends approximately 29 hours per week on the internet, which is considered a "heavy" user of the internet (the average user spends 16 hours per week on the internet). Moreover, our target audience are also "heavy" readers of

magazines. The data indicates that they read about 8 magazine issues per month, as opposed to a member of the public who typically reads 6 issues a month.

17. Considering this data, Angeion recommends utilizing a combination of targeted print media and state-of-the-art internet banner advertisements to reach the target audience, which will effectively generate the reach required to notify potential members of the Settlement Class of their rights and options in the Settlement.

## PRINT PUBLICATION

18. To identify the best print vehicle for delivering the message to the target audience, MRI was used to analyze and filter publications to determine the titles with the highest reach against our target audience. *People* was chosen as the best title for this notice program due to its relevant editorial content and strong reach towards the target audience. *Sports Illustrated* is also recommended due to its strong reach among the class.

19. Angeion will cause a true and correct copy of the summary notice to be published in the identified publications. Specifically, a ½ page black and white insertion is recommended. For the court's convenience, below is a chart that identifies the general circulation of each recommended title as well as the reach among our target audience.

| Publication | Circulation | Target Audience |
|---|---|---|
| People | 3,510,533 | 1,072,000 |
| Sports Illustrated | 3,023,197 | 4,100,00 |

## INTERNET BANNER NOTICE

20. The Notice Program utilizes a state-of-the-art programmatic approach to purchasing internet media advertisements to target potential members of the Settlement Class with tailored communications. Purchasing display and mobile inventory programmatically provides the highest reach for internet publication, allows for multiple targeting layers, and causes banner

advertisements to be systematically shown to persons most likely to be members of the Settlement Class.

21. Multiple targeting layers will be implemented to help ensure delivery to the most appropriate users, inclusive of search targeting, category contextual targeting, keyword contextual targeting, and site retargeting. Inventory will run on desktop and mobile devices to reach the most qualified audience. Search terms will be relevant to dating, Ashley Madison, and marriage. Targeting users who are currently browsing or have recently browsed content in categories such as dating sites and data breaches will also help qualify impressions to ensure messaging is served to the most relevant audience. The below charts represent the inventory that will run in support of this notice program.

| Digital Tactic | Timing | Placement | Impressions |
| --- | --- | --- | --- |
| Programmatic Display/Mobile | 4-weeks | Search Retargeting, Category Contextual Targeting, Keyword Targeting, Demographic Targeting, Site Retargeting, Purchase Data Targeting | 11,484,000 |

22. The internet banner notice portion of the notice program will be implemented using a 4-week desktop and mobile campaign, utilizing standard Interactive Advertising Bureau ("IAB") sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50). A 3x frequency cap will be imposed to maximize reach. The banner notice campaign is designed to result in serving approximately 11,484,000 impressions.

23. To track campaign success, we will implement conversion pixels throughout the case filing website to better understand audience behavior and identify those class members who are most likely to convert. The programmatic algorithm will change based on success and failure to generate conversions throughout the process. Successful conversion on the Claim Submission button will be the primary goal, driving optimizations.

24. Also included with the digital recommendation is Lotame, a demand management platform (DMP), as well as Integral Ad Science (IAS), an online ad verification and security provider. Using Lotame, allows us to learn more about the online audiences we are

reaching.  Through pixels attached to the creative behind the scenes, we collect data on users who are served impressions, who click, and who convert.  Demographic profiles can be developed and leveraged for immediate changes in targeting strategies to increase the overall performance of digital campaigns.  The insights help us to understand the type of user profile that is most valuable to campaign success. Integrating with IAS provides another level of safety to ad campaigns.  With the threat of bot-fraud and questions around inappropriate content, IAS, the leading company in ad verification, provides peace of mind as IAS analyzes each impression and prevents fraudulent activity and unsafe content.

## **PRESS RELEASE**

25.     The parties will issue a national press release immediately after the filing of the motion for preliminary approval, which shall include a general description of the settlement and its terms, as well as statement by Avid that merely because a person's name appears to have been released in the Data Breach does not mean that such person was a member of Ashley Madison.

## **RESPONSE MECHANISMS**

26.     The notice program will implement the creation of a case website, where members of the Settlement Class can view general information about this class action, review relevant Court documents and view important dates and deadlines pertinent to the Settlement. The website will also have a "Contact Us" page whereby members of the Settlement Class can send an email with any additional questions to a dedicated email.  Class Members shall also be able to submit Claim Forms electronically via the Settlement Website.

27.     Because of the sensitive nature of the underlying settlement, the URL shall be nondescript and will not include any reference to Ashley Madison, Avid Life Media, Avid Dating Life, Ruby, or any other information identifying the URL as being related in any way to the substance of this

litigation or purpose of ashleymadison.com. The Settlement Website shall not include any advertising and shall remain operational until the date distributions become void.

28. A toll-free hotline devoted to this case will be implemented to further apprise members of the Settlement Class of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide responses to frequently asked questions and provide valuable information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

29. The Notice Program is designed to deliver an approximate 75.3% reach with an average frequency of 3.04 times each. The 75.3% does not include the informational website, press release, earned media or toll-free hotline, which are also not easily calculable in the reach percentage, but serve to inform potential class members of the Settlement

## CONCLUSION

30. The Notice Program outlined above is an integrated notice effort incorporating a robust print publication plan, national press release, and state of the art internet banner notice utilizing multiple targeting layers specifically targeting potential Settlement Class Members. The media portion of the Due Process notice program is designed to reach 75.3% of the Class on average 3.04 times each.

31. Courts systematically rely upon reach and frequency evidence in reviewing class action notice programs for adequacy. The reach percentage and the number of exposure opportunities here, meet or exceed those approved in other similar class actions.

32. If this court concludes that individual notice is inappropriate here given the the lack of accurate records to identify and reach class members, as well as the the risk that direct notice will create further harm of the exact type the settlement is designed to remedy, the Notice Program

described above would be considered fully compliant with Rule 23 of the Federal Rules of Civil Procedure. The program described herein is created with the desire to actually inform class members of their rights under the settlement, and the reach percentage and the number of exposure opportunities here, meet or exceed those approved in other similar class actions where direct notice is impossible.

33. Therefore, if direct notice cannot be effectuated, the notice program recommended here is the best notice practicable under the circumstances.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
STEVEN WEISBROT

Dated: July 13, 2017